R. Rex Parris (SBN 96567)
  rrex@parris.com
Alexander R. Wheeler (SBN 239541)
  alex@parris.com
John M. Bickford (SBN 280929)
  jbickford@parris.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:   (661) 949-2595
Facsimile:   (661) 949-7524

Attorneys for Plaintiff MAHAN TALESHPOUR
and the Putative Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHAN TALESHPOUR, on behalf of himself and all members of the putative class, | ) Case No.: |
| | ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** |
| v. | ) |
| | ) (1) Violation of California's Unfair Competition Law; |
| APPLE INC., | ) (2) Fraudulent Concealment; |
| Defendant. | ) (3) Violation of the Song-Beverly Consumer Warranty Act. |
| | ) |
| | ) **DEMAND FOR JURY TRIAL** |

Plaintiff MAHAN TALESHPOUR ("Plaintiff"), on behalf of himself and all members of the putative class, files this complaint against Defendant APPLE INC. ("APPLE").  Plaintiff's allegations are based upon information and belief, and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)–(6), because there is (1) at least 100 class members; (2) minimal diversity, and (3) an amount in controversy that exceed $5 million, exclusive of interest and costs.

2.     This Court has personal jurisdiction over APPLE because it is domiciled in the State of California.  *See Milliken v. Meyer*, 331 U.S. 457, 462–63 (1940).

3.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) and (c).

## PARTIES

4.     Plaintiff MAHAN TALESHPOUR is an individual who, at all time relevant herein, was a resident of Los Angeles, California.  He brings this action on behalf of himself and all members of the putative class.

5.     APPLE is a corporation formed under the laws of the State of California, having its principal place of business at One Apple Park Way, Cupertino, California 95014.

## FACTUAL ALLEGATIONS

6.     APPLE is the largest technology company in the world.  Since 1977, it has designed, manufactured, warranted, marketed, advertised, and sold computers and related products and services throughout the world, including the State of California.

7.     APPLE sells its products from its storefront locations and through its online stores.  Its products are also available for purchase through third-party retailers such as Amazon, Best Buy, and Walmart.

**The Defective MacBook Pro**

8.        In 2016, Apple introduced its updated 13 and 15 inch MacBook Pro models. Apple described these laptops as "revolutionary" and "groundbreaking," with "breakthrough performance."  The laptops' main selling point was their display.  Apple described it as its "brightest and most colorful Retina display yet."[1]  And its senior vice-president of World Marketing claimed they had "the best Mac display ever."[2]  *See* Figure 1 (example of Apple's marketing of the laptops' display).

**(Figure 1)**

Apple's Brightest, Most Colorful Notebook Display



MacBook Pro's Retina display is brighter, thinner and supports wider color gamut, making it the best notebook display ever made. 

The best Mac display ever delivers images that are more vivid, reveal even greater detail and appear more lifelike than ever. As thin as a MacBook display at .88 mm, the Retina display on the new MacBook Pro at 500 nits of brightness, is an amazing 67 percent brighter than the previous generation, features 67 percent more contrast and is the first Mac notebook display to support wider color gamut. And with power-saving technologies like a larger pixel aperture, a variable refresh rate and more power-efficient LEDs, the display consumes 30 percent less energy than before.

---

[1]   https://www.apple.com/newsroom/2016/10/apple-unveils-groundbreaking-new-macbook-pro/

[2]   *Id.*

3

9.     To make these MacBook Pros thinner and sleeker, APPLE used thin flexible ribbon cables to connect the display screen to the display controller board.  These cables wrap around the display controller board and are secured by a pair of spring-loaded covers.  *See* Figure 2 (picture of flex ribbon cables wrapping around board).

**(Figure 2)**



10.     At first, these cables function correctly.  But their length and placement causes them to rub against the control board each time the laptop is opened or closed. This consistent rubbing slowly causes the cables wear and tear overtime.  *See* Figure 3 (arrow pointing to tearing of display cable caused by rubbing against the display board).

**(Figure 3)**



4

11.    At first, the tearing of the display cable will cause a "stage lighting" effect of alternating patches of light and darkness on the bottom of the display.  *See* Figure 4 (example of the display lighting effect).

**(Figure 4)**



12.    Further use results in further tearing, causing a complete failure of the backlighting system when the display is opened beyond 40-degrees.  This renders the laptop essentially useless.

