R. Rex Parris (SBN 96567)
   rrex@parris.com
Alexander R. Wheeler (SBN 239541)
   alex@parris.com
John M. Bickford (SBN 280929)
   jbickford@parris.com
Michelle J. Lopez (SBN 331632)
   mlopez@parris.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:   (661) 949-2595
Facsimile:    (661) 949-7524

Attorneys for Plaintiffs
and the Putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHAN TALESHPOUR, RORY FIELDING, PETER ODOGWU, WADE BUSCHER, GREGORY KNUTSON, DARIEN HAYES, LIAM STEWART, and NATHAN COMBS on behalf of themselves and all members of the putative class,<br><br>   Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br><br>   Defendant. | Case No.: 5:20-cv-03122-EJD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs MAHAN TALESHPOUR, RORY FIELDING, PETER ODOGWU, WADE BUSCHER, GREGORY KNUTSON, DARIEN HAYES, LIAM STEWART, and NATHAN COMBS ("Plaintiffs"), on behalf of themselves and all members of the putative class, file this complaint against Defendant APPLE INC. ("APPLE"). Plaintiffs' allegations are based upon information and belief, and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)–(6), because there is (1) are least 100 class members; (2) minimal diversity, and (3) an amount in controversy that exceed $5 million, exclusive of interest and costs.

2.     This Court has personal jurisdiction over APPLE because it is domiciled in the State of California.  *See Milliken v. Meyer*, 331 U.S. 457, 462–63 (1940).

3.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) and (c).

## PARTIES

4.     Plaintiff MAHAN TALESHPOUR is an individual who, at all times relevant herein, was a resident of Los Angeles, California.  He brings this action on behalf of himself and all members of the putative class.

5.     Plaintiff RORY FIELDING is an individual who, at all times relevant herein, was a resident of Boca Raton, Florida.  He brings this action on behalf of himself and all members of the putative class.

6.     Plaintiff PETER ODOGWU is an individual who, at all times relevant herein, was a resident of Framingham, Massachusetts.  He brings this action on behalf of himself and all members of the putative class.

7.     Plaintiff WADE BUSCHER is an individual who, at all times relevant herein, was a resident of Cordova, Alaska.  He brings this action on behalf of himself and

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

all members of the putative class.

8.    Plaintiff GREGORY KNUTSON is an individual who, at all times relevant herein, was a resident of Seattle, Washington.  He brings this action on behalf of himself and all members of the putative class.

9.    Plaintiff DARIEN HAYES is an individual who, at all times relevant herein, was a resident of St. Peters, Missouri.  He brings this action on behalf of himself and all members of the putative class.

10.    Plaintiff LIAM STEWART is an individual who, at all times relevant herein, was a resident of Summit, New Jersey.  He brings this action on behalf of himself and all members of the putative class.

11.    Plaintiff NATHAN COMBS is an individual who, at all times relevant herein, was a resident of Wayne, Michigan.  He brings this action on behalf of himself and all members of the putative class.

12.    APPLE is a corporation formed under the laws of the State of California, having its principal place of business at One Apple Park Way, Cupertino, California 95014.

## FACTUAL ALLEGATIONS

13.    APPLE is the largest technology company in the world.  Since 1977, it has designed, manufactured, warranted, marketed, advertised, and sold computers and related products and services throughout the world, including the State of California.

14.    APPLE sells its products from its storefront locations and through its online stores.  Its products are also available for purchase through third-party retailers such as Amazon, Best Buy, and Walmart.

### The Defective MacBook Pro

15.    In 2016, APPLE introduced its updated 13- and 15-inch MacBook Pro models.  APPLE advertised and promoted these laptops with specific language and imagery meant to convey to consumers the superiority of their monitors and displays. APPLE described these laptops as "revolutionary" and "groundbreaking," with

"breakthrough performance." The laptops' main selling point was the quality of its display. APPLE described the displays – in the context of specific and measurable claims about the displays' quality – as its "brightest and most colorful Retina display yet."[1] APPLE's senior vice-president of World Marketing claimed the new MacBook Pros had "the best Mac display ever."[2] Plaintiffs and the putative class members relied on representations such as these when deciding to purchase a MacBook Pro. *See* Figure 1 (example of APPLE's marketing of the laptops' display).

**(Figure 1)**



Apple's Brightest, Most Colorful Notebook Display

MacBook Pro's Retina display is brighter, thinner and supports wider color gamut, making it  the best notebook display ever made.

The best Mac display ever delivers images that are more vivid, reveal even greater detail and appear more lifelike than ever. As thin as a MacBook display at .88 mm, the Retina display on the new MacBook Pro at 500 nits of brightness, is an amazing 67 percent brighter than the previous generation, features 67 percent more contrast and is the first Mac notebook display to support wider color gamut. And with power-saving technologies like a larger pixel aperture, a variable refresh rate and more power-efficient LEDs, the display consumes 30 percent less energy than before.

---

[1] https://www.apple.com/newsroom/2016/10/apple-unveils-groundbreaking-new-macbook-pro/

[2] *Id.*

16.     To make these MacBook Pros thinner and sleeker, APPLE used thin flexible backlight ribbon cables to connect the lighting mechanism of the display screen to the display controller board.   These backlight ribbon cables wrap around the display controller board and are secured by a pair of spring-loaded covers.  *See* Figure 2 (picture of flex ribbon cables wrapping around board).

**(Figure 2)**



FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

17.   APPLE's placement and configuration of the backlight ribbon display cables within the internal control board of both the 13- and 15-inch MacBook Pros are substantially similar, if not nearly identical.  Most importantly, the way the ribbon cables wrap around the display controller board is the same in both size MacBook Pros.  *See* Figure 3 (the flex ribbon cables in the 13-inch) and Figure 4 (picture of the flex ribbon cables in the 15-inch).

**(Figure 3 – Inside the 13-inch)**



**(Figure 4 – Inside the 15-inch)**



6

18.    At first, these backlight ribbon cables function properly.  As owners open and close their MacBook Pros in the normal course of use, however, these cables rub against the control board and start to tear.  This tearing is caused by the deficient length of the backlight ribbon cables, which are too short and do not provide enough slack to withstand the repetitive opening and closing of the MacBook Pros.  *See* Figure 5 (arrow pointing to tearing of display cable caused by rubbing against the display board).

**(Figure 5)**



19.    At first, the tearing of the backlight ribbon display cables causes a "stage lighting" effect of alternating patches of light and darkness on the bottom of the display. *See* Figure 6 (example of the display lighting effect).

**(Figure 6)**



7

20.    Further ordinary use results in further tearing, which causes more severe display backlighting system failures such as those shown in Figures 7 and 8.  *See* Figure 7 and Figure 8 (examples of display backlighting system failures caused by the defect).

**(Figure 7)**



**(Figure 8)**



FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

21.     Lastly, further ordinary use and further resultant tearing causes a complete failure of the display backlighting system when its user opens the display screen beyond approximately 40-degrees.  A display screen with stage lighting, chunks of color that obscures other text and images, and that eventually goes dark are all defects that render the laptops unusable and unfit for the ordinary purposes for which a laptop computer is used.  This is especially true because Plaintiffs and other APPLE consumers buy APPLE computer products because of the company's claims that it produces exceptional visual display monitors.

22.     Given the substantial similarity of the internal design of the two sizes of the MacBook Pro (13- and 15-inches), the cause of the above-pled backlight ribbon display cable defect is identical for both size laptops.  Accordingly, both size laptops suffer from the same defective design.

23.     Although APPLE's use of these display cables results in a thinner and sleeker MacBook Pro, the drawback of this design—an unusable laptop screen—clearly outweighs the benefit.

24.     Although APPLE provides limited one-year warranties for its MacBook Pros, the backlight ribbon display cable defect typically manifests itself outside the warranty period.  Consequently, consumers who experience this defect must pay out-of-pocket to repair their cables or buy a new laptop.

25.     Although the cables themselves would normally cost only a few dollars to replace, in an effort to make the display as thin as possible, APPLE designed the backlight display cables into the display mechanism itself.  Consequently, the cables cannot be individually replaced.  Instead, the entire display unit needs to be replaced whenever the backlight ribbon display cables tear.

26.     Replacing the entire display costs between $600.00 and $850.00.  Consumers who purchased an AppleCare plan (i.e., an extended APPLE warranty) fare only slightly better.  They are still charged between $99.00 and $299.00 to have their display replaced, while others have been told the repair is not covered by AppleCare.

27.     APPLE is aware, and has been aware, of the defect in its backlight ribbon display cables.  APPLE has received complaints from numerous consumers about the display lighting effect and the failure of the display.  These complaints only increased as more MacBook Pros were sold and used.  Despite being aware of this defect, APPLE continued to sell and promote the MacBook Pros' display, and it fails to disclose the problem to its consumers.

28.     Additionally, APPLE employs a team of Reliability Engineers to ensure its products live up to its standards and those of its customers.  These Reliability Engineers are responsible for leading and executing reliability tests on APPLE technologies such as stress tests, the development of new test procedures to quantify the reliability of a design, and failure analysis resulting from these tests.  Therefore, this intensive pre-release testing would have alerted APPLE to the tearing and ultimate failure of the backlight ribbon cables.

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

29.     APPLE took nearly two years to attempt to remedy the backlight ribbon display cable defect.  In July 2018, APPLE released a new model of its 13 and 15-inch MacBook Pros with backlight ribbon display cables two millimeters longer than in the earlier models.  APPLE intended this "fix" to give the cables more room and slack to wrap around the display board so they would not rub against it when the laptop is opened and closed.  *See* Figure 9 (comparison of the length of the cables in the 15-inch model, post-2018 on left, pre-2018 on right).

**(Figure 9)**

 

30.     Additionally, in May 2019, APPLE launched the MacBook Pro Display Backlight Service Program.[3]  Under this program, APPLE agreed to replace the cables/display on 13-inch MacBook Pro 2016 models that experience the stage lighting effect or a total failure of the display backlighting system.  It will also refund the owner of that specific model and year MacBook who paid to have their cables/display fixed.  However, despite both the 13- and 15-inch MacBook Pros having the same defect as detailed above, this program does not cover the 15-inch MacBook Pro model.  Additionally, the program does not cover 13-inch MacBook Pros sold after 2016, even though these later models are substantially similar to the 13-inch MacBook Pro 2016

---

[3] https://support.apple.com/13-inch-macbook-pro-display-backlight-service

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

model.  By limiting the Display Backlight Service Program to only the 13-inch MacBook Pro 2016 model, APPLE seems to suggest this is the only year and MacBook Pro model affected by the backlight ribbon cable defect.  However, as pled above, APPLE released a new MacBook Pro in 2018 with flex display cables two millimeters longer in both the 13- and 15-inch models.  Although the size of the display screens remained the same in the new models, the length of the display backlight cables did not.

31.     Despite the revised longer display cable length in both the 13- and 15-inch MacBook pros and the limited Display Backlight Service Program, APPLE continues to deny there was ever a defect in its display cables.  It also continues to represent that these MacBook Pros have superior displays, despite their clear defects.

### Plaintiffs' Experiences

#### Mahan Taleshpour

32.     On April 13, 2017, Plaintiff Taleshpour purchased a new 15-inch 2016 MacBook Pro for approximately $2,526.00 at an APPLE store in Sherman Oaks, California.

33.     Plaintiff Taleshpour relied on APPLE's display representations in purchasing his 15-inch MacBook Pro.  Before purchasing the laptop, Plaintiff saw advertisements and marketing materials on APPLE's website in which APPLE represented the MacBook had the best display to date.

34.     In January 2020, the display screen on Plaintiff Taleshpour's MacBook Pro began exhibiting the stage lighting effect.

35.     On March 18, 2020, Plaintiff Taleshpour took his MacBook to an Apple Authorized Service Provider to fix his display.  The provider told him AppleCare did not cover the repair and that it would cost $850.00 to replace the display.

36.     As a result of further use, Plaintiff Taleshpour's MacBook Pro became inoperable.  In July 2020, Plaintiff had to purchase a new laptop.

37.     Had Plaintiff Taleshpour known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

12

**Rory Fielding**

38.     During August 2017, Plaintiff Rory Fielding purchased a new 15-inch 2017 MacBook Pro for approximately $2,500.00 from the APPLE website while living in Boca Raton, Florida.

39.     Plaintiff Fielding relied on APPLE's display representations in purchasing his 15-inch MacBook Pro.   Before purchasing the laptop, Plaintiff Fielding saw advertisements and marketing materials on APPLE's website in which APPLE represented the MacBook had the best display to date.

40.     In May 2020, the display screen on Plaintiff Fielding's MacBook Pro began exhibiting vertical pink lines.  With further use, the MacBook Pro's display backlighting system would completely fail if opened past a certain angle. Thus, the MacBook Pro became inoperable.

41.     In May 2020, Plaintiff Fielding took his MacBook to an Apple Authorized Service Provider to fix his display.  The provider told him it would cost approximately $850 to replace the display.  Later that month, Plaintiff Fielding paid to have his MacBook Pro repaired.

42.     Had Plaintiff Fielding known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Peter Odogwu**

43.     On April 13, 2017, Plaintiff Peter Odogwu purchased a new 13-inch 2017 MacBook Pro for approximately $2,500.00 at an APPLE store in Boston, Massachusetts.

44.     Plaintiff Odogwu relied on APPLE's display representations in purchasing his 13-inch MacBook Pro.   Before purchasing the laptop, Plaintiff Odogwu saw advertisements and marketing materials on APPLE's website in which APPLE represented the MacBook had the best display to date.

45.     In March 2020, the display screen on Plaintiff Odogwu's MacBook Pro began exhibiting the stage lighting effect.  Shortly thereafter, the display backlighting system failed completely, and the MacBook Pro became inoperable.

46.     In March 2020, Plaintiff Odogwu called Apple Support and an APPLE team member ran diagnostics on his MacBook Pro over the telephone.   The APPLE team member told him that it would cost approximately $600.00 to replace the display. Plaintiff Odogwu replaced his original MacBook Pro with a used laptop.

47.     Had Plaintiff Odogwu known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Wade Buscher**

48.     On April 13, 2016, Plaintiff Wade Buscher purchased a new 15-inch 2016 MacBook Pro for approximately $2,500.00 on the APPLE website while living in Cordova, Alaska.

49.     Plaintiff Buscher relied on APPLE's display representations in purchasing his 15-inch MacBook Pro.   Before purchasing the laptop, Plaintiff Buscher saw advertisements and marketing materials on APPLE's website in which APPLE represented the MacBook had the best display to date.

50.     In April 2020, the display screen on Plaintiff Buscher's MacBook Pro began exhibiting the stage lighting effect.

51.     Later in April, after his MacBook Pro became inoperable, Plaintiff Buscher mailed his MacBook Pro to APPLE for repair.   Plaintiff Buscher was charged approximately $500.00 to repair the display screen.

52.     Had Plaintiff Buscher known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Gregory Knutson**

53.     On November 6, 2016, Plaintiff Gregory Knutson purchased a new 15-inch 2016 MacBook Pro for approximately $2,858.37 at an APPLE store in Seattle, Washington.

54.     Plaintiff Knutson relied on APPLE's display representations in purchasing his 15-inch MacBook Pro.   Before purchasing the laptop, Plaintiff Knutson saw advertisements and marketing materials on APPLE's website in which APPLE

14

represented the MacBook had the best display to date.

55. In March 2020, the display screen on Plaintiff Knutson's MacBook Pro began exhibiting vertical pink lines.

56. In June 2020, after the MacBook became inoperable, Plaintiff Knutson took his MacBook Pro to an Apple Authorized Repair Shop. Plaintiff Knutson was charged approximately $770.00 to repair the display.

57. Had Plaintiff Knutson known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Darien Hayes**

58. In September 2016, Plaintiff Darien Hayes purchased a new 15-inch 2016 MacBook Pro for approximately $2,700.00 at an APPLE store in St. Peters, Missouri.

59. Plaintiff relied on APPLE's display representations in purchasing his 15-inch MacBook Pro. Before purchasing the laptop, Plaintiff Hayes saw advertisements and marketing materials on APPLE's website in which APPLE represented the MacBook had the best display to date.

60. In January 2020, the display screen on Plaintiff Hayes' MacBook Pro began exhibiting vertical pink lines.

61. In May 2020, after his MacBook became inoperable, Plaintiff Hayes took his MacBook to an APPLE store to fix his display. An APPLE team member told him that it would cost $795.00 to replace the display. As of the date of this complaint, Plaintiff Hayes has not been able to repair his display.

62. Had Plaintiff Hayes known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Liam Stewart**

63. In 2017, Plaintiff Liam Stewart purchased a new 15-inch 2017 MacBook Pro for approximately $2,500.00 from the APPLE website while living in Summit, New Jersey.

64. Plaintiff Stewart relied on APPLE's display representations in purchasing

15

his 15-inch MacBook Pro.   Before purchasing the laptop, Plaintiff Stewart saw advertisements and marketing materials in which APPLE represented the MacBook had the best display to date.

65.    In March 2019 Plaintiff Stewart's MacBook Pro began exhibiting the stage lighting effect.  In July 2019, Plaintiff Stewart's MacBook Pro became inoperable.

66.    In August 2019, Plaintiff Stewart took his MacBook to an APPLE store to fix his display.   Plaintiff Stewart was charged approximately $700.00 to replace the display.

67.    Had Plaintiff Stewart known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Nathan Combs**

68.    On July 20, 2018, Plaintiff Nathan Combs purchased a new 15-inch 2018 MacBook Pro for approximately $2,500.00 at an APPLE store in Ann Arbor, Michigan.

69.    Plaintiff Combs relied on APPLE's display representations in purchasing his 15-inch MacBook Pro.   Before purchasing the laptop, Plaintiff Combs saw advertisements and marketing materials in which APPLE represented the MacBook had the best display to date.

70.    In March 2020, the display screen on Plaintiff Combs' MacBook Pro began exhibiting the stage lighting effect.

71.    In June 2020, after his MacBook Pro became inoperable, Plaintiff Combs took his MacBook to a repair shop to fix his display.  Plaintiff Combs was told it would cost approximately $1,000.00 to repair the display.  As of the date of this complaint, Plaintiff Combs has not been able to repair his display.

72.    Had Plaintiff Combs known of the display cable defect, he would not have purchased his MacBook or would have paid significantly less for it.

**Other Consumers' Experiences**

73.    Since the backlight ribbon display cables are almost certain to tear with normal laptop use, tens of thousands of consumers have reported the stage lighting effect

16

and/or complete failure of the display screen.

74.   The defect has become so prevalent in the MacBook Pros that a petition on Change.org was created to demand that APPLE address what its customers have dubbed "flexgate."  To date, over 26,000 consumers have signed the petition.[4]

75.   Additionally, many consumers have taken to internet discussion boards to complain about the cable defect and APPLE's failure to include 15-inch models in the Display Backlight Service Program.[5]  A small sampling of these comments details the same defect as the Plaintiffs':

- Kennday, posted on Sept. 13, 2019:

  #Flexgate problem on my 15" 2016 model, I bought at end of 2017, have it for mere 20 months so far.  The screen went out, apple store quote[d] me $680 + tax to replace! [6]

- Vijaynlsn, posted on Sept. 19, 2019:

  My MacBook Pro 15" [has] the same issue as the 13" . . . . model but Apple denied the free service saying the replacement program is only for 13" models.[7]

- Furnu_thtsme, posted on Sept. 21, 2019:

  Last month I started having a backlight issue on my Mac . . . . However, yesterday my Mac just went black whenever I extended past a certain angle.  This was

---

[4]  The Change.org petition is available at https://www.change.org/p/apple-fix-all-macbook-pro-2016-and-later-with-stage-light-effect-or-backlight-shutdown-flexgate (last visited May 4, 2020).

[5]  *See e.g.,* https://discussions.apple.com/thread/250461433?page=3; https://twitter.com/hashtag/flexgate; https://www.ifixit.com/Answers/View/486856/Screen+issues,+Back+light+dims+&+goes+out

[6]  https://discussions.apple.com/thread/250461433?page=4

[7]  *Id.*

frustrating as I could not work well with my laptop. Therefore, I [went] to the apple store in downtown Palo Alto. Instantly the representative knew what the issue was and was like "Okay this issue is common on the macbook pros, don't worry Apple has a program that repairs it for free". Little did he and I know that that program only covers the 13inch Macs. He was surprised since he said his coworkers have seen this issue a lot for 15inches also. The cost was turning out to be $680+ tax.[8]

- Marekziz, posted on Oct. 7, 2019:

  I'm trying to understand why 13 inch get repairs, but 15 inch do not. . . . I have 15 inch , I'm unable to use it as a laptop. Calling support gave no answers.[9]

- Davidbenedek, posted on Oct. 11, 2019:

  Apple needs to resolve this and extend the warranty to 15" models. It is ridiculous to have something this faulty and not take responsibility for it. Anyone know if simply exchanging the flex cable solves this or only the full 700$ repair? If apple doesn't extend the repair Program to 15" it'll be the last apple I own.[10]

- Dylan1222, posted on Oct. 21, 2019:

  Same problem. 15" macbook pro 2016. More than 45 degrees and the screen shuts off. . . . Ridiculous that they

---

[8] https://discussions.apple.com/thread/250652272

[9] https://discussions.apple.com/thread/250461433?page=4

[10] https://discussions.apple.com/thread/250461433?page=4

refuse to acknowledge the issue exists in 15" models.[11]

- Keelie_, posted Oct. 25, 2019:

    I have dealt with the annoyance of a spotlight effect on my Macbook Pro 15" for over a year now.  Randomly the backlight would go out too or not go on after opening. . . . Recently the backlight went out and could not be restored. My computer was rejected for the Macbook Pro 13" program and I was $600+ for a screen replacement. Insofar that the same cable was used in both models, I can only assume that Apple is aware that both models are affected and decided that it was inconvenient to expand the program to include the 15".  I hope that Apple will announce a program for the 15" this week, on the anniversary of its release.  This will restore some faith in the company but either way, the product design and manner in which this issue has been handled is a huge disappointment.[12]

- Abo2019, posted on Nov. 20, 2019:

    This is ridiculous, an expensive laptop like this and then after 1.5 years, my keyboard is faulty, the speakers don't work properly and now this backlight issue.  If my MacBook Pro 15" 2016 with touchbar is having the same issue as the 13" [] models why am I being charged $800 plus to repair it? I understand that a new design can have

---

[11] *Id.*

[12] *Id.*

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

de3sign flaws but at least take full responsibility for it![13]

76.     APPLE thwarted public discussion of these defects by deleting similar complaints about the backlight ribbon cable defects from discussion forums on the APPLE website.  As consumer complaints about the cable defects escalated, APPLE further concealed the problems.

## CLASS ALLEGATIONS

77.     Plaintiffs bring this action on behalf of themselves and on behalf of others similarly situated.  They seek class certification under Federal Rule of Civil Procedure 23.

78.     The proposed class is defined:

**The Nationwide Class**

>           All persons within the United States who purchased a MacBook Pro 2016-year model or later.  This class does not include persons who purchased a MacBook Pro covered by APPLE's 13-inch MacBook Pro Display Backlight Service Program.  It also does not include persons who purchased a used MacBook Pro.

79.     Alternatively, the proposed subclasses are defined:

**The California Subclass**

>           All persons within the State of California who purchased a MacBook Pro 2016-year model or later.  This class does not include persons who purchased a MacBook Pro covered by APPLE's 13-inch MacBook Pro Display Backlight Service Program.  It also does not include persons who

---

[13] *Id.*

20

1    purchased a used MacBook Pro.

2    **The Washington Subclass**

3        All persons within the State of Washington who
4        purchased a MacBook Pro 2016-year model or
5        later.  This class does not include persons who
6        purchased a MacBook Pro covered by APPLE's
7        13-inch MacBook Pro Display Backlight Service
8        Program.  It also does not include persons who
9        purchased a used MacBook Pro.

10   **The Florida Subclass**

11       All persons within the State of Florida who
12       purchased a MacBook Pro 2016-year model or
13       later.  This class does not include persons who
14       purchased a MacBook Pro covered by APPLE's
15       13-inch MacBook Pro Display Backlight Service
16       Program.  It also does not include persons who
17       purchased a used MacBook Pro.

18   **The New Jersey Subclass**

19       All persons within the State of New Jersey who
20       purchased a MacBook Pro 2016-year model or
21       later.  This class does not include persons who
22       purchased a MacBook Pro covered by APPLE's
23       13-inch MacBook Pro Display Backlight Service
24       Program.  It also does not include persons who
25       purchased a used MacBook Pro.

26   **The Michigan Subclass**

27       All persons within the State of Michigan who
28       purchased a MacBook Pro 2016-year model or

later.  This class does not include persons who purchased a MacBook Pro covered by APPLE's 13-inch MacBook Pro Display Backlight Service Program.  It also does not include persons who purchased a used MacBook Pro.

**The Alaska Subclass**

All persons within the State of Alaska who purchased a MacBook Pro 2016-year model or later.  This class does not include persons who purchased a MacBook Pro covered by APPLE's 13-inch MacBook Pro Display Backlight Service Program.  It also does not include persons who purchased a used MacBook Pro.

**The Missouri Subclass**

All persons within the State of Missouri who purchased a MacBook Pro 2016-year model or later.  This class does not include persons who purchased a MacBook Pro covered by APPLE's 13-inch MacBook Pro Display Backlight Service Program.  It also does not include persons who purchased a used MacBook Pro.

**The Massachusetts Subclass**

All persons within the State of Massachusetts who purchased a MacBook Pro 2016-year model or later.  This class does not include persons who purchased a MacBook Pro covered by APPLE's 13-inch MacBook Pro Display Backlight Service Program.  It also does not include persons who

purchased a used MacBook Pro.

Plaintiffs reserve the right to modify, change, or expand the class definitions based upon discovery and further investigation. Plaintiffs' counsel has been retained by Kendall Bardin, and intends to seek leave to allege a cause of action under Tex. Bus. & Com Code § 17.50 *et seq.* after the statutory cure period expires on August 8, 2020.

80.     These individuals are excluded from the class: APPLE and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel.

81.     In addition, or in the alternative, to the above-defined class, Plaintiffs reserve the right to establish different subclasses to facilitate the effective management of the class.

82.     The class meets the requirements of Federal Rule of Civil Procedure 23(a), (b)(1) & (2):

   a.     Numerosity: APPLE sold hundreds of thousands of 13- and 15-inch MacBook Pro laptops in the United States. Members of the class are widely dispersed throughout the country. Class members are therefore so numerous that joinder of all class members if impracticable.

   b.     Commonality/Predominance:   There are questions of law and fact common to the class that predominate over questions affecting only individual members. These include, but are not limited to:

   •     Whether the MacBook Pros were defective at the time of sale;

   •     Whether the display cable defect substantially impairs the value of the MacBook Pros;

   •     Whether APPLE knew of the defect but continued to promote and sell the MacBook Pros without disclosing the defect or its consequences to consumers;

   •     Whether a reasonable consumer would consider the display cable defect and its consequences important to whether to purchase a

23

MacBook Pro;

- Whether APPLE breached implied warranties connected with the MacBook Pro;

- Whether APPLE's representations and omissions relating to the display cable and its embedded defect were likely to deceive a reasonable consumer;

- Whether APPLE acted unlawfully, unfairly, and/or fraudulently;

- Whether the defect results in a diminution of value in Plaintiffs' and the class members' MacBook Pros;

- Whether Plaintiffs and the class members overpaid for their MacBook Pro because of the display cable defect;

- Whether Plaintiffs and the class members may have equitable relief, including restitution and injunctive relief; and

- Whether Plaintiffs and the class members are entitled to damages or other monetary relief, and if so, in what amount.

c.    Typicality:  Plaintiffs are members of the class they seek to represent, and Plaintiffs' claims are typical of the claims of the other class members.  Like the other class members, Plaintiffs purchased a MacBook Pro laptop that contained defective display cables.

d.    Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the class they seek to represent because (1) Plaintiffs have retained experienced litigation counsel with significant experience in class action litigation who will adequately represent the interest of the class; (2) Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and the class members; and (3) Plaintiffs are knowledgeable about the subject matter of this action and will assist counsel in the prosecution of this action.

e.    Superiority:  A class action provides a fair and efficient method of

24

adjudicating this controversy and is superior to other available methods of adjudication in that: (1) neither the size of the class, nor any other factor, make it likely that difficulties will be encountered in the management of this action as a class action; (2) the prosecution of separate actions by individual class members or the individual prosecution of separate actions by individual class members or the individual joinder of all class members in this action is impracticable, and would create a massive and unnecessary burden on the resources of the courts, and could cause inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each members of the class; (3) because of the disparity of resources available to APPLE versus those available to individual class members, prosecution of separate actions would work a financial hardship on many of the class members; (4) the conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each class member and meets all due process requirements as to fairness to all parties; and (5) all of the claims arise out of the same circumstances and course of conduct.

## FIRST CAUSE OF ACTION

### (Violations of the California Unfair Competition Law)

### (Against Defendant APPLE INC.)

83.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

84.   Plaintiff Mahan Taleshpour asserts this claim on behalf of himself and the California Subclass.

85.   California Business & Professions Code sections 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

### Unlawful

86.   APPLE's conduct is unlawful, in violation of the UCL, because it violates the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act.

**Unfair**

87.     APPLE's conduct is unfair, in violation of the UCL, because it violates the State of California's public policy, legislatively declared in the Consumer Legal Remedies Act and the Song-Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.  APPLE has violated this public policy because one of the MacBook Pros' most central functions, its display screen, is defective for the reasons pled above.

88.     APPLE engaged in unfair business practices and acts in at least these respects:

a.     APPLE promoted and sold MacBook Pros it knew were defective because they contained a display screen certain to fail prematurely;

b.     APPLE promoted and sold MacBook Pros with a defective display screen despite knowing that users do not expect the display screen to materially degrade over time;

c.     APPLE failed to disclose that the MacBook Pros were defective, and represented through advertising, its website, product packaging, press releases, and other sources that the MacBook Pros possessed particular qualities inconsistent with APPLE's actual knowledge of the product;

d.     APPLE failed to exercise quality control and due diligence over the MacBook Pros before placing them on the market; and

e.     APPLE failed to minimize the scope and severity of the problems with the MacBook Pros, refusing to acknowledge that their display screens were defective and failing to provide adequate relief to all consumers.

89.     The gravity of harm resulting from APPLE's unfair conduct outweighs any potential utility.  The practice of selling defective laptops without providing an adequate remedy to cure the defect, and continuing to sell those laptops without full and fair disclosure of the defect, harms the public at large and is part of a common and uniform course of wrongful conduct.

26

90.     The harm from APPLE's conduct was not reasonably avoidable by consumers.  The MacBook Pros suffer from a latent defect, and even after receiving a large volume of consumer complaints, APPLE did not disclose the defect.  Plaintiffs and the class members did not know of, and had no reasonable means of discovering, that the MacBook Pros' display cables were defective.

91.     There were reasonably available alternatives that would have furthered APPLE's business and design interests of building a sleek computer and satisfying and retaining its customers, all while maintaining profitability by: (1) acknowledging the defect and providing a permanent fix for defective display cables; (2) adequately disclosing the defect to prospective purchasers; (3) extending the warranty for the MacBook Pros; and (4) offering refunds or suitable non-defective replacement laptops to consumers with failed display screens.

### Fraud by Omission

92.     APPLE's conduct is fraudulent, in violation of the UCL, because it is likely to deceive a reasonable consumer and:

   a.      APPLE knowingly and intentionally concealed from Plaintiffs and the class members that the MacBook Pros contain a latent defect that renders the display screen prone to failure;

   b.      APPLE volunteered information to Plaintiffs and the class members through advertising and other means that the MacBook Pros, and their display screens, were functional and premium products without disclosing facts that would have materially qualified those representations; and

   c.      APPLE promoted the high quality and premium features of the MacBook Pros, including the superior Retina display, despite knowing the MacBook Pros were defective, and failed to correct its misleading disclosures.

   d.      APPLE knowingly and intentionally deleted complaints about the cable defect from discussion forums on the APPLE website.

93.     APPLE had ample means and opportunities to alert Plaintiffs and the class

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

members of the defective nature of the MacBook Pros, including on APPLE's webpages; in its advertisements; on the MacBook Pros' external packaging; and as part of the standardized MacBook Pro setup process. Had APPLE disclosed that the MacBook Pros were defective, Plaintiffs and the class members would not have purchased a MacBook Pro, would not have purchased a MacBook Pro at the prices they did, or would have returned their MacBook Pros during their respective buyer's remorse periods.

94.    APPLE was under a duty to disclose the display backlight cable defect because of its exclusive knowledge of the display defect, exclusive knowledge of material facts not known or reasonably accessible to Plaintiffs, and because it made representations about the MacBook Pro and its display without disclosing the display defect.

95.    APPLE was under a duty to disclose the backlight ribbon cable defect because the omission of the defect is material and because the defect renders the MacBook Pro incapable of its intended use, and thus impairs a central function of the product.

96.    Plaintiffs and the class members suffered injury in fact, including lost money or property, because of APPLE's unlawful, unfair, and fraudulent acts and omissions.

97.    Through its unlawful, unfair, and fraudulent conduct, APPLE acquired Plaintiffs and the class members' money directly and as passed on by APPLE's authorized resellers (e.g., Best Buy, Amazon, and Walmart).

98.    Plaintiffs and the class members seek appropriate relief, including (1) restitutionary disgorgement under the UCL, (2) actual damages under the warranty claims, and (2) such orders or judgments as may be necessary to enjoin APPLE from continue its unfair, unlawful, and fraudulent practices.

99.    Plaintiffs also seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

/ / / /

/ / / /

## SECOND CAUSE OF ACTION

### (Violations of the California Consumers Legal Remedies Act ("CLRA"))

### (Against Defendant APPLE INC.)

100.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

101.   Plaintiff Mahan Taleshpour asserts this claim on behalf of himself and the California Subclass.

102.   APPLE is a "person" within the meaning of California Civil Code sections 1761, subdivision (c), and 1770, and provided "goods" within the meaning of sections 1761, subdivision (a), and 1770.

103.   APPLE's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770, subdivisions (a)(5), (7), and (9), because they include unfair and deceptive acts and practices in connection with transactions—the sale of defective laptops.  In violation of the CLRA, APPLE:

      a.   Represented that the MacBook Pros had characteristics, uses, and benefits they did not have;

      b.   Represented that the MacBook Pros were of a standard, quality or grade when in fact they were not; and

      c.   Advertised the MacBook Pros with the intent not to sell them as advertised.

104.   Through its design, development, and consumer complaints, APPLE knew that the MacBook Pros' display backlight ribbon cable was defective and prone to failure.

105.   APPLE was under a duty to disclose that the MacBook Pros were defective because it knew of the defect—through research, consumer complaints, and pre-release testing—and because it made materially misleading representations about the MacBook Pros' high quality and premium features, including the display.

106.   APPLE had ample means and opportunities to disclose to Plaintiffs and the class members that the MacBook Pros were defective, including through advertisements,

on external packaging, and during the laptop's setup process. Despite its exclusive knowledge and opportunities to disclose the laptop's defective nature, APPLE failed to disclose the defect to Plaintiffs and the class members either before purchase or before Plaintiffs and the class members' respective buyer's remorse period expired.

107. APPLE's misrepresentations and omissions were material. Had Plaintiffs and the class members known that the MacBook Pros were defective, they would not have purchased a MacBook Pro, would not have purchased it at the prices they did, or would have returned their MacBook Pro during their respective buyer's remorse periods.

108. Plaintiffs and the class members seek an injunction preventing APPLE from representing the high quality and premium features of the MacBook Pro displays.

109. Under California Civil Code sections 1782, subdivision (a), Plaintiff Mahan Taleshpour sent a CLRA notice to APPLE's principle place of business on April 27, 2020 via certified mail. The CLRA advised APPLE that it was in violation of the CLRA and must correct, replace, or otherwise rectify the goods alleged to be in violation of California Civil Code section 1770.

110. Plaintiffs and the class members were injured by APPLE's CLRA violations. As a result, Plaintiffs and the class members seek actual damages in an amount to be proven to trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

111. In accordance with California Civil Code section 1780, subdivision (d), Plaintiff Taleshpour's CLRA venue declaration is attached to this complaint.

## THIRD CAUSE OF ACTION

### (Fraudulent Concealment)

### (Against Defendant APPLE INC.)

112. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

113. Plaintiff Mahan Taleshpour asserts this claim on behalf of himself and the California Subclass.

114.   APPLE intentionally suppressed and concealed material facts about the performance and quality of the MacBook Pro.  As alleged herein, APPLE was aware of numerous consumer complaints about defect-related problems, but never disclosed the defect to Plaintiffs and the class members.

115.   Because the defect in the MacBook Pro's display is latent and unobservable until it arises, Plaintiffs and the class members had no reasonable means of knowing that APPLE's representations about the MacBook Pro were incomplete, false, or misleading, or that it had failed to disclose that they are defective.  Plaintiffs and the class members did not and reasonably could not have discovered APPLE's deceit before they purchased the MacBook Pro or before the end of their respective buyer's remorse periods.

116.   Had Plaintiffs and the class members known that the MacBook Pros were defective, they would not have purchased a MacBook Pro, would not have purchased it at the price they did, or would have returned it during their respective buyer's remorse periods.

117.   APPLE had a duty to disclose the defect because, through advertising, press releases and statements made during the launch event, on its webpages, in its online purchase portal, and in other sources that Plaintiffs and the class members encountered before purchasing their laptops, APPLE made representations regarding the supposed high quality of the MacBook Pro and its premium features—including a superior display—but failed to disclose facts that would have materially qualified these representations.  Having volunteered information relating to the display to Plaintiffs and the class members, APPLE had a duty to disclose the whole truth about the display and, in particular, its defective nature.

118.   APPLE concealed the defect to sell more MacBook Pros at a premium price, prevent damage to its brand, and avoid the costs of developing a fix for the defect and of repairs, replacements and refunds under its limited warranty.  Additionally, APPLE knowingly and intentionally deleted complaints about the cable defect from discussion forums on the APPLE website.

119. The facts about the MacBook Pro backlight ribbon display cables that APPLE suppressed and omitted were material, and Plaintiffs and the class members were unaware of them until they experienced the defect. Had APPLE disclosed the display defect, including through advertising, press releases, the MacBook Pro packaging, or the initial set up process, Plaintiffs and the class members would not have purchased a MacBook Pro, would have paid substantially less for it, or would have returned it for a refund.

120. When purchasing a MacBook Pro, Plaintiffs and the class members reasonably relied to their detriment upon APPLE's material misrepresentations and omissions regarding the quality of the MacBook Pro and the absence of a product defect.

121. Plaintiffs and the class members sustained damages as a direct and proximate result of APPLE's deceit and fraudulent concealment. Among other damage, Plaintiffs and the class members did not receive the value of the premium price they paid for the MacBook Pro.

122. APPLE's fraudulent concealment was malicious, oppressive, deliberate, intended to defraud Plaintiffs and the class members and enrich APPLE, and in reckless disregard of Plaintiffs and the class members' rights, interests, and well-being. APPLE's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## FOURTH CAUSE OF ACTION

### (Violations of the Song-Beverly Consumer Warranty Act)

### (Against Defendant APPLE INC.)

123. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

124. Plaintiff Mahan Taleshpour asserts this claim on behalf of himself and the California Subclass.

125. Plaintiffs are "buyer[s]" within the meaning of California Civil Code section 1791, subdivision (b).

32

126.   APPLE is a manufacturer within the meaning of California Civil Code of section 1791, subdivision (j).  APPLE produced the MacBook Pros and was involved in all stages of the production and manufacturing processes.

127.   The MacBook is a "consumer good" within the meaning of California Civil Code section 1791, subdivision (a).

128.   Plaintiffs purchased the MacBook Pro for personal, family, or household purposes.

129.   APPLE impliedly warranted to Plaintiffs that the MacBook Pro purchased was "merchantable" under California Civil Code sections 1791.1, subdivision (a) and 1792.

130.   APPLE breached that implied warranty of merchantability by producing, manufacturing, and selling laptops not of merchantable quality.  The MacBook Pro is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.  Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that eventually goes dark, rendering the laptop incapable of use by any consumer.  The MacBook Pro is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

131.   The defect in the MacBook Pro is latent.  Though the MacBook Pro appears operable when new, the backlight ribbon cable defect existed in the product at the time of sale and throughout the one-year limited warranty period.  Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under the Song-Berverly Act.

132.   Any attempt by APPLE to disclaim its implied warranty obligations under the Song-Berverly Act is ineffective due to its failure to adhere to California Civil Code sections 1792.3 and 1792.4.  Those sections provide that, to validly disclaim the implied

33

warranty of merchantability, a manufacturer must "in simple and concise language" state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis.  (2) The entire risk as to the quality and performance of the goods is with the buyer.  (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair."  APPLE's attempted warranty disclaimer does not conform to sections 1792.3 and 1792.4.

133.   As a direct and proximate cause of APPLE's breaches of the Song-Beverly Consumer Warranty Act, Plaintiffs and the class members have been damaged in an amount to be proven at trial.

134.   Plaintiffs seek costs and expenses, including reasonable attorneys' fees, under California Civil Code section 1794.

## FIFTH CAUSE OF ACTION

### (Violations of the Washington Consumer Protection Act)

### (Against Defendant APPLE INC.)

135.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

136.   Plaintiff Gregory Knutson asserts this claim on behalf of himself and the Washington Subclass.

137.   APPLE and Plaintiff Knutson, and the Washington Subclass members are a "person" under Wash. Rev. Code § 1986.010(1).

138.   APPLE's acts or practices, as set forth above, occurred in the conduct of "trade or commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

139.   Washington law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in conduct of any trade or practices."  Wash. Rev. Code. § 19.86.020.

140.   APPLE's acts and practices, described herein, are unfair in violation of Washington law for the reasons stated in paragraph 86 of the First Claim for Relief, *supra*.

141.   By selling defective MacBook Pro computers with initially exclusive

knowledge of the defect, and by failing to disclose the defect, APPLE acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

142.   APPLE also engaged in deceptive trade practices in violation of Washington Law, by promoting the high quality and premium features of the MacBook display while willfully failing to disclose and actively concealing the display's defective nature.

143.   APPLE committed deceptive acts and practices.  Had Plaintiff Knutson and the Washington Subclass members known that the MacBook displays were defective, they would not have purchased a MacBook or would have paid significantly less for a MacBook.   Among other injuries, Plaintiff Knutson and the Washington Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value.

144.   APPLE's violations of the Washington Consumer Protection Act present a continuing risk to Plaintiff Knutson and the Washington Subclass members, as well as to members of the public.  APPLE's unlawful acts and practices adversely affect the public interest.

145.   Under Wash. Rev. Code § 19.86.090, Plaintiff Gregory Knutson and the Washington Subclass seek an order enjoining APPLE's unfair and deceptive acts or practices, providing for appropriate monetary relief, including treble damages, and awarding reasonable attorneys' fees and costs.

146.   In accordance with Wash. Rev. Code. § 19.86.095, a copy of this First Amended Complaint has been served on the Attorney General of Washington.

## SIXTH CAUSE OF ACTION

### (Violation of the Implied Warranty of Merchantability)

### (Wash. Rev. Code § 62A.2-314)

### (Against Defendant APPLE INC.)

147.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

148.   Plaintiff Gregory Knutson asserts this claim on behalf of himself and the Washington Subclass.

35

149.   Plaintiff Gregory Knutson and the Washington Subclass are and at all relevant times were a "buyer" as defined in Wash. Rev. Code §§ 62A.2-103(1)(a).

150.   APPLE is and all relevant times was a "merchant" with respect to laptop computers under Wash. Rev. Code §§ 62A.2-104(1).

151.   The MacBook Pro is and at all relevant times was a "good" within the meaning of Wash. Rev. Code § 62A.2-105(1).

152.   A warranty that the MacBook Pro was in merchantable condition and fit for the ordinary purpose for which laptop computers are use is implied by law pursuant to Wash. Rev. Code § 62A.2-314

153.   The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used.   Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.   Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.   The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

154.   As a direct and proximate result of APPLE's breach of the implied warranty of merchantability, Plaintiff Gregory Knutson and the Washington Subclass have been damaged in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION

**(Violations of the Florida Deceptive and Unfair Trade Practices Act)**

**(Against Defendant APPLE INC.)**

155.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

156.   Plaintiff Rory Fielding asserts this claim on behalf of himself and the Florida

Subclass.

157.   Plaintiff Fielding and the Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

158.   APPLE engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

159.   The Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

160.   APPLE's act and practices, described herein, are unfair in violation of Florida law for the reasons stated in paragraph 86 of the First Claim for Relief, *supra*.

161.   APPLE also engaged in deceptive trade practices in violation of Florida law by promoting the high quality and premium features of the MacBook display while willfully failing to disclose and actively concealing the display's defective nature.

162.   APPLE committed deceptive acts and practices. Had Plaintiff Fielding and the Florida Subclass members known that the MacBook displays were defective, they would not have purchased a MacBook or would have paid significantly less for a MacBook. Among other injuries, Plaintiff Fielding and the Florida Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value.

163.   Plaintiff Rory Fielding and the Florida Subclass members are entitled to recover their actual damages, under Fla. Stat. § 501.211(2), and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

164.   Plaintiff Rory Fielding also seeks an order enjoining APPLE's unfair and deceptive acts or practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the Florida Deceptive and Unfair Trade Practices Act.

/ / / /

/ / / /

/ / / /

/ / / /

### EIGHTH CAUSE OF ACTION

#### (Violation of the Implied Warranty of Merchantability)

#### (Fla. Stat. § 672.314)

#### (Against Defendant APPLE INC.)

165.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

166.   Plaintiff Rory Fielding asserts this claim on behalf of himself and the Florida Subclass.

167.   Plaintiff Rory Fielding and the Florida Subclass are and at all relevant times were a "buyer" as defined in Fla. Stat. § 672.103.

168.   APPLE is and all relevant times was a "merchant" with respect to laptop computers under Fla. Stat. § 672.104.

169.   The MacBook Pro is and at all relevant times was a "good" within the meaning of Fla. Stat. § 672.104.

170.   A warranty that the MacBook Pro was in merchantable condition and fit for the ordinary purpose for which laptop computers are use is implied by law pursuant to Fla. Stat. § 672.314.

171.   The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used.   Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.   Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.   The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

172.   As a direct and proximate result of APPLE's breach of the implied warranty

38

of merchantability, Plaintiff Rory Fielding and the Florida Subclass have been damaged in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### (Violations of the New Jersey Consumer Fraud Act)

### (Against Defendant APPLE INC.)

173.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

174.   Plaintiff Liam Stewart brings this claim on behalf of himself and the New Jersey Subclass.

175.   Plaintiff Stewart, the New Jersey Subclass members, and APPLE are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

176.   The MacBook is "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

177.   APPLE's sale of the MacBook constitutes a "sale" within the meaning of N.J. Ann. § 56:8-1(e).

178.   New Jersey prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ."  N.J. Stat. Ann. § 56:8-2.

179.   APPLE's act and practices, described herein, are in violation of New Jersey law for the reasons stated in paragraph 86 of the First Claim for Relief, *supra*.

180.   APPLE employed unconscionable commercial practices in its advertising and sale of the MacBook.  APPLE's practices in connection with its advertising and sale of the MacBook entailed a lack of honest and fair dealing.

181.   APPLE also engaged in deceptive trade practices in violation of New Jersey law, by promoting the high quality and premium features of the MacBook display while willfully failing to disclose and actively concealing the display's defective nature.

182.   Plaintiff Stewart and the New Jersey Subclass members suffered ascertainable loss as a direct and proximate result of APPLE's unconscionable and deceptive acts or practices.  Had Plaintiff Stewart and the New Jersey Subclass members known that the MacBook displays contain a latent defect, they would not have purchased the MacBook or would have paid significantly less for it.  Among other injuries, Plaintiff Stewart and the New Jersey Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value.

183.   As permitted under N.J. Stat. Ann. § 56:8-19, Plaintiff Liam Stewart and the New Jersey Subclass members seek trebled damages, appropriate injunctive relief, and reasonable attorneys' fees.

184.   Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiffs will mail a copy of the complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

### TENTH CAUSE OF ACTION

**(Violation of the Implied Warranty of Merchantability)**

**(N.J. Stat. § 12A-314)**

**(Against Defendant APPLE INC.)**

185.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

186.   Plaintiff Liam Stewart asserts this claim on behalf of himself and the New Jersey Subclass.

187.   Plaintiff Liam Stewart and the New Jersey Subclass are and were at all relevant times  a "buyer" as defined in N.J. Stat. § 12A-103(1)(a).

188.   APPLE is and all relevant times was a "merchant" with respect to laptop computers under N.J. Stat. § 12A-104(1).

189.   The MacBook Pro is and at all relevant times was a "good" within the meaning of N.J. Stat. § 12A-105(1).

190.   A warranty that the MacBook Pro was in merchantable condition and fit for

the ordinary purpose for which laptop computers are use is implied by law pursuant to N.J. Stat. § 12A-314.

191.   The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used.   Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.   Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.   The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

192.   As a direct and proximate result of APPLE's breach of the implied warranty of merchantability, Plaintiff Liam Stewart and the New Jersey have been damaged in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION

### (Violations of the Michigan Consumer Protection Act)

### (Against Defendant APPLE INC.)

193.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

194.   Plaintiff Nathan Combs brings this claim on behalf of himself and the Michigan Subclass.

195.   The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."   Mich. Comp. Laws § 445.903.

196.   Plaintiff Combs, the Michigan Subclass members, and APPLE are "persons" within the meaning of the Michigan Consumer Protection Act.

197.   APPLE engaged in trade practices prohibited by the Michigan Consumer

Protection Act, including:

    a.    § 445.903(c): representing that goods or services have characteristics that they do not have;

    b.    § 445.903(e): representing that goods or services are of a particular standard if they are of another;

    c.    § 445.903(s): failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

    d.    § 445.903(bb): making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

    e.    § 445.903(cc): failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

    198.    By selling the defective MacBook with exclusive knowledge of the defect, and by promoting the high quality and premium features of the MacBook display which failing to disclose and actively concealing the display's defective nature, APPLE engaged in deceptive practice that violate Michigan law.

    199.    APPLE engaged in these deceptive practices with the intent that consumers like Plaintiff Combs and the Michigan Subclass members would rely on APPLE's representations and omissions when deciding whether to purchase a MacBook.

    200.    Plaintiff Combs and the Michigan Subclass members suffered ascertainable loss as a direct and proximate result of APPLE's deceptive acts or practices.  Had Plaintiff Combs and the Michigan Subclass members known that the MacBook keyboard contains a latent defect, they would not have purchased the MacBook or would have paid significantly less for it.  Among other injuries, Plaintiff Combs and the Michigan Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value.

    201.    Accordingly, Plaintiff Nathan Combs and the Michigan Subclass members seek actual damages, punitive damages, reasonable attorneys' fees and costs, and all other

relief permitted under the Michigan Consumer Protection Act.

## TWELFTH CAUSE OF ACTION

### (Violation of the Implied Warranty of Merchantability)

### (Mich. Stat. § 440.2314)

### (Against Defendant APPLE INC.)

202.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

203.   Plaintiff Nathan Combs asserts this claim on behalf of himself and the Michigan Subclass.

204.   Plaintiff Nathan Combs and the Michigan Subclass members are and were at all relevant times a "buyer" as defined in Mich. Stat. § 440.2103(1)(a).

205.   APPLE is and all relevant times was a "merchant" with respect to laptop computers under Mich. Stat. § 440.2104(1).

206.   The MacBook Pro is and at all relevant times was a "good" within the meaning of Mich. Stat. § 440.2105(1).

207.   A warranty that the MacBook Pro was in merchantable condition and fit for the ordinary purpose for which laptop computers are use is implied by law pursuant to Mich. Stat. § 440.2314.

208.   The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used.   Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.   Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.   The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

43

209.   As a direct and proximate result of APPLE's breach of the implied warranty of merchantability, Plaintiff Nathan Combs and the Michigan Subclass members have been damaged in an amount to be proven at trial.

## THIRTEENTH CAUSE OF ACTION

**(Violations of the Alaska Unfair Trade Practices and Consumer Protection Act)**

**(Against Defendant APPLE INC.)**

210.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

211.   Plaintiff Wade Buscher brings this claim on behalf of himself and the Alaska Subclass.

212.   APPLE engaged in unfair or deceptive acts or practices prohibited by the Alaska Unfair Trade Practices and Consumer Protection Act, including:

   a.   § 45.50.471(b)(2): representing that goods or services have characteristics that they do not have;

   b.   § 45.50.471(b)(6): representing that goods or services are of a particular standard if they are of another; and

   c.   § 45.50.471(b)(8): advertising goods or services with the intent not to sell them as advertised.

213.   By selling the defective MacBook with exclusive knowledge of the defect, and by promoting the high quality and premium features of the MacBook display which failing to disclose and actively concealing the display's defective nature, APPLE engaged in deceptive practice that violate Alaska law.

214.   APPLE engaged in these deceptive practices with the intent that consumers like Plaintiff Buscher and the Alaska Subclass members would rely on APPLE's representations and omissions when deciding whether to purchase a MacBook.

215.   Plaintiff Buscher and the Alaska Subclass members suffered ascertainable loss as a direct and proximate result of APPLE's deceptive acts or practices.  Had Plaintiff Buscher and the Alaska Subclass members known that the MacBook keyboard contains

44

a latent defect, they would not have purchased the MacBook or would have paid significantly less for it. Among other injuries, Plaintiff Buscher and the Alaska Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value.

216. Accordingly, Plaintiff Wade Buscher and the Alaska Subclass members seek actual damages, punitive damages, reasonable attorneys' fees, and all other relief permitted under the Alaska Unfair Trade Practices and Consumer Protection Act.

## FOURTEENTH CAUSE OF ACTION
### (Violation of the Implied Warranty of Merchantability)
### (Alaska. Stat. § 45.02.314)
### (Against Defendant APPLE INC.)

217. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

218. Plaintiff Wade Buscher asserts this claim on behalf of himself and the Alaska Subclass.

219. Plaintiff Buscher and the Alaska Subclass members were at all relevant times a "buyer" as defined in Alaska. Stat. § 45.02.103(a)(1).

220. APPLE is and all relevant times was a "merchant" with respect to laptop computers under Alaska. Stat. § 45.02.104(a).

221. The MacBook Pro is and at all relevant times was a "good" within the meaning of Alaska. Stat. § 45.02.105(a).

222. A warranty that the MacBook Pro was in merchantable condition and fit for the ordinary purpose for which laptop computers are use is implied by law pursuant to Alaska. Stat. § 45.02.314.

223. The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used. Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen. Over time, the display backlighting system stops working entirely which prevents the MacBook Pro

from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.  The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

224.   As a direct and proximate result of APPLE's breach of the implied warranty of merchantability, Plaintiff Wade Buscher and the Alaska Subclass members have been damaged in an amount to be proven at trial.

### FIFTEENTH CAUSE OF ACTION

**(Violations of the Missouri Consumer Protection Act)**

**(Against Defendant APPLE INC.)**

225.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

226.   Plaintiff Hayes brings this claim on behalf of himself and the Missouri Subclass.

227.   Plaintiff Hayes and the Missouri Subclass members purchased the MacBook Pro for personal, family, or household purposes.

228.   Plaintiff Hayes, the Missouri Subclass members, and APPLE are "persons" as defined by Mo. Rev. Stat. § 407.010(5).

229.   APPLE was engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

230.   The MacBook is "merchandise" as defined by Mo. Rev. Stat. § 407.010(4).

231.   The Missouri Merchandising Practices Act prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Rev. Stat. § 407.010(20).

232.   APPLE engaged in unfair or deceptive acts or practices prohibited by the Missouri Merchandising Practices Act by representing that the MacBook has

characteristics, uses, benefits, and qualities which it does not have; representing that the MacBook is of a particular standard and quality when it is not; advertising the MacBook with the intent not to sell it as advertised; and advertising the MacBook with the intent no to sell it as advertised; and omitting material facts in describing the MacBook.

233. APPLE's acts and practices, as described throughout this complaint, constitute violations of Mo. Rev. Stat. § 407.020(1).

234. APPLE knew or should have known that their conducted violated the Missouri Merchandising Practices Act.

235. APPLE had an ongoing duty to their customers to refrain from unfair and deceptive practices under the Missouri Merchandising Practices Act.

236. Plaintiff Hayes and the Missouri Subclass members suffered ascertainable loss as a direct and proximate result of APPLE's deceptive acts or practices. Had Plaintiff Hayes and the Missouri Subclass members known that the MacBook contains a latent defect, they would not have purchased the MacBook or would have paid significantly less for it. Among other injuries, Plaintiff Hayes and the Missouri Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value.

237. Plaintiff Darien Hayes and the Missouri Subclass members seek actual damages, punitive damages, reasonable attorneys' fees, and all other relief permitted under the Mo. Rev. Stat. § 407.025.

### SIXTEENTH CAUSE OF ACTION

**(Violation of the Implied Warranty of Merchantability)**

**(Mo. Rev. Stat. § 400.2-314)**

**(Against Defendant APPLE INC.)**

238. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

239. Plaintiff Darien Hayes asserts this claim on behalf of himself and the Missouri Subclass.

240. Plaintiff Hayes and the Missouri Subclass members were at all relevant times

47

a "buyer" as defined in Mo. Rev. Stat. § 400.2-103(1)(a).

241.   APPLE is and all relevant times was a "merchant" with respect to laptop computers under Mo. Rev. Stat. § 400.2-104(1).

242.   The MacBook Pro is and at all relevant times was a "good" within the meaning of Mo. Rev. Stat. § 400.2-105(1).

243.   A warranty that the MacBook Pro was in merchantable condition and fit for the ordinary purpose for which laptop computers are use is implied by law pursuant to Mo. Rev. Stat. § 400.2-314.

244.   The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used.   Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.   Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.   The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

245.   As a direct and proximate result of APPLE's breach of the implied warranty of merchantability, Plaintiff Darien Hayes and the Missouri Subclass members have been damaged in an amount to be proven at trial.

## SEVENTEENTH CAUSE OF ACTION

### (Violations of the Massachusetts Unfair and Deceptive Trade Practices Act)

### (Against Defendant APPLE INC.)

246.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

247.   Plaintiff Odogwu brings this claim on behalf of himself and the Massachusetts Subclass.

48

248.   APPLE's conduct, as alleged herein, constitutes unfair or deceptive acts or practices and unfair methods of competition in trade or commerce in violation of Mass. Gen. Laws Ann. ch. 93A § 2, including without limitation, 940 C.M.R. § 3.05(1) and §3.16(2).

249.   APPLE engaged in unfair or deceptive acts or practices prohibited by the Massachusetts Unfair and Deceptive Trade Practices Act by representing that the MacBook has characteristics, uses, benefits, and qualities which it does not have; representing that the MacBook is of a particular standard and quality when it is not; advertising the MacBook with the intent not to sell it as advertised; and omitting material facts in describing the MacBook.

250.   APPLE's unlawful conduct includes their false and misleading statements, representation, and depictions in its marketing and advertising for the MacBook Pro, as alleged in greater detail above.

251.   APPLE's act and practices, described herein, are unfair in violation of Massachusetts law for the reasons stated in paragraph 86 of the First Claim for Relief, *supra*.

252.   Plaintiff Odogwu and the Massachusetts Subclass members suffered ascertainable loss as a direct and proximate result of APPLE's deceptive acts or practices. Had Plaintiff Odogwu and the Massachusetts Subclass members known that the MacBook display contains a latent defect, they would not have purchased the MacBook or would have paid significantly less for it.  Among other injuries, Plaintiff Odogwu and the Massachusetts Subclass members overpaid for their MacBook, and their MacBook suffered a diminution in value

253.   Plaintiff Peter Odogwu and the Massachusetts Subclass members seek actual damages, punitive damages, reasonable attorneys' fees, and all other relief permitted under the Mass. Gen. Laws Ch. 93A, § 9(3) and (4).

254.   Plaintiff Peter Odogwu gave proper notice to APPLE of their violations under Mass. Gen. Laws Ch. 93A, § 9(3), *et seq*. by providing the 30-day notice required.

**EIGHTEENTH CAUSE OF ACTION**

**(Violation of the Implied Warranty of Merchantability)**

**(Mass. Gen. Laws ch. 106 § 2-314)**

**(Against Defendant APPLE INC.)**

255.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

256.   Plaintiff Peter Odogwu asserts this claim on behalf of himself and the Massachusetts Subclass.

257.   Plaintiff Odogwu and the Massachusetts Subclass members were at all relevant times a "buyer" as defined in Mass. Gen. Laws ch. 106 § 2-103(1)(a).

258.   APPLE is and all relevant times was a "merchant" with respect to laptop computers under Mass. Gen. Laws ch. 106 § 2-104(1).

259.   The MacBook Pro is and at all relevant times was a "good" within the meaning of Mass. Gen. Laws ch. 106 § 2-105(1).

260.   A warranty that the MacBook Pro was in merchantable condition and fit for the ordinary purpose for which laptop computers are use is implied by law pursuant to Mass. Gen. Laws ch. 106 § 2-314.

261.   The MacBook Pro, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which laptop computers are used.   Specifically, the MacBook is defective, resulting in the display showing alternating patches of light and darkness on the bottom of the screen.   Over time, the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that goes dark, renders the laptop incapable of use by any consumer.   The MacBook is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.

262.   As a direct and proximate result of APPLE's breach of the implied warranty

of merchantability, Plaintiff Peter Odogwu and the Massachusetts Subclass members have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against APPLE, jointly and severally, as follows:

1.      That the claims alleged may be maintained as a class action under Federal Rule of Civil Procedure 23, and enter an order certifying the Class as defined above and appointing Plaintiffs as Class representatives;

2.      That counsel for Plaintiffs be appointed as Class Counsel;

3.      That Defendant provide to Class Counsel, immediately upon its appointment, the names and most current contact information (address and telephone numbers) of all class members;

4.      For all actual, general, special, incidental, statutory, punitive, and consequential damages and/or restitution to which Plaintiffs and the class members are entitled;

5.      For pre-judgment and post-judgment interest as provided by law;

6.      For appropriate equitable relief, including, without limitation, an order requiring APPLE to: (1) adequately disclose the defective nature of the MacBook; and (2) make restitution to Plaintiffs and the class members all costs attributable to remedying or replacing MacBook laptops, including but not limited to economic losses from the purchase of replacement laptops or display screens; and (3) expand its AppleCare and Display Backlight Service Program to cover the display cable defects of its 13-inch models which are not already covered and all 15-inch models;

7.      For reasonable attorneys' fees and costs as permitted by law; and

8.      For such other and further relief as the Court deems appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by a jury of all issues triable as of right.

Date:  July 15, 2020

**PARRIS LAW FIRM**

<u>        /s/ *John M. Bickford*        </u>

John M Bickford

Attorneys for Plaintiffs and
the Putative Class

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL