R. REX PARRIS (Bar No. 96567)
rrex@parris.com
ALEXANDER R. WHEELER (Bar No. 239541)
alex@parris.com
JOHN M. BICKFORD (Bar No. 280929)
jbickford@parris.com
MICHELLE J. LOPEZ (Bar No. 331632)
mlopez@parris.com
PARRIS LAW FIRM
43364 10th Street West
Lancaster, CA  93534
Telephone: (661) 949-2595
Facsimile: (661) 949-7524

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAHAN TALESHPOUR, RORY FIELDING, PETER ODOGWU, WADE BUSCHER, GREGORY KNUTSON, DARIEN HAYES, LIAM STEWART, NATHAN COMBS, and KENDALL BARDIN on behalf of themselves and all members of the putative class,<br><br>        Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 5:20-cv-03122-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:   October 22, 2020<br>Time:   9:00 a.m.<br>Dept.:   Courtroom 4 – 5th Floor<br>Judge:  Honorable Edward J. Davila |

**REDACTED**
**FILED UNDER SEAL**

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ..................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

    I.     APPLE MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS AND SEEKS AN ADJUDICATION OF THE MERITS AT THE PLEADING STAGE. ........................... 3

    II.    PLAINTIFFS' ALLEGATIONS ESTABLISH ARTICLE III STANDING. ................ 5

          A.    None of the Plaintiffs Lack Standing for any Purported "Admission" or "Concession" that Apple has Fixed the Defective MacBook Pros. .............................. 5

          B.    Plaintiffs Bardin, Buscher, Combs, Fielding, Odogwu, Stewart, and Taleshpour's Display Screen Failures Are "Fairly Traceable" to the Defect. ..................................... 6

          C.    Plaintiffs Fielding, Knutson, Hayes, Buscher, and Taleshpour Allege Their Display Failures Are "Fairly Traceable" To the Defect. ................................................... 7

          D.    Plaintiffs Odogwu, Stewart, Combs, and Knutson Have Pled a Cognizable Injury-in-Fact. ................................................................................................................... 7

    III.    PLAINTIFFS' ALLEGATIONS SATISFY THE PLEADING STANDARDS ............. 9

          A.    Plaintiffs Have Adequately Alleged Their Deceptive Trade Act Claims. .................... 9

               1.   Plaintiffs' Claims for Fraud by Omission Satisfy Rule 9(b) ................................. 10

                   a.    The Omission Is Material ........................................................................... 10

                   b.    Plaintiffs Allege a "Central Function Defect." ........................................ 11

                   c.    Apple Had Exclusive Knowledge of the Defect. ..................................... 12

                   d.    Plaintiffs' Relied on Apple's Omission. .................................................. 14

                2.   Plaintiffs Plead Adequate Claims for Affirmative Misrepresentation. ................. 14

**TABLE OF CONTENTS**

**PAGE(S)**

B.   Plaintiff Taleshpour Pleads Adequate Unfair and Unlawful UCL Claims. .................16

    1.   The "Unfair" UCL Claim is Sufficiently Pled. ........................................................17

    2.   Apple's Conduct Was Unlawful Under the UCL. .................................................18

C.   Plaintiff Taleshpour Pleads a Claim for Violation of the Song-Bervely Act. .............18

D.   Plaintiffs Plead Adequate Implied Warranty of Merchantability Claims ....................20

**IV.   IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND.**..............21

**CONCLUSION** ........................................................................................................................22

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

<u>Cases</u>

4

*Aguilar v. Gen. Motors, LLC,*

5

   2013 WL 5670888 (E.D. Cal. Oct. 16, 2013) ................................................................. 12

6

*Allagas v. BP Solar Int'l, Inc.,*

7

   2014 WL 4418216 (N.D. Cal. Sept. 8, 2014) ................................................................. 20

8

*Avedisian v. Mercedes-Benz USA, LLC,*

9

   2013 WL 2285237 (C.D. Cal. May 22, 2013) ................................................................ 12

10

*Baggett v. Hewlett–Packard, Co.,*

11

   582 F. Supp. 2d 1261 (C.D. Cal.2007) ......................................................................... 10

12

*Baltazar v. Apple Inc.,*

13

   2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ............................................................. 19

14

*Bennett v. Spear,*

15

   520 U.S. 154 (1997) ........................................................................................................ 5

16

*Beyer v. Symantec Corp.,*

17

   333 F. Supp. 3d 966 (N.D. Cal. 2018) ............................................................. 11, 14, 15

18

*Bonanno v. Thomas,*

19

   309 F.2d 320 (9th Cir. 1962) ........................................................................................ 21

20

*Brazil v. Dole Food Co.,*

21

   2013 WL 5312418 (N.D. Cal. 2013) ............................................................................. 5

22

*Burdt v. Whirlpool Corp.,*

23

   2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) .............................................................. 13

24

*Cahill v. Liberty Mut. Ins. Co.,*

25

   80 F.3d 336 (9th Cir. 1996) ............................................................................................ 9

26

*Daniel v. Ford Motor Co.,*

27

   806 F.3d 1217 (9th Cir. 2015) ............................................................................... 14, 20

28

**TABLE OFAUTHORITIES**

**PAGE(S)**

<u>**Cases**</u>

*Davidson v. Apple, Inc*,

    2017 WL 976048 (N.D. Cal. March 14, 2017) ................................................................ 14

*Demetriades v. Yelp, Inc.*,

    228 Cal. App. 4th 294 (2014) ....................................................................................... 15

*Ehrlich v. BMW of N. Am., LLC*,

    801 F. Supp. 2d 908 (N.D. Cal. Aug. 11, 2010) ............................................................ 20

*Elfaridi v. Mercedes-Benz USA, LLC*,

    2018 WL 4071155 (E.D. Mo. Aug. 27, 2018) ............................................................... 13

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,

    548 F.3d 1184 (9th Cir. 2008) ................................................................................... 4, 5

*Faigman v. AT&T Mobility LLC*,

    2007 WL 2088561 (N.D. Cal. July 18, 2007) ............................................................... 10

*Ferdik v. Bonzelet*,

    963 F.2d 1258 (9th Cir.1992) ........................................................................................ 9

*Gillgan v. Jamco Dev. Corp.*,

    108 F.3d 246 (9th Cir. 1997) ......................................................................................... 9

*Grace v. Apple Inc.*,

    2017 WL 3232464 (N.D. Cal. Jul. 28, 2017) ......................................................... *passim*

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

    896 F.2d 1542 (9th Cir.1989) ........................................................................................ 9

*Hall v. City of Santa Barbara*,

    833 F.2d 1270 (9th Cir. 1986) ....................................................................................... 9

*Hammond Ent. Inc. v. ZPS Am. LLC*,

    2013 WL 5814505 (N.D. Cal. Oct. 29, 2013) .............................................................. 21

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>**Cases**</u>

*Herskowitz v. Apple Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) .......................................................................... 17

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................................ 11, 12, 17

*In re Apple & AT&T Antitrust Litig.*,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) .......................................................................... 11

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..................................................................... 10, 17

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................. 5, 11, 17

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. June 12, 2012)....................................................... 16, 17

*In re MacBook Keyboard Litig.*,
  2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ......................................................... 11, 12, 17

*In re Sony*,
  758 F. Supp. 2d 1077 (S.D. Cal. Nov. 30, 2010)......................................................... 16, 19

*In re Toyota Motor Corp.*,
  754 F. Supp. 2d 1145 (C.D. Cal.2010) ............................................................................ 7

*Kacsuta v. Lenovo*,
  2013 WL 12126775 (C.D. Cal. July 16, 2013) ................................................................ 19

*Keegan v. Am. Honda Motor Co., Inc.*,
  838 F. Supp. 2d 929 (C.D. Cal. Jan. 6, 2012) ........................................................... 18, 20

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal.App.4th 1342 (2012) .......................................................................................... 18

1

# TABLE OFAUTHORITIES

2

**PAGE(S)**

3

**Cases**

4

*Kowalsky v. Hewlett-Packard Co.*,

5

2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ................................................................. 12

6

*Lanovaz v. Twinings N. Am.*,

7

2013 WL 2285221 (N.D. Cal. 2013) ................................................................................. 5

8

*Lazar v. Hertz Corp.*,

9

69 Cal.App.4th 1494 (1999) ............................................................................................ 18

10

*Licorice Co. v. Total Sweeteners, Inc.*,

11

2014 WL 5396214 (N.D. Cal. Oct. 22, 2014) .................................................................. 21

12

*Lozano v. AT&T Wireless Servs., Inc.*,

13

504 F.3d 718 (9th Cir.2007) ............................................................................................ 16

14

*Lujan v. Defenders of Wildlife*

15

504 US 555 (1992)........................................................................................................ 5, 8

16

*Mexia v. Rinker Boat Co.*,

17

174 Cal.App.4th 1297 (2009) .................................................................................... 18, 20

18

*Moore v. Kayport Package Exp., Inc.*,

19

885 F.2d 531 (9th Cir. 1989) .......................................................................................... 10

20

*Newcal Indus., Inc. v. Ikon Office Solution*,

21

513 F.3d 1038 (9th Cir. 2008) ........................................................................................ 15

22

*Nordberg v. Trilegiant Corp.*,

23

445 F. Supp. 2d at 1097–98 ............................................................................................ 10

24

*Oestreicher v. Alienware Corp.*,

25

544 F. Supp. 2d 964 (N.D. Cal. 2008) ............................................................................ 13

26

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,

27

514 F.3d 856 (9th Cir. 2007) ............................................................................................ 5

28

**TABLE OF AUTHORITIES**

PAGE(S)

<u>Cases</u>

*Phillips v. Apple Inc.*,

  2016 WL 5846992 (N.D. Cal. Oct. 6, 2016) ............................................................... 5, 10

*Preminger v. Peake*,

  552 F.3d 757 (9th Cir.2008) ................................................................................ 8

*Roe v. Ford Motor Co.*,

  2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) ................................................... 13

*Safe Air for Everyone v. Meyer*,

  373 F.3d 1035 (9th Cir. 2004) ........................................................................ 4, 5, 7

*Stamas v. Cnty. of Madera*,

  2010 WL 289310 (E.D. Cal. Jan. 15, 2010) ......................................................... 9

*Stearns v. Select Comfort Retail Corp.*,

  2009 WL 1635931 (N.D. Cal. June 5, 2009) ...................................................... 19

*Sud v. Costco Wholesale Corp.*,

  229 F. Supp  3d 1075 (N.D. Cal. Jan. 24, 2017) ................................................. 14

*Taison Comms. v. Ubiquiti Networks*,

  2014 WL 2916472 (N.D. Cal. Jun. 26, 2014) ...................................................... 6

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,

  368 F.3d 1053 (9th Cir. 2004) ......................................................................... 21

*Vess v. Cib-Geigy Corp. USA*,

  317 F.3d 1097 (9th Cir. 2003) ......................................................................... 10

*Williams v. Cnty. of Alameda*,

  26 F. Supp. 3d 925 (N.D. Cal. 2014) ................................................................. 5

**<u>Statutes</u>**

Cal. Bus. & Profs. Code § 17200 .......................................................................................... 16

Cal. Civ. Code § 1792 ........................................................................................................... 18

**<u>Rules</u>**

Fed. R. Civ. Proc. 8(a)(2) ........................................................................................................ 9

Fed. R. Civ. Proc. 9(b) .............................................................................................. 10, 12, 14

**INTRODUCTION**

This is a consumer class action brought by nine Plaintiffs on behalf of those who purchased a MacBook Pro 2016 model or later.   The Plaintiffs allege these models use display cables that are tightly wrapped around the display controller board.  As the screen is opened and closed, these cables stretch and rub against the control board, causing them to rip and tear over time.  This results in a "stage lighting" effect, blocks of solid colors that obscure text and images, and eventual complete screen failure.  Plaintiffs allege several state consumer protection causes of action as a result of this defect.

Apple responds by seeking a complete dismissal of Plaintiffs' complaint.  It claims the Court lacks subject-matter jurisdiction over all nine of Plaintiffs' claims because none of their laptops purportedly have the defect alleged in the complaint.  But this argument is based on a mischaracterization of Plaintiffs' allegations and a premature request for the Court to adjudicate the merits of this case at the pleading stage.  In support of its argument, Apple relies on a declaration filled with baseless conclusions and purported factual findings.  Apple also claims all 20 of Plaintiffs' causes of action are improperly pled.  But these arguments misconstrue both the facts and the law.  Contrary to Apple's claim, Plaintiffs' consumer protection claims are not all "grounded in fraud."  And the few that are satisfy the heightened pleading standard for fraud claims.  Apple's other pleadings challenges either misstate the pleading requirements or again misrepresent Plaintiffs' allegations to fit their arguments.  Apple's motion should be denied.

**FACTUAL BACKGROUND**

Apple updated and redesigned its line of 13- and 15-inch MacBook Pro laptop computers in 2016.  SAC at ¶ 16.  It touted these new laptops as not only thin and sleek, but as having the highest quality monitor display of any Apple laptop.  *Id*. at ¶16.  As part of the redesign, Apple connected the control boards of these new MacBook Pros to the display monitors using thin, flat, and flexible "display backlight ribbon cables" that wrap tightly around the display controller board.  *Id*. at ¶ 17, Fig. 2.  The internal design and placement of these display backlight ribbon cables are nearly identical in the 13-inch and 15-inch MacBook Pros.  *Id*. at ¶¶ 18, 23.  Plaintiffs included close-up photographs of the insides of both size laptops that show their identical configuration and design.  *Id*. at ¶ 18, Figs. 3–4.

While these display backlight ribbon cables allow for a sleeker design, they cause the display

monitors to fail with normal use of the laptops.  As MacBook Pro owners open and close their laptops between uses, the thin display backlight ribbon cables stretch and rub up against the control board and tear.  SAC at ¶ 19.  The display backlight ribbon cables tear because they are not long enough and do not allow enough slack to handle the repeated opening and closing of the laptop covers (the "Defect"). *Id*. at ¶ 19, Fig. 5.  When these cables tear and break down, they no longer properly connect the controller board and the display screen, which causes severe problems with the "best Mac display ever."  *Id.* at ¶ 16.  The defective MacBook Pros experience a "stage lighting" effect, blocks of solid colors that obscure text and images, as well as eventual complete monitor failure.  *Id*. at ¶¶ 20–22; Figs. 6–8.  Because it takes repeated opening and closing of the laptops for the display backlight ribbon cables to tear, the Defect nearly always manifests itself outside Apple's limited, one-year express warranty period.  *Id*. at ¶ 25.

Apple knows the length of these cables leads to display failures.  In 2017, Apple attempted to fix the Defect by making the display backlight ribbon cables two millimeters longer in both the 13-inch and 15-inch laptops.  LaBerge Decl., at ¶¶ 4, 5.  Apple's 2017 addition of slightly longer cables has not fixed the Defect.  Mr. Combs purchased a 2018 15-inch MacBook Pro, which started exhibiting "stage lighting" in March 2020 and failed that June.  *Id*. at ¶¶ 69–72.  Apple made Plaintiffs Taleshpour, Buscher, Bardin, Fielding Stewart, and Combs' 15-inch MacBook Pros after its 2017 cable lengthening, but their laptops are still defective.  *See* SAC at ¶¶ 33–78; LaBerge Decl., at ¶ 4.

Apple also knows its customers have widespread problems with their MacBook Pros because of the Defect.  In 2019, Apple started a program to repair *only* the 13-inch, 2016 MacBook Pro, despite the Defect affecting all model year 2016 or later MacBook Pros.  SAC at ¶ 30.  Over 26,000 Apple consumers have signed a Change.org petition seeking to convince Apple to fix the Defect, which Apple's MacBook Pro customers have dubbed "Flexgate."  *Id*. at ¶ 80.  Apple's customers have also posted complaints about Defect *on Apple's own website*, many of whom vent their frustration that Apple decided to repair only the 13-inch, 2016 MacBook Pro and not the other models they purchased.  *Id*. at ¶ 81.  Apple's own witnesses have knowledge of the Defect.  Mr. LaBerge testifies about a "backlight issue" in the 13-inch, 2016 MacBook Pro that led to the 13-inch MacBook Pro Display Service Repair Program ("Service Program").  LaBerge Decl., at ¶ 6.  Although the Service Program does not cover Plaintiffs'

1  and the putative class members' MacBook Pros, it shows Apple has direct knowledge of the defective

2  nature of the display backlight ribbon cables, as they are (absent miniscule differences in length)

3  configured and designed identically across all model year 2016 or later MacBook Pros.  SAC at ¶¶ 18,

4  23.

5  **ARGUMENT**

6  **I.    APPLE MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS AND SEEKS AN**

7  **ADJUDICATION OF THE MERITS AT THE PLEADING STAGE.**

8          Rather than move to dismiss the case based upon Plaintiffs' actual allegations, Apple advances

9  its own "strawman" theories that Plaintiffs have never pled.  Apple argues that Plaintiffs' theory of

10  liability is that all model year 2016 or later MacBook Pros have the same exact display backlight ribbon

11  cable size as the 13-inch, 2016 models, which Apple agreed to fix as part of the Service Program.  Mot.

12  at 6:25–7:2.  But Plaintiffs do not allege all MacBook Pros have the exact same size display backlight

13  ribbon cables, which is why Apple cannot cite to any paragraph in the SAC for that argument.  Mot. at

14  7:18–22.  Laptops with screens several *inches* larger may need cables a few *millimeters* longer to connect

15  to those larger screens.  Thus, Plaintiffs allege that Apple designed the MacBook Pro cable attachment

16  mechanism nearly identically in both the 13-inch and 15-inch models.  SAC at ¶¶ 18, 23.  Plaintiffs

17  allege that cable mechanism is defective in both the 13- and 15-inch MacBook Pros.  *Id.* at ¶ 23.

18          Apple also argues Plaintiffs allege that the MacBook Pros are all defective because each of them

19  have display backlight ribbon cables that are uniformly too short by exactly two millimeters (the

20  thickness of a nickel).  Mot. at pp. 7:18–22; 9:25–26.  Plaintiffs do not allege that theory either.  The

21  two-millimeter addition to the backlight ribbon cables was *Apple's own* attempt in early 2017 to fix its

22  defective MacBook Pros—it is not Plaintiffs' theory of liability.  LaBerge Decl., at ¶ 4.  Plaintiffs allege

23  the cause of their display screen failures is display backlight ribbon cables that tear with use because

24  they are too short and wrapped too tightly.  SAC at ¶ 19.  They do not allege that the cables are too short

25  *by the same exact length* as the only model and year MacBook Pro that Apple has decided to fix.

26          Apple's Display Service Program only covers the 13-inch, 2016 MacBook Pros.  LaBerge Decl.,

27  at  ¶¶ 4, 5.  The Defect, however, is much more widespread than that single year and size MacBook Pro.

28

1   ████████████████████████████████████████████████████████████

2   ██████████████████████████████████   Apple manufactured several Plaintiffs' MacBook Pros well after

3   this two-millimeter addition, yet each of their MacBook Pros contained the Defect that led to monitor

4   failure.  *Id.*, ¶ 5.  If Apple's 2017 two-millimeter lengthening were a "fix," as Apple argues, no MacBook

5   Pro Apple manufactured after February 2017 would have the same Defect that is the subject of this

6   lawsuit.  Each of the Plaintiffs' experiences and allegations demonstrate otherwise.

7          Apple attempts to disprove these "strawman" theories with the merits-laden Supplemental

8   Declaration of Jeffrey LaBerge.  But while a district court may resolve disputed factual issues in order

9   to rule on a "factual" Rule 12(b)(1) motion, it may not do so where "the jurisdictional issue and

10  substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of

11  factual issues going to the merits of an action."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

12  n.3 (9th Cir. 2004) (internal quotation marks omitted); *see also Equity Lifestyle Props., Inc. v. Cnty. of*

13  *San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing

14  precedes, and does not require, analysis of the merits.").

15         Mr. LaBerge declares the length of each Plaintiffs' MacBook Pro display backlight ribbon cable

16  to disprove Plaintiffs' allegedly "inaccurate" allegation that the 13- and 15-inch MacBook Pros' display

17  backlight ribbon cables "are the same length and have the same alleged defect."  Mot. at 7:1–2.  Mr.

18  LaBerge then offers the following unilateral findings of fact: because several of Plaintiffs' display

19  backlight ribbon cables are not the same length as those in the 13-inch, 2016 MacBook Pro, their display

20  failures are not "traceable" to Apple's framed "defect."  LaBerge Decl., at ¶¶ 3, 4 , 5; Mot. at 9–13.

21  While Mr. LaBerge's declaration may support Apple's theory of Plaintiffs' case, it does not undercut

22  Plaintiffs' actual allegations that the cause of their display screen failures is display backlight ribbon

23  cables that tear with use because they are too short and wrapped too tightly.  SAC at ¶ 19.  Plaintiffs did

24  not allege that those cables are the same size in both the 13- and 15-inch MacBook Pros.  Similarly,

25  Apple's own documents state the "root cause" of the Defect is simply a "short LED flex cable," not a

26  short cable in only the 13-inch 2016 model.  Wheeler Decl., Ex. D.

27         In any event, Apple's purported "factual" attack asks this Court to adopt LaBerge's conclusions of

28  law and fact and perform exactly the kind of ultimate merits adjudication that it cannot do at the pleading

1   stage.  *Safe Air for Everyone*, 373 F.3d at 1039 n.3; *Equity Lifestyle Props.*, 548 F.3d at 1189 n.10.

2   **II.   PLAINTIFFS' ALLEGATIONS ESTABLISH ARTICLE III STANDING.**

3   To establish Article III standing, "there must be a causal connection between that injury and the

4   conduct complained of—i.e., plaintiff's claimed injury must be 'traceable' to defendant's acts or

5   omissions."  *Lujan v. Defenders of Wildlife* 504 US 555, 559–60 (1992).  "[C]ourts have consistently

6   held that the Article III standard for showing that an injury is 'fairly traceable' to the defendant is

7   'relatively modest.' "  *Phillips v. Apple Inc*., 2016 WL 5846992, at *8 (N.D. Cal. Oct. 6, 2016) (quoting

8   *Bennett v. Spear*, 520 U.S. 154, 171 (1997)).  Whether a defect caused a plaintiff's injuries is a fact-

9   intensive question properly directed at the summary judgment stage.  *In re Carrier IQ, Inc.*, 78 F. Supp.

10   3d 1051, 1068 (N.D. Cal. 2015).

11   In any analyzing Article III standing challenges, courts in the Northern District follow "the Ninth

12   Circuit's admonition that courts 'should not be too rigid in applying standing requirements to proposed

13   classes.'"  *Grace v. Apple Inc*., 2017 WL 3232464, at *9 (N.D. Cal. Jul. 28, 2017); *see also Brazil v.*

14   *Dole Food Co*., 2013 WL 5312418 at *8 (N.D. Cal. 2013); *Lanovaz v. Twinings N. Am.*, 2013 WL

15   2285221, at *2 (N.D. Cal. 2013).

16   **A.   None of the Plaintiffs Lack Standing for any Purported "Admission" or**

17   **"Concession" that Apple has Fixed the Defective MacBook Pros**.

18   Apple relies on allegations in Plaintiff Taleshpour's original complaint that are not in the SAC

19   to support its standing argument.  Apple argues that Plaintiffs' allegation "that the longer backlight cables

20   in Plaintiffs' devices are too short does not suffice" because Plaintiffs "conceded" Apple remedied the

21   defect present in the 13-inch, 2016 MacBook Pro when it increased the length of the backlight cables in

22   the 2018 MacBook Pros by two millimeters.  Mot. at 8:1–8.

23   As a threshold matter, it is well-established that an amended pleading supersedes the original

24   pleading and renders it of no legal effect, unless the amended complaint incorporates by reference

25   portions of the prior pleading."  *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014);

26   s*ee also PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).  Moreover, Plaintiffs

27   amended their allegations to conform to the addition of new Plaintiffs' experiences with their MacBook

28   Pros, which showed that the display backlight ribbon cables were also defective in later models of the

MacBook Pro.   Amended allegations based upon this kind of "further investigation" are not contradictory.  *See Taison Comms. v. Ubiquiti Networks*, 2014 WL 2916472, at*7 (N.D. Cal. Jun. 26, 2014).  Plaintiffs amended allegations are not any kind of "admission" that Apple remedied the Defect when it added two millimeters to the cables in 2017.

> **B.**   **Plaintiffs Bardin, Buscher, Combs, Fielding, Odogwu, Stewart, and Taleshpour's Display Screen Failures Are "Fairly Traceable" to the Defect.**

Apple claims "there is no causal nexus between these seven Plaintiffs' purported injury and their theory of liability that the backlight cables were two millimeters too short."  Mot. at 7:19–21.  Apple argues this is because it "did not incorporate the allegedly two-millimeter-too-short cables in their devices," but only in the 2016 13-inch MacBook Pro.  *Id.* at 7:21–22.  As explained above, Plaintiffs allege that the MacBook Pros all use display backlight ribbon cables that tear because they are not long enough and do not allow enough slack to handle the repeated opening and closing they are exposed to due to the placement and configuration of the cables within the MacBook Pro. SAC at ¶ 18–19.

Plaintiffs allege that despite *both* the 13- and 15-inch MacBook Pros having the same essential Defect, the Service Program only covers the 13-inch MacBook Pro.  SAC at ¶ 31.  Apple does not dispute that all model year 2016 or later MacBook Pros use display backlight ribbon cables to connect the lighting mechanism of the display screen to the display controller board, like the those in 13-inch, 2016 MacBook Pro.  Mot. at 6:25–27.  Nevertheless, Apple argues that "[b]ecause the backlight cables in MacBook Pros purchased by seven of the nine named plaintiffs are at least two millimeters longer than those in the 13-inch MacBook Pros introduced in 2016 that are eligible for Apple's service program, these plaintiffs' purported injuries are not traceable to the Alleged Defect."  *Id.* at 8:9–11.

Plaintiffs also allege the display backlight ribbon cables in model year 2016 or later MacBook Pros are "substantially similar" to those in the 13-inch, 2016 MacBook Pro covered by the Service Program and thus, are too short to withstand repetitive opening and closing.  SAC at ¶¶ 18, 19, 23, 31.

███████████████████████████████████████████████████████

█ This is in accord with Plaintiffs' allegations in the SAC: "[g]iven the substantial similarity of the internal design of the two sizes of the MacBook Pro (13- and 15-inches), the cause of the [] defect is identical for both size laptops."  SAC at ¶ 23.

These allegations satisfy Article III standing.  *Grace*, 2017 WL 3232464 at *9 (finding plaintiffs' allegation of product "substantial similarity" satisfied Apple's Article III standing challenge).

C.   **Plaintiffs Fielding, Knutson, Hayes, Buscher, and Taleshpour Allege Their Display Failures Are "Fairly Traceable" To the Defect.**

Each of these Plaintiffs allege the Defect caused their monitors to fail.  SAC at ¶¶ 20–22.  Specifically, Plaintiffs allege the defective MacBook Pros experience a "stage lighting" effect, blocks of solid colors that obscure text and images, as well as eventual complete monitor failure.  *Id*. at ¶¶ 20–22; *Id.* at Figs. 6–8.  These Plaintiffs further allege they each experienced a type of display failure that is caused by the Defect.  *Id.* at ¶¶ 35, 37, 41, 46, 51, 52, 56, 57, 61, 66, 71, 72, 76.  And, each Plaintiff alleges they would not have purchased or become owners of their MacBook Pros, or would have paid significantly less for their MacBook Pros, had they known of the Defect.  *Id.* at ¶¶ 38, 43, 48, 53, 58, 63, 68, 73, 78.

Apple claims Plaintiffs are wrong because the Defect actually only causes one kind of failure, and their claims should be dismissed because Mr. LaBerge has alone "determined" their injuries are not caused by the Defect.  Mot. at 9:5–23; LaBerge Decl., at ¶¶ 6–8.  This is purely a merits-based argument.  Mr. LaBerge is not the finder of fact and his conclusory declaration cannot form the basis for an adjudication of the merits of Plaintiffs' allegations.  *See Safe Air for Everyone*, 373 F.3d at 1039 n.3; *see also In re Toyota Motor Corp.,* 754 F. Supp. 2d 1145, 1162 (C.D. Cal.2010) ("Standing merely requires a redressable injury that is fairly traceable to Defendants' conduct.  Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question.").

D.   **Plaintiffs Odogwu, Stewart, Combs, and Knutson Have Pled a Cognizable Injury-in-Fact.**

Apple argues that Plaintiffs Odogwu, Stewart, Combs, and Knutson do not have standing to bring their claims because they have not suffered a cognizable injury-in-fact.  To support its arguments, Apple

1   relies on the Declaration of Matthew Foster (the "Foster Decl."). To meet the Article III requirements

2   for injury-in-fact, a plaintiff's injury must constitute "an invasion of a legally protected interest which is

3   (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504

4   U.S. at 560 (internal citations and quotation marks omitted). The injury is particularized if it affects the

5   plaintiff in a "personal and individualized way." *Id.* at 560 n.1. "The injury may be minimal."

6   *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir.2008).

7        Apple claims Plaintiff Knutson does not have standing because it replaced his defective display

8   free of charge. Foster Decl., at ¶ 4. However, Plaintiff Knutson paid $771.80 to an authorized Apple

9   service provider for the replacement of his 15-inch, 2016 MacBook Pro display assembly. Knutson

10  Decl, at ¶¶ 3–8; *id.*, Exs. A, B. Therefore, Plaintiff Knutson has suffered a cognizable injury-in-fact.

11       Apple also claims Plaintiff Stewart and Plaintiff Odogwu do not have standing because they are

12  not the original purchasers of their MacBook Pros. But, these plaintiffs plead facts that allege an injury-

13  in-fact and establish standing. "There are innumerable ways in which economic injury from unfair

14  competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a

15  transaction less, than he or she otherwise would have; (2) have a present or future property interest

16  diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be

17  required to enter into a transaction, costing money or property, that would otherwise have been

18  unnecessary." *Grace*, 2017 WL 3232464 at* 13.

19       Plaintiff Stewart has owned his laptop since he picked it up from an Apple store. Stewart Decl.,

20  at ¶ 3. He alleges Apple directly caused him concrete economic injuries, including repair cost damages

21  for the replacement of his display screen. *Id.* at ¶¶ 4–7; *id.*, Exs. A, B. Plaintiff Stewart's injury is

22  particularized because he was directly affected by the failure of his MacBook Pro display in that he had

23  to pay $725.20 to repair the display screen. SAC ¶ 67; *see also* Stewart Decl., at ¶¶ 4–7; *id.*, Exs. A, B.

24       Plaintiff Odogwu also alleges Apple directly caused him concrete economic injuries, including

25  the damages he incurred for having to replace his original MacBook Pro when it became inoperable by

26  purchasing a used laptop. SAC at ¶¶ 46, 47. Therefore, Plaintiff Stewart and Plaintiff Odogwu both

27  allege they were owners and users of their MacBook Pros who suffered actual financial injuries resulting

28  from Defect. *Id.* at ¶¶ 46, 47, 67. These economic injuries are traceable to Apple and are sufficient to

1  establish injury in fact.  *See Grace*, 2017 WL 3232464 at *13.

2  Although Apple claims Plaintiff Combs lacks standing because the original complaint "admitted"

3  Apple remedied the Defect in July 2018, Plaintiff Combs meets the requirements for Article III standing.

4  Mot. at 8:26–9:2.  The model year 2018 MacBook Pros also suffer from the Defect and Plaintiffs filed

5  an amended complaint to reflect those facts.  As explained *supra* Section I.A, an amended pleading

6  supersedes the original pleading.  *See e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992)

7  ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as

8  non-existent."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir.1989)

9  ("[A]n amended pleading supersedes the original."); *Stamas v. Cnty. of Madera*, 2010 WL 289310, at

10  *4 (E.D. Cal. Jan. 15, 2010) ("[A]n amended pleading is a new round of pleadings ... and is subject to

11  the same challenges as the original (i.e., motion to dismiss, to strike, for more definite statement)).

12  Because Plaintiff Combs has not "admitted" that Apple has remedied any defects, he has alleged a

13  cognizable injury-in-fact.

14  All nine named Plaintiffs have standing because each Plaintiff has alleged an injury-in-fact that

15  is fairly traceable to the Defect.  Therefore, the Court should deny Apple's Rule 12(b)(1) motion to

16  dismiss because each Plaintiff has Article III standing.

17  **III.   PLAINTIFFS' ALLEGATIONS SATISFY THE PLEADING STANDARDS**

18  A "'motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'"

19  *Gillgan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Hall v. City of Santa Barbara*,

20  833 F.2d 1270, 1274 (9th Cir. 1986)).  To survive, a complaint must merely contain "a short and plain

21  statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In

22  reviewing a motion to dismiss, courts must accept all well-pleaded allegations as true and construe them

23  in the light most favorable to the nonmoving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

24  337–38 (9th Cir. 1996).  "A complaint should not be dismissed unless a plaintiff can prove no set of facts

25  in support of his claim which would entitle him to relief."  *Cahill*, 80 F.3d at 337–38.

26  **A.   Plaintiffs Have Adequately Alleged Their Deceptive Trade Act Claims.**

27  While fraud claims must be alleged with particularity, "[m]alice, intent, knowledge, and other

28  conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  To the extent that claims

1   do not rely on fraud, the heightened pleading standard of Rule 9(b) applies only to the particular

2   averments of fraud and not to the claim as a whole.  *Vess v. Cib-Geigy Corp. USA*, 317 F.3d 1097, 1104–

3   05 (9th Cir. 2003).  That "intermediate standard" requires the plaintiff " 'to provide some specificity in

4   their pleadings to put defendants on notice of the charges leveled against them.' "  *Faigman v. AT&T*

5   *Mobility LLC*, 2007 WL 2088561, at *4 (N.D. Cal. July 18, 2007) (quoting *Nordberg v. Trilegiant Corp.*,

6   445 F. Supp. 2d at 1097–98) (finding CLRA claims were alleged with sufficient particularity).

7          However, a fraud by omission claim "can succeed without the same level of specificity required

8   by a normal fraud claim."  *Baggett v. Hewlett–Packard*, Co., 582 F. Supp. 2d 1261, 1267 (C.D. Cal.2007)

9   (citations omitted).  "[A] plaintiff in a fraudulent concealment suit will 'not be able to specify the time,

10  place, and specific content of an omission as precisely as would a plaintiff in a false representation

11  claim.' "  *Id.* at 1267 (internal citations omitted).  A plaintiff need only plead a fraudulent omissions

12  claim with sufficient particularity "so that a defendant can prepare an adequate answer from the

13  allegations."  *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 540 (9th Cir. 1989).

14          **1.      Plaintiffs' Claims for Fraud by Omission Satisfy Rule 9(b)**

15          "To state a claim for fraudulent omission, the omission must be contrary to a representation

16  actually made by the defendant, *or* an omission of a fact the defendant was obliged to disclose."  *In re*

17  *Apple Inc. Device Performance Litig*., 386 F. Supp. 3d 1155, 1175 (N.D. Cal. 2019) (internal citation

18  omitted) (emphasis added).  "When a defect does not relate to an unreasonable safety hazard, a defendant

19  has a duty to disclose when (1) the omission is material; (2) the defect is central to the product's function;

20  and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the

21  defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff;

22  the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial

23  representations that are misleading because some other material fact has not been disclosed."  *Id.* at 1176.

24  Lastly, a plaintiff must sufficiently plead reliance to state a fraudulent omission claim.  *See Phillips*,

25  2016 WL 1579693 at *6.

26          **a.      The Omission Is Material.**

27          "A non-disclosed fact is material if the omitted information would cause a reasonable consumer

28  to behave differently if he or she was aware of it."  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1114 (internal

1   quotation marks and citation omitted).  "Materiality usually is a question of fact that should be left to the

2   jury unless the statement at issue is obviously unimportant."  *Beyer v. Symantec Corp.*, 333 F. Supp. 3d

3   966, 978 (N.D. Cal. 2018) (internal quotation marks and citation omitted).

4       Plaintiffs allege all model year 2016 or later MacBook Pros have display screens that will,

5   eventually, fail.  SAC at ¶ 130.  Plaintiffs further allege the failure is caused by the tearing of the display

6   backlight ribbon cables, which are too short and do not provide enough slack to withstand the repetitive

7   opening and closing of the MacBook Pros.  *Id.* at ¶ 19.  A reasonable consumer would find these facts

8   important when choosing to purchase a laptop computer.  Additionally, Plaintiffs alleged they would not

9   have purchased their MacBook Pros had they known of the Defect, or would have paid significantly less

10  for them.  *Id.* at ¶¶ 38, 43, 48, 53, 58, 63, 68, 73, 78.

11      Plaintiffs have sufficiently alleged materiality.  *In re MacBook Keyboard Litig.,* 2019 WL

12  1765817, at *6 (N.D. Cal. Apr. 22, 2019) (denying Apple's motion to dismiss plaintiffs fraud by

13  omission claims because plaintiffs alleged sufficient materiality); *see also In re Apple & AT&T Antitrust*

14  *Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008) (denying Apple's motion to dismiss plaintiffs fraud

15  by omission claims).

16              **b.       Plaintiffs Allege a "Central Function Defect."**

17      To state an omission claim that does not relate to an unreasonable safety hazard, a "plaintiff must

18  plead that the defect was central to the product's function."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863

19  (9th Cir. 2018).  A defect is central to a product's function when it "renders those products incapable of

20  use by any consumer."  *Id.* at 864.

21      Plaintiffs allege the Defect has interfered with their ability to use the MacBook Pros.  SAC at ¶

22  35, 37, 41, 46, 51, 52, 56, 57, 61, 62, 63, 71, 72, 76, 77.  Plaintiffs' allege the defect materially impairs

23  the screen's quality, as a "display screen with stage lighting, chunks of color that obscures other text and

24  images, and that eventually goes dark," "render[s] laptops unusable and unfit for the ordinary purposes

25  for which a laptop computer is used."  *Id.* at ¶ 22.  This Court has held that a defect that goes to "the

26  functionality of a keyboard" is a central function defect.  *In re MacBook Keyboard Litig.*, 2019 WL

27  1765817 at *6.  A defect that goes to the functionality of a laptop's screen is just as "central" as that of

28  its keyboard.  Similarly, as the court in *Hodsdon* recognized, "[a] computer chip that corrupts the hard

drive, *or a laptop screen that goes dark*, renders those products incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864 (emphasis added).  Had Plaintiffs known about the display backlight ribbon cable defect prior to purchase, they would not have purchased or become owners of their computers, or would have paid substantially less for it—precisely because it interferes with a central function of the laptop.  SAC at ¶¶ 38, 43, 48, 53, 58, 63, 68, 73, 78.

### c.    Apple Had Exclusive Knowledge of the Defect.

Rule 9(b) does not apply to allegations of knowledge and intent.  Fed. R. Civ. P. 9(b).  Thus, Plaintiffs only need allege facts raising "a plausible inference" that defendant had exclusive knowledge of the defect.  *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *7 (C.D. Cal. May 22, 2013).  Moreover, "exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge of the defect."  *In re MacBook Keyboard Litig.*, 2019 WL 1765817 at 7* (finding that plaintiffs pled adequately the "exclusive knowledge" element).

Plaintiffs allege that Apple performs engineering tests on its hardware prior to release to ensure reliability of its products (SAC at ¶ 29) and Apple does not dispute this.  Plaintiffs further allege that prior to purchase they were unaware their display screens were likely to fail, as conceded by Apple in its chart highlighting that Plaintiffs' purchase dates predate their complaints.  Mot. at 16:13–24. Plaintiffs allege this is because Apple deleted similar earlier complaints about the cable defect from its discussion forums.  SAC at ¶ 82.

These allegations detailing Apple's testing and monitoring of complaints unequivocally raise a plausible inference that Apple knew about the display backlight ribbon cable defect at the time Plaintiffs purchased their MacBook Pros.  *See e.g., In re MacBook Keyboard Litig.*, 2019 WL 1765817 at 6* ("Courts have found that allegations that [] address multiple specific sources of knowledge have raised a plausible inference of the defendant's knowledge); *see also, Aguilar v. Gen. Motors, LLC*, 2013 WL 5670888, at *5 (E.D. Cal. Oct. 16, 2013) (holding plaintiff sufficiently alleged defendant had knowledge of the defect where plaintiff claimed "the pre-release testing data that allegedly shows the [] defect necessarily would have given [defendant] knowledge of the [] defect prior to the date of sale."); *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *5 (N.D. Cal. Aug. 10, 2011) (finding plaintiff alleged facts to raise a plausible inference that defendant knew of the alleged defect because plaintiff

alleged "that the testing, along with contemporaneous consumer complains, would have given [defendant] knowledge about the defect.").

Apple argues Plaintiffs' allegations regarding consumer complaints are insufficient to impute knowledge of the defect to Apple.  But Plaintiffs pled that the customer complaints in the SAC are only "[a] small sampling."  SAC at ¶ 81.  Moreover, Plaintiffs' allegations in the SAC regarding customer complaints distinguish this case from the allegations made in the cases those Apple cites.  In *Oestreicher*, plaintiff's complaint contained "[r]andom anectdotal examples of disgruntled customers posting their views on websites at [] unknown time[s]" and contained "no allegations that [defendant] knew of the customer complaints at the time plaintiff bought his computer."  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 976 n.9 (N.D. Cal. 2008).  Here, the sampling of complaints in the SAC explicitly mention the defective flex cables, the 13-inch Display Service Repair Program, and how models other than those included in the Repair Program are experiencing the same display screen failures that *are* covered by the program.  SAC at ¶¶ 79–82.

In *Elfaridi,* the court held plaintiffs did not establish defendants' knowledge of the defect at issue because their allegations that defendant received thirty-three complaints over a period of nine years was not sufficient.  *See Elfaridi v. Mercedes-Benz USA, LLC*, 2018 WL 4071155, at *5 (E.D. Mo. Aug. 27, 2018).  Unlike the plaintiffs in *Elfaridi*, Plaintiffs allege over *26,000 consumers* have signed a petition to demand that Apple address "flexgate," and have provided a sampling of complaints that span over a period of two years.  SAC at ¶¶ 80, 81.

Lastly, the plaintiffs in *Roe* and *Burdt* failed to allege that testing results *would have* alerted the defendant of the defect.  *See Roe v. Ford Motor Co.*, 2019 WL 3564589, at *6 (E.D. Mich. Aug. 6, 2019); *Burdt v. Whirlpool Corp.*, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015).  In stark contrast, Plaintiffs plead that Apple's "Reliability Engineers are responsible for leading and executing reliability tests on Apple technologies such as stress tests, the development of new test procedures to quantify the reliability of a design, and failure analysis result from these tests.  Therefore, this intensive pre-release testing would have alerted Apple to the tearing and ultimate failure of the backlight ribbon cables."  SAC at ¶ 29.

/ / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### d.    Plaintiffs' Relied on Apple's Omission.

To sufficiently plead reliance on defendant's fraudulent omission, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation marks and citation omitted).  Additionally, "[i]f an omission is material, the fact that one would have behaved differently can be presumed, or at least inferred."  *Sud v. Costco Wholesale Corp.*, 229 F. Supp  3d 1075, 1083 (N.D. Cal. Jan. 24, 2017) (internal quotation marks and citation omitted).

Each Plaintiff has alleged they visited the Apple website prior to purchasing or becoming owners of their laptops.  SAC at ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75; s*ee Beyer*, 333 F. Supp. 3d at 981 (holding plaintiff's allegation that he "reviewed the product page" was sufficient to show reliance under Rule 9(b)).  Each Plaintiff alleges they saw representations that the MacBook Pros had Apple's "best display to date."  SAC at ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75.  Thus, Plaintiffs have adequately pled that they would have been aware of the omitted information had it been disclosed.  Plaintiffs also allege that they were unaware of the alleged defect at the time of purchase, but that they would not have purchased or became owners of the laptops, or would not have paid the price that they did, had they known about the Defect.  *Id.* at ¶ 102.  Accordingly, Plaintiffs have adequately alleged that they had an opportunity to receive information about the alleged defect had Apple disclosed it, and would have acted differently if the defect was disclosed.

Apple also argues Plaintiffs have not alleged the omissions they reviewed and relied on.  Mot. at 12:7–8.  However, where "Plaintiffs do not premise their fraudulent omission claims on any 'particular advertisement,'. . . Plaintiffs are not required to 'provide representative samples' to the Court or to state specifically 'where the omitted information should or could have been revealed.' " *Davidson v. Apple, Inc*, 2017 WL 976048, at * 9 (N.D. Cal. March 14, 2017) (internal citations omitted).   Similarly, Plaintiffs base their omission claims upon a failure to disclose the Defect.

### 2.    <u>Plaintiffs Plead Adequate Claims for Affirmative Misrepresentation.</u>

Apple claims Plaintiffs have not alleged the misrepresentations that they reviewed and relied on with particularity.  Mot. at 12:7–8.  But Plaintiffs allege Apple at the time of sale, as well as prior to and after, made false and misleading representations concerning the MacBook Pro's high quality display.

*See e.g.,* SAC at ¶¶ 16, 98 (the "who"); *id.* at ¶¶ 32, 34, 40, 45, 50, 55, 60, 65, 70, 75, 99 (the "when"); *id.* at ¶¶ 16, 34, 40, 45, 50, 55, 60, 65, 70, 75, 99 (the "where"); *id.* at ¶¶ 38, 43, 48, 53 ,58, 63, 68, 73,78, 100–101 (the "what"). Plaintiffs also pled an example of an advertisement upon which they relied on. *See* SAC at ¶ 16, Fig. 1.

Apple argues incorrectly that Plaintiffs have not identified *any* actionable statement. Contrary to Apple's assertion, Plaintiffs do allege specific false and actionable statements they relied upon in making their decisions to purchase or becoming owners of their MacBook Pros. Specifically, Plaintiffs plead the following:

- Apple described these laptops as "revolutionary" and "groundbreaking," with "breakthrough performance" SAC at ¶ 16;

- Apple described the displays as its "brightest and most colorful Retina display yet" *id.*;

- Apple's senior vice-president of World Marketing claimed the new MacBook Pros had "the best Mac display ever" *id.*;

- An Apple advertisement for the 2016 MacBook Pro Models provides as follows: "The best Mac display ever delivers images that are more vivid, reveal even greater detail and appear more lifelike than ever. As thin as a MacBook display at .88 mm, the Retina display on the new MacBook Pro at 500 nits of brightness is an amazing 67 percent brighter than the previous generation, features 67 percent more contrast and is the first Mac notebook display to support wider color gamut" *id.*, Fig. 1.

These statements are not mere puffery, especially when viewed in the context of Apple's promotional campaign for the MacBook Pros, which stressed that the new display screens are the best in the computer industry. *See, e.g., Beyer*, 333 F. Supp. 3d at 977 ("Symantec's statement that its software is 'industry leading' could lead a reasonable consumer to believe that Symantec software would adhere to industry best practices. That is a reasonable inference for purposes of the motion to dismiss."); *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014) ("[A] statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." (quoting *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008))).

Furthermore, Plaintiffs explicitly alleged that they relied on representations by Apple when deciding to purchase their MacBook Pros.  *See* SAC at ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75, 99.  As explained above, Plaintiffs include comments made by Apple's senior vice-president of World Marketing, an Apple advertisement, and statements on Apple's website in the SAC.  *See id.* at ¶ 16. Apple does not deny that it made any of these statements.  Therefore, Plaintiffs have alleged that Apple made those statements, and have expressly alleged that they relied on those false and deceptive statements when deciding to purchase their MacBook Pros.  *See id.* at ¶¶ 16, 34, 40, 45, 50, 55, 60, 65, 70, 75, 99.

Lastly, Apple argues that its "only representation about durability was the Limited Warranty, which does not guarantee that MacBook Pros will be defect-free, but rather specifies that Apple will repair or replace any covered defects in materials or workmanship during the Warranty Period."  Mot. at 13:18–21.  Accordingly, "consumers could only expect the MacBook Pros to function properly for the length of the Warranty Period."  *Id.* at 14:1–2.  Apple argues consumers should only expect their $2,000 MacBook Pros to function properly for *at most one year*.  In support of this argument, Apple cites to *In re Sony*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. Nov. 30, 2010).  However, in *In re Sony*, the manufacturer's only representation about the product's ability to function properly was the express warranty.  See *In re Sony*, 758 F. Supp. 2d at 1089.  Unlike in *Sony*, Apple tells consumers that its laptop computers last for "four years."[1] ███████████████████████████████████████ Given these specific representations as to the product's life cycle, Apple's consumers can expect their expensive MacBook Pros to last much longer than the mere one year Apple argues in its opposition.

### B.   **Plaintiff Taleshpour Pleads Adequate Unfair and Unlawful UCL Claims.**

The UCL creates a cause of action for business practices that are unfair, unlawful or fraudulent. Cal. Bus. & Profs. Code § 17200.  "Each prong of the UCL provides a separate and distinct theory of liability."  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071(N.D. Cal. June 12, 2012) (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.2007).

---

[1]    More Answers to Your Questions About Apple and the Environment (Sept. 24, 2020), https://www.apple.com/environment/answers/.

### 1. The "Unfair" UCL Claim is Sufficiently Pled.

"Under the unfairness prong of the UCL, a practice may be deemed unfair even if not specifically proscribed by some other law." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1115 (internal citation omitted). California courts have used a balancing test to determine unfairness. *Id*. The "'balancing test' asks whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Apple Inc. Device Performance Litig.*, 341 F. Supp. 3d at 464. Courts have also used the tethering test to determine unfairness, "which requires that the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (internal quotation marks and citations omitted). Additionally, "[u]nlike the other two UCL prongs, the lack of a duty to disclose does not necessarily dispose of claims under the unfair prong." *Hodsdon*, 891 F.3d at 865–66.

Courts in the Northern District routinely hold that the "unfair" prong is unsuited to adjudication on the pleadings because "the balancing test required by the unfair business practice prong of section 17200 is fact intensive and is not conducive to resolution at the motion to dismiss phase." *In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *9; *see also In re iPhone Application Litig.*, 844 F. Supp. 2d at 1073; *Grace*, 2017 WL 3232464 at *15. Because there is no factual record before the Court as to Apple's justifications and motives for its unfair conduct, or its conduct's impact on Plaintiffs, the Court cannot adjudicate the balancing test at the pleading stage.

Plaintiff Taleshpour states a claim under the balancing test. He alleges that Apple's practice of selling defective laptops without providing an adequate remedy to cure the defect, and continuing to sell those laptops without full and fair disclosure of the defect, harms the public at large and is part of a common and uniform course of wrongful conduct." SAC at ¶ 95. Plaintiff Taleshpour further alleges "[t]he gravity of harm resulting from Apple's unfair conduct outweighs any potential utility." *Id.* Plaintiff Taleshpour also states a claim under the tethering test. Plaintiff Taleshpour has sufficiently identified a California public policy of "requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes." *Id.* at ¶ 93. He also alleges Apple has violated

1    this public policy because one of the MacBook Pros' most central functions, its display screen, is

2    defective.  *Id.*  Accordingly, Plaintiff Taleshpour has alleged Apple's conduct violated California public

3    policy legislatively declared in the CLRA and Song-Beverly Act.

4         Apple also argues Plaintiff Taleshpour's claim fails because he "has not alleged that his MacBook

5    Pro failed to function as warranted through the Warranty Period" and that he has not alleged a substantial

6    injury.  Mot. at 24:4–9;  However, as explained *infra* Sections II.C and B, Apple has breached the implied

7    warranty of merchantability because the MacBook Pro contains a latent defect that renders it unfit for

8    its ordinary purpose.  *See also* SAC at ¶ 136.  Accordingly, Apple's Motion to Dismiss Plaintiff

9    Taleshpour's claim under the unfair prong of the UCL should be denied.

10        **2.     Apple's Conduct Was Unlawful Under the UCL.**

11        The UCL "unlawful" prong "borrows violations of other laws ... and makes those unlawful

12   practices actionable under the UCL."  *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505 (1999).

13   " '[V]irtually any law or regulation--federal or state, statutory or common law--can serve as [a] predicate

14   for a ... [section] 17200 'unlawful' violation.' "  *Klein v. Chevron U.S.A., Inc.,* 202 Cal.App.4th 1342,

15   1383–84 (2012) (citation omitted).  Here, Plaintiff Taleshpour's "unlawful" claim is adequately stated

16   because, as discussed in *supra* Section II.A and *infra* Section II.C, he has adequately alleged his CLRA

17   and Song-Beverly Act claim.

18        **C.     Plaintiff Taleshpour Pleads a Claim for Violation of the Song-Beverly Act.**

19        "The Song–Beverly Act provides that "every sale of consumer goods that are sold at retail in

20   [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the

21   goods are merchantable." Cal. Civ. Code § 1792.  Generally, the warranty of merchantability ensures

22   that goods are fit " 'for the ordinary purpose for which such goods are used.'" *Mexia v. Rinker Boat Co.*,

23   174 Cal.App.4th 1297, 1303 (2009).  The "implied warranty of merchantability may be breached by a

24   latent defect undiscoverable at the time of sale, so [i]n the case of a latent defect, a product is rendered

25   unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect,

26   not by its subsequent discovery." *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 948 (C.D.

27   Cal. Jan. 6, 2012).  Importantly, there is no requirement that "the alleged defect must preclude any use

28   of the product at all." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June

5, 2009) (internal citation omitted).

Apple claims Plaintiff Taleshpour's allegations are insufficient to state a claim for breach of the implied warranty of merchantability.  To support its argument, Apple cites to *Baltazar v. Apple Inc.*, 2011 WL 3795013, at *4 (N.D. Cal. Aug. 26, 2011).  The plaintiffs in Baltazar "contend[ed] that the iPad fails to meet 'reasonable consumer expectations' because it 'overheats so quickly under common weather conditions that it does not function for prolonged use either outdoors, or in many warm conditions, for a variety of common uses, " and the court found Plaintiffs did not allege facts "tending to show that the device fail[ed] to meet a 'minimum level of quality'." *Id.* at *4.  Here, Plaintiff Taleshpour has alleged that his MacBook Pro contains a defect that renders it unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.  SAC at ¶ 136.  Additionally, Plaintiff Taleshpour specifically alleges that "the display backlighting system stops working entirely which prevents the MacBook Pro from being used for its core function, as a display screen with defects that severely affects its users' ability to clearly view text and images on the monitors, and that eventually goes dark, rendering the laptop incapable of use by any consumer." *Id.* at ¶ 136.  Thus, Plaintiff Talehspour clearly alleges the MacBook Pro fails to meet a minimum level of quality for a laptop computer.

Apple cites to *Kacsuta* to support its argument that a Song-Beverly claim should be dismissed where a plaintiff has not alleged the defect "affected other uses for the computer." *Kacsuta v. Lenovo,* 2013 WL 12126775, at *3 (C.D. Cal. July 16, 2013).  Unlike the plaintiff in *Kacsuta*, Plaintiff Taleshpour has specifically alleged that his MacBook Pro has become inoperable and therefore has had to purchase a new laptop to replace his original MacBook Pro.  SAC at ¶ 37.

Apple argues Plaintiff Taleshpour's latent defect argument fails because "the susceptibility of a component part to wear and tear does not constitute a defect" because "[e]very manufactured item is defective at the time of sale in the sense that it will not last forever."  Mot at 22: 23–26.  Apple cites to *In re Sony* to support its argument.  However, the court in *In re Sony* acknowledged that if a product "fails after the warranty expires," plaintiff's "[c]laims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty." *In re Sony,* 758 F. Supp. 2d at 1098–99 (S.D. Cal. Nov. 30, 2010).  Here, Plaintiff Taleshpour alleges Apple breached the implied

warranty of merchantability because the MacBook Pro contains a latent defect that renders it unfit for its ordinary purpose.  SAC at ¶ 136.

Therefore, consumers are not required to "discover and report to the seller a latent defect within [the one year duration] period." *Daniel*, 806 F.3d at 1222.  "[T]he fact that the alleged defect resulted in [an injury] three years after the sale of the [product] "does not necessarily mean that the defect did not exist at the time of sale."  *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 924 (N.D. Cal. Aug. 11, 2010); *see also Keegan*, 838 F. Supp. 2d at 948 (finding "failure to discover a defect within one-year statutory period does not defeat [plaintiff's] claim at this stage of the litigation"— on motion to dismiss— and concluding plaintiff "adequately pled a claim" for breach of implied warranty under California's Song-Beverly Warranty Act).

### D.   Plaintiffs Plead Adequate Implied Warranty of Merchantability Claims

Apple claims Plaintiffs have not pled facts sufficient to establish their MacBook Pros were not merchantable when sold.  Mot. at 20: 16–17.  As explained *supra* Section II.C, Plaintiffs have clearly alleged that all model year 2016 or later MacBook Pros contain a defect that renders it unfit for the ordinary purposes for which a laptop computer is used and would not pass without objection in the laptop computer trade.  Additionally, "[i]n the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery."  *Mexia*, 174 Cal.App.4th at 1304–05.

Given these allegations, Plaintiffs' pleading suffices to state a claim at this early stage of the litigation.  *See e.g., Allagas v. BP Solar Int'l, Inc.,* 2014 WL 4418216, at *3 (N.D. Cal. Sept. 8, 2014) (denying motion to dismiss because by pleading latent defect, Plaintiffs sufficiently stated a claim); *Ehrlich*, 801 F. Supp. 2d at 924–25 (denying motion to dismiss due to latent defect and rejecting defendant's argument that any "breach occurred both after any implied or express warranty expired"); *Daniel*, 806 F.3d at 1223 (holding California law "does not create a deadline for discovering latent defects." (internal quotation marks and citation omitted)).

Apple's also claims Plaintiffs' implied warranty claims fail due to its disclaimer located on Apple's website.  Mot. at 19: 8–10.  But, Apple's disclaimer is not conspicuous.  The size, font, location, and heading calling attention to the disclaimer are relevant factors when analyzing conspicuousness.

1   *See Hammond Ent. Inc. v. ZPS Am. LLC*, 2013 WL 5814505, at *3 (N.D. Cal. Oct. 29, 2013.  Here, all

2   the headings in Apple's Limited Warranty are identical.  Singh Decl., Ex. A, B.  Three of the sections

3   are in all-capitals.  *Id.*  Notably, the implied warranties disclaimer follows two all-capital provisions.  *Id.*

4   Additionally, the entire Limited Warranty uses the same font.  *Id.*  Additionally, Apple in no way sets

5   off its disclaimer from the surrounding text, and instead places the disclaimer at the end of a series of

6   identical-in-appearance, all-capital provisions.  *See Am. Licorice Co. v. Total Sweeteners, Inc.*, 2014 WL

7   5396214, *8 (N.D. Cal. Oct. 22, 2014) ("The type disclaiming implied warranties is in no way 'set off'

8   from the surrounding text, is in the same font as the surrounding text, and bears no 'marks that call

9   attention to the language.' ").  Apple also fails to present the Limited Warranty to the consumer at the

10  time of purchase.  Rather, Apple provides "product literature," after purchase, with a website address for

11  the consumer to access the Limited Warranty.  Singh Decl., at ¶ 3.  Therefore, consumers are not given

12  the Limited Warranty prior to purchase.  Instead, they must visit Apple's website to see the Limited

13  Warranty.  Given these facts, Apple's disclaimer is not conspicuous

14  **IV.     IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND.**

15         When any possibility exists to amend to state a valid claim, courts must grant leave to amend.

16  *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  If a complaint

17  is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines

18  that the allegation of other facts consistent with the challenged pleadings could not *possibly* cure the

19  deficiency."  *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962) (emphasis added).  As discussed

20  above, Plaintiffs have pled their claims with sufficient facts.  However, if the Court grants any portion

21  of Defendant's motion, Plaintiffs respectfully request that they be granted leave to remedy the deficiency

22  by amending their complaint.

23  / / / /

24  / / / /

25  / / / /

26  / / / /

27  / / / /

28  / / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Apple's Motion to Dismiss in its entirety.

Dated: September 25, 2020

Respectfully submitted,

PARRIS LAW FIRM

By:  _/s/ Alexander R. Wheeler_
          Alexander R. Wheeler

R. Rex Parris (Bar No. 96567)
rrex@parris.com
Alexander R. Wheeler (Bar No. 239541)
alex@parris.com
John M. Bickford (Bar No. 280929)
jbickford@parris.com
Michelle J. Lopez (Bar No. 331632)
mlopez@parris.com
PARRIS LAW FIRM
43364 10th Street West
Lancaster, California 93534
Telephone: (661) 949-2595
Facsimile: (661) 949-7524

Attorneys for Plaintiffs