13.    Although APPLE provides limited one-year warranties for its MacBook Pros, the cable display defect typically manifests itself outside the warranty period. Consequently, consumers who experience this defect must pay out-of-pocket to repair their cables.

14.    Additionally, although the cables themselves would normally cost only a few dollars to replace, in an effort to make the display as thin as possible, APPLE designed the cables as part of the display itself.  Consequently, the cables cannot be individually replaced.  Instead, the entire display unit needs to be replaced when the display cables tear.

15.     Replacing the entire display costs between $600 and $850.  Consumers who purchased an AppleCare plan (i.e., an extended APPLE warranty) fare only slightly better.  They are still charged between $99 and $299 to have their display replaced, while others have been told the repair is not covered by AppleCare.

16.     APPLE is aware, and has been aware, of the defect in its display cables.  Upon releasing the 2016 models, APPLE received complaints from consumers about the display lighting effect and the failure of the display.  These complaints only increased as more MacBook Pros were sold and used.   But despite being aware of this defect, APPLE continued to promote the MacBook Pros' display, failed to disclose the problem to consumers.

17.     APPLE took nearly two years to remedy the cable defect.  In July 2018, APPLE released a new model of its MacBook Pro with flex display cables two millimeters longer than before.  This gives the cable more room to wrap around the display board so it doesn't rub against it when the laptop is opened and closed.  *See* Figure 5 (comparison of the length of the cables, post-2018 on left, pre-2018 on right).

**(Figure 5)**



COMPLAINT AND DEMAND FOR JURY TRIAL

18.     Additionally, in May 2019, APPLE launched the MacBook Pro Display Backlight Service Program.[3]   Under this program, APPLE has agreed to replace the cables/display on 13-inch MacBook Pro 2016 models that experience the stage lighting effect or a total failure of the display.  It will also refund those who paid to have their cables/display fixed.  However, despite both the 13 and 15 inch MacBook Pros having the same defect, the program does not cover the 15-inch MacBook Pro model.  It also does not cover 13-inch MacBook Pros sold after 2016.

19.     Despite the revised longer display cable length and the Display Backlight Service Program, APPLE continues to deny there was ever a defect in its display cables. It also continues to represent these MacBook Pros have superior displays.

### Plaintiff's Experience

20.     On April 13, 2017, Plaintiff purchased a new 15-inch 2016 MacBook Pro for approximately $2,526.00 at an APPLE store in Sherman Oaks, California.

21.     Plaintiff relied on APPLE's display representations in purchasing his 15-inch MacBook Pro.  Before purchasing the laptop, Plaintiff saw advertisements and marketing materials in which APPLE represented the MacBook had the best display to date.

22.     In January 2020, the display screen on Plaintiff's MacBook Pro began exhibiting the stage lighting effect.

23.     On March 18, 2020, Plaintiff took his MacBook to an Apple Authorized Service Provider to fix his display.  The provider told him AppleCare did not cover the repair and that it would cost $850 to replace the display.  As of the date of this complaint, Plaintiff has been unable to repair his display because of the COVID-19 pandemic.

24.     Had Plaintiff known the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

---

[3] https://support.apple.com/13-inch-macbook-pro-display-backlight-service

**Other Consumers' Experiences**

25.    Since the display cables are almost certain to tear with normal laptop use, tens of thousands of consumers have reported the stage lighting effect and/or complete failure of the display screen.

26.    The issue has become so prevalent that a petition on Change.org was created to demand APPLE to address the defect.  To date, over 26,000 consumers have signed the petition.[4]

27.    Additionally, many consumers have taken to internet discussion boards to complain about the cable defect and APPLE's failure to include 15-inch models in the Display Backlight Service Program.[5]  For example:

- Kennday, posted on Sept. 13, 2019:

    #Flexgate problem on my 15" 2016 model, I bought at end of 2017, have it for mere 20 months so far.  The screen went out, apple store quote[d] me $680 + tax to replace![6]

- Vijaynlsn, posted on Sept. 19, 2019:

    My MacBook Pro 15" [has] the same issue as the 13" . . . . model but Apple denied the free service saying the replacement program is only for 13" models. [7]

---

[4]  The Change.org petition is available at https://www.change.org/p/apple-fix-all-macbook-pro-2016-and-later-with-stage-light-effect-or-backlight-shutdown-flexgate (last visited May 4, 2020).

[5]  *See    e.g.,*    https://discussions.apple.com/thread/250461433?page=3; https://twitter.com/hashtag/flexgate; https://www.ifixit.com/Answers/View/486856/Screen+issues,+Back+light+dims+&+goes+out

[6]  https://discussions.apple.com/thread/250461433?page=4

[7]  *Id.*

8

- <u>Furnu_thtsme, posted on Sept. 21, 2019:</u>

    Last month I started having a backlight issue on my Mac . . . . However, yesterday my Mac just went black whenever I extended past a certain angle.  This was frustrating as I could not work well with my laptop.  Therefore, I [went] to the apple store in downtown Palo Alto.  Instantly the representative knew what the issue was and was like "Okay this issue is common on the macbook pros, don't worry Apple has a program that repairs it for free".  Little did he and I know that that program only covers the 13inch Macs.  He was surprised since he said his coworkers have seen this issue a lot for 15inches also.  The cost was turning out to be $680+ tax.[8]

- <u>Marekziz, posted on Oct. 7, 2019:</u>

    I'm trying to understand why 13 inch get repairs, but 15 inch do not. . . .  I have 15 inch , I'm unable to use it as a laptop.  Calling support gave no answers.[9]

- <u>Davidbenedek, posted on Oct. 11, 2019:</u>

    Apple needs to resolve this and extend the warranty to 15" models.  It is ridiculous to have something this faulty and not take responsibility for it.  Anyone know if simply exchanging the flex cable solves this or only the full 700$ repair?  If apple doesn't extend the repair Program to 15" it'll be the last apple I own.[10]

---

[8]   https://discussions.apple.com/thread/250652272

[9]   https://discussions.apple.com/thread/250461433?page=4

[10]   https://discussions.apple.com/thread/250461433?page=4

9

- Dylan1222, posted on Oct. 21, 2019:

  Same problem.  15" macbook pro 2016.  More than 45 degrees and the screen shuts off. . . .  Ridiculous that they refuse to acknowledge the issue exists in 15" models.[11]

- Keelie_, posted Oct. 25, 2019:

  I have dealt with the annoyance of a spotlight effect on my Macbook Pro 15" for over a year now.  Randomly the backlight would go out too or not go on after opening. . . . Recently the backlight went out and could not be restored. My computer was rejected for the Macbook Pro 13" program and I was $600+ for a screen replacement. Insofar that the same cable was used in both models, I can only assume that Apple is aware that both models are affected and decided that it was inconvenient to expand the program to include the 15".  I hope that Apple will announce a program for the 15" this week, on the anniversary of its release.  This will restore some faith in the company but either way, the product design and manner in which this issue has been handled is a huge disappointment. [12]

- Abo2019, posted on Nov. 20, 2019:

  This is ridiculous, an expensive laptop like this and then after 1.5 years, my keyboard is faulty, the speakers don't work properly and now this backlight issue.  If my MacBook Pro 15" 2016 with touchbar is having the same

---

[11] *Id.*

[12] *Id.*

1   issue as the 13" [] models why am I being charged $800

2   plus to repair it? I understand that a new design can have

3   de3sign flaws but at least take full responsibility for it![13]

## CLASS ALLEGATIONS

5   28.    Plaintiff brings this action on behalf of himself and on behalf of others

6   similarly situated.  He seeks class certification under Federal Rule of Civil Procedure 23.

7   29.    The proposed class is defined:

8   All persons within the United States who

9   purchased a MacBook Pro 2016-year model or

10   later.

11   Plaintiff reserves the right to modify, change, or expand the class definitions based upon

12   discovery and further investigation.

13   30.    These individuals are excluded from the class: APPLE and its officers,

14   directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any

15   members of their immediate families; and the parties' counsel.

16   31.    In addition, or in the alternative, to the above-defined class, Plaintiff reserves

17   the right to establish subclasses to facilitate the effective management of the class.

18   32.    The class meets the requirements of Federal Rule of Civil Procedure 23(a),

19   (b)(1) & (2):

20   a.    Numerosity: APPLE sold hundreds of thousands of 15 inch MacBook

21   Pro laptops in the United States.  Members of the class are widely dispersed

22   throughout the country.  Class members are therefore so numerous that joinder of

23   all class members if impracticable.

24   b.    Commonality/Predominance:  There are questions of law and fact

25   common to the class that predominate over questions affecting only individual

26   members.  These include, but are not limited to:

27

28   [13] *Id.*

11

- Whether the MacBook Pros were defective at the time of sale;
- Whether the display cable defect substantially impairs the value of the MacBook Pros;
- Whether APPLE knew of the defect but continued to promote and sell the MacBook Pros without disclosing the defect or its consequences to consumers;
- Whether a reasonable consumer would consider the display cable defect and its consequences important to whether to purchase a MacBook Pro;
- Whether APPLE breached implied warranties connected with the MacBook Pro;
- Whether APPLE's representations and omissions relating to the display cable and its embedded defect were likely to deceive a reasonable consumer;
- Whether APPLE acted unlawfully, unfairly, and/or fraudulently in violation of California's Unfair Competition Law;
- Whether Plaintiff and the class members overpaid for their MacBook Pro because of the display cable defect;
- Whether Plaintiff and the class members may have equitable relief, including restitution and injunctive relief; and
- Whether Plaintiff and the class members are entitled to damages or other monetary relief, and if so, in what amount.

c.     Typicality:  Plaintiff is a member of the class he seeks to represent, and Plaintiff's claims are typical of the claims of the other class members.  Like the other class members, Plaintiff purchased a MacBook Pro laptop that contained defective display cables.

d.     Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the class he seeks to represent because (1) Plaintiff has retained

12

experienced litigation counsel with significant experience in class action litigation who will adequately represent the interest of the class; (2) Plaintiff and his counsel are aware of no conflicts of interest between Plaintiff and the class members; and (3) Plaintiff is knowledgeable about the subject matter of this action and will assist counsel in the prosecution of this action.

e.  Superiority:  A class action provides a fair and efficient method of adjudicating this controversy and is superior to other available methods of adjudication in that: (1) neither the size of the class, nor any other factor, make it likely that difficulties will be encountered in the management of this action as a class action; (2) the prosecution of separate actions by individual class members or the individual prosecution of separate actions by individual class members or the individual joinder of all class members in this action is impracticable, and would create a massive and unnecessary burden on the resources of the courts, and could cause inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each members of the class; (3) because of the disparity of resources available to APPLE versus those available to individual class members, prosecution of separate actions would work a financial hardship on many of the class members; (4) the conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each class member and meets all due process requirements as to fairness to all parties; and (5) all of the claims arise out of the same circumstances and course of conduct.

## FIRST CAUSE OF ACTION

### (Violations of the California Unfair Competition Law)

### (Against Defendant APPLE INC.)

33.  Plaintiff incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

34.  California Business & Professions Code sections 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

1   deceptive, untrue or misleading advertising."

2   **Unlawful**

3   35.   APPLE's conduct is unlawful, in violation of the UCL, because it violates

4   the Consumers Legal Remedies Act and the Song-Berkley Consumer Warranty Act.

5   **Unfair**

6   36.   APPLE's conduct is unfair, in violation of the UCL, because it violates the

7   State of California's public policy, legislatively declared in the Consumer Legal

8   Remedies Act and the Song-Berkley Consumer Warranty Act, requiring a manufacturer

9   to ensure that goods it places on the market are fit for their ordinary and intended

10  purposes.  APPLE has violated this public policy because one of the MacBook Pros' most

11  central functions, its display screen, is defective for the reasons previously stated.

12  37.   APPLE engaged in unfair business practices and acts in at least these

13  respects:

14       a.   APPLE promoted and sold MacBook Pros it knew were defective

15  because they contained a display screen certain to fail prematurely;

16       b.   APPLE promoted and sold MacBook Pros with a defective display

17  screen despite knowing that users do not expect the display screen to materially

18  degrade over time;

19       c.   APPLE failed to disclose that the MacBook Pros were defective, and

20  represented through advertising, its website, product packaging, press releases, and

21  other sources that the MacBook Pros possessed particular qualities inconsistent

22  with APPLE's actual knowledge of the product;

23       d.   APPLE failed to exercise quality control and due diligence over the

24  MacBook Pros before placing them on the market; and

25       e.   APPLE minimized the scope and severity of the problems with the

26  MacBook Pros, refusing to acknowledge that their display screens were defective

27  and failing to provide adequate relief to all consumers.

28  38.   The gravity of harm resulting from APPLE's unfair conduct outweighs any

14

potential utility.  The practice of selling defective laptops without providing an adequate remedy to cure the defect, and continuing to sell those laptops without full and fair disclosure of the defect, harms the public at large and is part of a common and uniform course of wrongful conduct.

39.     The harm from APPLE's conduct was not reasonably avoidable by consumers.  The MacBook Pros suffer from a latent defect, and even after receiving a large volume of consumer complaints, APPLE did not disclose the defect.  Plaintiff and the class members did not know of, and had no reasonable means of discovering, that the MacBook Pros' display cables were defective.

40.     There were reasonably available alternatives that would have furthered APPLE's business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the defect and providing a permanent fix for defective display cables; (2) adequately disclosing the defect to prospective purchasers; (3) extending the warranty for the MacBook Pros; and (4) offering refunds or suitable non-defective replacement laptops to consumers with failed display screens.

**Fraud by Omission**

41.     APPLE's conduct is fraudulent, in violation of the UCL, because it is likely to deceive a reasonable consumer and:

    a.     APPLE knowingly and intentionally concealed from Plaintiff and the class members that the MacBook Pros contain a latent defect that renders the display screen prone to failure;

    b.     APPLE volunteered information to Plaintiff and the class members through advertising and other means that the MacBook Pros, and their display screens, were functional and premium products without disclosing facts that would have materially qualified those representations; and

    c.     APPLE promoted the high quality and premium features of the MacBook Pros, including the superior Retina display, despite knowing the MacBook Pros were defective, and failed to correct its misleading disclosures.

15

42.    APPLE had ample means and opportunities to alert Plaintiff and the class members of the defective nature of the MacBook Pros, including on APPLE's webpages; in its advertisements; on the MacBook Pros' external packaging; and as part of the standardized MacBook Pro setup process.  Had APPLE disclosed that the MacBook Pros were defective, Plaintiff and the class members would not have purchased a MacBook Pro, would not have purchased a MacBook Pro at the prices they did, or would have returned their MacBook Pros during their respective buyer's remorse periods.

43.    APPLE was under a duty to disclose the display defect because of its exclusive knowledge of the display defect and because it made representations about the MacBook Pro and its display without disclosing the display defect.

44.    Plaintiff and the class members suffered injury in fact, including lost money or property, because of APPLE's unlawful, unfair, and fraudulent acts and omissions.

45.    Through its unlawful, unfair, and fraudulent conduct, APPLE acquired Plaintiff and the class members' money directly and as passed on by APPLE's authorized resellers (e.g., Best Buy, Amazon, and Walmart).

46.    Plaintiff and the class members seek appropriate relief, including (1) restitution under the UCL and (2) such orders or judgments as may be necessary to enjoin APPLE from continue its unfair, unlawful, and fraudulent practices.

47.    Plaintiff also seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment)

### (Against Defendant APPLE INC.)

48.    Plaintiff incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

49.    APPLE intentionally suppressed and concealed material facts about the performance and quality of the MacBook Pro.  As alleged herein, APPLE was aware of numerous consumer complaints about defect-related problems, but never disclosed the

defect to Plaintiff and the class members.

50.     Because the defect in the MacBook Pro's display defect is latent and unobservable until it arises, Plaintiff and the class members had no reasonable means of knowing that APPLE's representations about the MacBook Pro were incomplete, false, or misleading, or that it had failed to disclose that they are defective.  Plaintiff and the class members did not and reasonably could not have discovered APPLE's deceit before they purchased the MacBook Pro or before the end of their respective buyer's remorse periods.

51.     Had Plaintiff and the class members known that the MacBook Pros were defective, they would not have purchased a MacBook Pro, would not have purchased it at the price they did, or would have returned it during their respective buyer's remorse periods.

52.     APPLE had a duty to disclose the defect because, through advertising, press releases and statements made during the launch event, on its webpages, in its online purchase portal, and in other sources that Plaintiff and the class members encountered before purchasing their laptops.  APPLE made representations regarding the supposed high quality of the MacBook Pro and its premium features—including a superior display—but failed to disclose facts that would have materially qualified these representations.  Having volunteered information relating to the display to Plaintiff and the class members, APPLE had a duty to disclose the whole truth about the display and, in particular, its defective nature.

53.     APPLE concealed the defect to sell more MacBook Pros at a premium price, prevent damage to its brand, and avoid the costs of developing a fix for the defect and of repairs, replacements and refunds under its limited warranty.

54.     The facts about the MacBook Pro flex display cables that APPLE suppressed and omitted were material, and Plaintiff and the class members were unaware of them until they experienced the defect.  Had APPLE disclosed the display defect, including through advertising, press releases, the MacBook Pro packaging, or the initial set up

17

process, Plaintiff and the class members would not have purchased a MacBook Pro, would have paid substantially less for it, or would have returned it for a refund.

55.   When purchasing a MacBook Pro, Plaintiff and the class members reasonably relied to their detriment upon APPLE's material misrepresentations and omissions regarding the quality of the MacBook Pro and the absence of a product defect.

56.   Plaintiff and the class members sustained damages as a direct and proximate result of APPLE's deceit and fraudulent concealment.  Among other damage, Plaintiff and the class members did not receive the value of the premium price they paid for the MacBook Pro.

57.   APPLE's fraudulent concealment was malicious, oppressive, deliberate, intended to defraud Plaintiff and the class members and enrich APPLE, and in reckless disregard of Plaintiff and the class members' rights, interests, and well-being.  APPLE's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## THIRD CAUSE OF ACTION

### (Violations of the Song-Beverly Consumer Warranty Act)

### (Against Defendant APPLE INC.)

58.   Plaintiff incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

59.   Plaintiff is a "buyer" within the meaning of California Civil Code section 1791, subdivision (b).

60.   APPLE is a manufacturer within the meaning of California Civil Code of section 1791, subdivision (j).  APPLE produced the MacBook Pros and directed and was involved in all stages of the production and manufacturing processes.

61.   The MacBook is a "consumer good" within the meaning of California Civil Code section 1791, subdivision (a).

62.   APPLE impliedly warranted to Plaintiff that the MacBook purchased was "merchantable" under California Civil Code sections 1791.1, subdivision (a) and 1792.

63.     APPLE breached that implied warranty of merchantability by producing, manufacturing, and selling laptops not of merchantable quality.  The MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.  Over time, the screen stops working entirely which prevents the display from being used for its core function.  The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

64.     The defect in the MacBook is latent.  Though the MacBook appears operable when new, the display defect existed in the product at the time of sale and throughout the one-year limited warranty period.  Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

65.     Any attempt by APPLE to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to California Civil Code sections 1792.3 and 1792.4.  Those sections provide that, to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis.  (2) The entire risk as to the quality and performance of the goods is with the buyer.  (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair."  APPLE's attempted warranty disclaimer does not conform to sections 1792.3 and 1792.4.

66.     As a direct and proximate cause of APPLE's breaches of the Song-Beverly Consumer Warranty Act, Plaintiff and the class members have been damaged in an amount to be proven at trial.

67.     Plaintiff seeks costs and expenses, including reasonable attorneys' fees, under California Civil Code section 1794.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    That the claims alleged may be maintained as a class action under Federal Rule of Civil Procedure 23, and enter an order certifying the Class as defined above and appointing Plaintiff as Class representative;

2.    That counsel for Plaintiff be appointed as Class Counsel;

3.    That Defendant provide to Class Counsel, immediately upon its appointment, the names and most current contact information (address and telephone numbers) of all class members;

4.    For all actual, general, special, incidental, statutory, punitive, and consequential damages and/or restitution to which Plaintiff and the class members are entitled;

5.    For pre-judgment and post-judgment interest as provided by law;

6.    For appropriate equitable relief, including, without limitation, an order requiring APPLE to: (1) adequately disclose the defective nature of the MacBook; and (2) make restitution to Plaintiff and the class members all costs attributable to remedying or replacing MacBook laptops, including but not limited to economic losses from the purchase of replacement laptops or display screens; and (3) expand its AppleCare and Display Backlight Service Program to cover the display cable defects of its 15-inch models;

7.    For reasonable attorneys' fees and costs as permitted by law; and

8.    For such other and further relief as the Court deems appropriate.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by a jury

3

of all issues triable as of right.

4

5

Date:  May 6, 2020                                    **PARRIS LAW FIRM**

6

7

_____ /s/ *John M. Bickford* _____

8

John M Bickford

9

Attorneys for Plaintiff MAHAN

10

TALESHPOUR and the Putative Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL