1   DAVID R. SINGH (Bar No. 300840)
    david.singh@weil.com
2   ANNE CAPPELLA (Bar No. 181402)
    anne.cappella@weil.com
3   AUDREY E. STANO (Bar No. 315370)
    audrey.stano@weil.com
4   NEECKAUN IRANI (Bar No. 324617)
    neeckaun.irani@weil.com
5   WEIL, GOTSHAL & MANGES LLP
    201 Redwood Shores Parkway, 6th Floor
6   Redwood Shores, CA 94065-1134
    Telephone: (650) 802-3000
7   Facsimile: (650) 802-3100
8
9   Attorneys for Defendant APPLE INC.
10
11                  UNITED STATES DISTRICT COURT
12                 NORTHERN DISTRICT OF CALIFORNIA
13                        SAN JOSE DIVISION

14   MAHAN TALESHPOUR, RORY FIELDING,        Case No. 5:20-cv-03122-EJD
     PETER ODOGWU, WADE BUSCHER,
15   GREGORY KNUTSON, DARIEN HAYES,          **DEFENDANT APPLE INC.'S REPLY IN**
     LIAM STEWART, NATHAN COMBS, and         **SUPPORT OF MOTION TO DISMISS**
16   KENDALL BARDIN on behalf of themselves  **SECOND AMENDED COMPLAINT**
     and all members of the putative class,
17                                           Date:   November 12, 2020
            Plaintiffs,                      Time:   9:00 a.m.
18                                           Dept.:  Courtroom 4 – 5th Floor
     v.                                      Judge:  Honorable Edward J. Davila
19
     APPLE INC.,
20
            Defendant.
21
22
23
24
25           **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
26
27
28

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  ARGUMENT.........................................................................................................3

    A.   Plaintiffs Have Not Established that This Court Has Subject-Matter
        Jurisdiction, Warranting Dismissal of Their Complaint .......................................3

        1.   Plaintiffs Inaccurately Allege that the Length and Placement of the
               Backlight Cables Is "Substantially Similar" or "Nearly Identical"
               Across All 2016 and Later MacBook Pros ..................................................4

        2.   Plaintiffs Do Not Controvert Apple's Evidence that "Vertical Pink
               Lines," Screen "Flickering Violet," and Plaintiff Taleshpour's
               Display Issue Are Not Traceable to the Alleged Defect...........................6

        3.   Plaintiff Knutson's Purported Injury Is Not Traceable to Any
               Alleged Wrongful Conduct by Apple ........................................................7

        4.   Plaintiffs Odogwu and Stewart Lack Standing to Bring Their
               Claims, Including Because They Did Not Purchase Their Devices ........8

    B.   Plaintiffs Do Not, and Cannot, Save Their Fraud-Based Claims from
        Dismissal.............................................................................................................8

        1.   Plaintiffs' Fraudulent Concealment, Song-Beverly Act, and
               Deceptive Trade Act Claims (Counts 1–5, 7, 9, 11, 13, 15,
               17, and 19) Do Not Meet Rule 9(b) .........................................................8

        2.   Plaintiffs Do Not Allege Any Actionable Misrepresentation ..................9

        3.   Plaintiffs' Omission-Based Claims Still Fail (Counts 1–3, 5,
               7, 9, 11, 13, 15, 17, and 19) ...................................................................11

             a)   Plaintiffs Concede that They Do Not Plausibly Allege a
                    Defect...............................................................................................11

             b)   Plaintiffs Fail to Demonstrate Apple's Knowledge of the
                    Alleged Defect When They Purchased Their MacBook Pros ....11

             c)   Plaintiffs Fail to Allege Facts Establishing that Apple
                    Owed a Duty to Disclose ................................................................12

    C.   Plaintiffs Do Not, and Cannot, Save Their Implied Warranty Claims from
        Dismissal...........................................................................................................13

        1.   Apple's Disclaimer of the Implied Warranty of Merchantability
               Is Valid and Enforceable........................................................................13

2.  Plaintiffs Concede Apple's Alternative Argument Limiting the Duration of the Implied Warranty of Merchantability ...................13

D.  Plaintiff Taleshpour's Song-Beverly Claim Remains Defective .......................13

1.  Plaintiff Taleshpour Pleads No Predicate Breach of Warranty ..............13

2.  Plaintiffs' CLRA, Song-Beverly Act, Michigan Consumer Protection Act, and Missouri Merchandising Practices Act Claims Are Facially Overbroad .............................................................14

E.  Plaintiff Taleshpour's UCL Claim Remains Defective .....................................14

1.  Plaintiffs' "Unfair" UCL Claim Must Be Dismissed .............................14

2.  Plaintiffs' "Unlawful" UCL Claim Must Be Dismissed.........................15

F.  Plaintiff Taleshpour Abandons His CLRA Claim ..............................................15

III.  CONCLUSION..........................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................................. 10

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) (Davila, J.) ......................................................... 12

*Baltazar v. Apple Inc.*,
2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ..................................................................... 13

*Berenblat v. Apple Inc.*,
2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ..................................................................... 13

*Beyer v. Symantec*,
333 F. Supp. 3d 966, 978 (N.D. Cal. 2018) ...................................................................... 10

*Burdt v. Whirlpool Corp.*,
2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) .................................................................... 12

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2016) .......................................................................................... 14

*Davidson v. Apple Inc.*,
2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .................................................................... 13

*De Los Santos v. Panda Exp, Inc.*,
2010 WL 4971761 (N.D. Cal. Dec. 3, 2010) ...................................................................... 8

*Durkee v. Ford Motor Co.*,
2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ..................................................................... 9

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) .............................................................................. 10

*Foster v. Essex Prop., Inc.*,
2017 WL 264390 (N.D. Cal. Jan. 20, 2017) (Davila, J.) ......................................... 3, 4, 5, 7

*Heaphy v. State Farm Mut. Auto. Ins. Co.*,
2006 WL 8455994 (W.D. Wash. Feb. 8, 2006) ................................................................... 8

*Heraldez v. Bayview Loan Servicing, LLC*,
2016 WL 10834101 (C.D. Cal. Dec. 16, 2016) .......................................................... 9, 14, 15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 9

*Long v. Hewlett-Packard Co.*,
    2007 WL 2994812 (N.D. Cal. July 27, 2007), *aff'd*, 316 Fed. App'x 585 (9th Cir.
    2009) .................................................................................................................... 10, 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 3, 6

*Maloney v. Microsoft Corp.*,
    2012 WL 715856 (D.N.J. Mar. 5, 2012) ..................................................................... 5

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ........................................................................ 13

*Pence v. Andrus*,
    586 F.2d 733 (9th Cir. 1978) ...................................................................................... 8

*Rabieh v. United States*,
    2019 WL 5788673 (N.D. Cal. Nov. 6, 2019) ............................................................. 4

*Roe v. Ford Motor Co.*,
    2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) ........................................................... 5

*Rudd v. Borders, Inc.*,
    2009 WL 4282013 (S.D. Cal. Nov. 25, 2009) .......................................................... 15

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .................................................................................... 3

*Sims v. Kia Motors Am., Inc.*,
    2014 WL 12558249 (C.D. Cal. Mar. 31, 2014) .......................................................... 5

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television*
    *Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................... 10

*Spindler v. City of Los Angeles*,
    2018 WL 6164793 (C.D. Cal. Apr. 17, 2018) .......................................................... 10

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................................... 9

**Statutes**

Cal. Civ. Code § 1791(a) ............................................................................................... 14

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 15

Fed. R. Civ. P. 23(a) ........................................................................................................................ 8

1

## I.    PRELIMINARY STATEMENT[1]

Despite multiple opportunities to amend their complaint and take jurisdictional discovery, Plaintiffs' Opposition only underscores that their purported injuries are not fairly traceable to any wrongful conduct by Apple and that the SAC suffers from a litany of fatal pleading deficiencies.

First, Plaintiffs fail to carry their burden of contradicting Apple's factual challenge to subject matter jurisdiction pursuant to Rule 12(b)(1).  Plaintiffs characterize Apple's evidence that the length and relative position of the backlight cables in the named plaintiffs' devices differ from those in the 13-inch 2016 MacBook Pros eligible for Apple's Backlight Display Service Program as a "straw-man" argument.  Opp. at 3.  That is incorrect.  The SAC is replete with allegations that the design of the 2016 and later MacBook Pros at issue is "nearly identical" to that of 13-inch 2016 MacBook Pros and that the devices have the "same defect"; *i.e.*, the backlight cables are "too short and do not provide enough slack[.]"  SAC ¶¶ 18, 19, 23, 31.  Plaintiffs attempt to downplay these design differences, ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████.  Accordingly, Plaintiffs' purported injuries are not traceable to any *wrongful conduct* by Apple as required for Article III standing.

Plaintiffs do not dispute Apple's evidence that Plaintiffs Odogwu and Stewart did not purchase their MacBook Pros.  This is fatal to their standing to assert their Deceptive Trade Act claims because these claims seek "price premium" damages related to alleged overpayment for the MacBook Pros.  SAC ¶¶ 188, 258.  Furthermore, Plaintiffs Odogwu and Stewart purport to represent subclasses of persons who "purchased" a MacBook Pro 2016-year model or later; they are not even members of the classes that they purport to represent and do not have standing to assert their class claims.  SAC ¶¶ 84, 85.

Plaintiffs Fielding, Knutson, Hayes, Buscher, and Taleshpour lack standing because they fail to proffer any admissible evidence controverting Apple's evidence that they did not experience the stage lighting effect or total backlight display failure, and that the display issues that they did experience (*e.g.*,

---

[1] Except as otherwise noted, terms defined in Apple's moving brief are given the same definition in this memorandum.

1    vertical pink lines, flickering violet light, or screen damage from a dropped device) are not fairly

2    traceable to the backlight cables.

3          Plaintiffs' responses to Apple's 12(b)(6) arguments are equally baseless.  Plaintiffs have not

4    plead their fraud-based affirmative misrepresentation or omission claims with the particularity required

5    by Rule 9(b).  They identify various statements by Apple in paragraph 16 of the SAC but allege only

6    that they relied on statements "such as these," which does not suffice.  Nor do Plaintiffs' boilerplate

7    allegations that each Plaintiff reviewed "display representations" and "advertising and marketing

8    materials" where Apple represented that "the MacBook had the best display to date" (SAC ¶¶ 34, 40,

9    45, 50, 55, 60, 65, 70, 75) satisfy Rule 9(b).  Plaintiffs fail to allege what display representations each

10   named plaintiff saw, what was false in the display representation and/or other advertisements and

11   marketing material, why such representations were false, and how, if at all, each named plaintiff relied

12   on the alleged statement(s).  In any event, the statement that MacBook Pros had the "best display to date"

13   is not actionable because it is subjective and makes no claims as to the specific or absolute characteristics

14   of the displays.  Plaintiffs also fail to respond to Apple's argument that this purported statement is not

15   false or deceptive because it does not address the useful life of the backlight cables or display.

16          Plaintiffs similarly fail to state any omission-based claims.  For example, they do not respond

17   to, and thus concede, Apple's argument that, to plausibly allege a defect, Plaintiffs needed to allege facts

18   establishing that the MacBook Pros at issue are "substantially certain" to fail during their useful life.  *See*

19   Mot. at 14.  Plaintiffs also fail to distinguish Apple's cases holding that, where a manufacturer makes no

20   representations regarding a product's useful life, consumers can only expect them to function properly

21   for the length of the applicable express warranty period.  Finally, the cases Plaintiffs cite with respect to

22   a manufacturer's duty to disclose a latent defect hold that, where the alleged latent defect does not

23   manifest until after the expiration of the express warranty, it is immaterial as a matter of law.

24          Plaintiffs' Implied Warranty and Song-Beverly Act claims fare no better.  Plaintiffs do not

25   and cannot allege facts establishing that their MacBook Pros were not merchantable at the time of sale; *i.e.*,

26   that they were substantially certain to fail during the useful life of the devices.  Several Plaintiffs,

27   including Plaintiff Taleshpour, used their MacBook Pros for many years without issue.  Furthermore,

28   courts in the Northern District of California have considered and rejected Plaintiffs' arguments that the

1    disclaimer in Apple's Limited Warranty is unenforceable.  And Plaintiffs do not respond to Apple's

2    alternative argument that, even if it did not disclaim the implied warranty of merchantability, it limited

3    the duration to one year.  Plaintiffs' silence is telling, as they do not allege that they experienced any

4    display issues, or that Apple refused to repair or replace their MacBook Pros within one year of purchase.

5        Finally, Plaintiffs' UCL and CLRA claims fail as a matter of law.  Courts routinely dismiss claims

6    under the "unfair" prong of the UCL and/or for violations of the CLRA based on allegations that a

7    manufacturer failed to disclose an alleged defect manifesting outside the express warranty period.

8    Plaintiffs' claim under the UCL's "unlawful" prong fails with their deficient Song-Beverly Act and

9    CLRA claims.

10       For all of these reasons, the Court should dismiss Plaintiffs' SAC in its entirety.

## II.    ARGUMENT

### A.    Plaintiffs Have Not Established that This Court Has Subject-Matter Jurisdiction, Warranting Dismissal of Their Complaint

14       Standing is an "irreducible constitutional minimum" required to bring claims before a court.

15   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see Foster v. Essex Prop., Inc.*, 2017 WL 264390,

16   at *2 (N.D. Cal. Jan. 20, 2017) (Davila, J.) ("Since standing is 'an indispensable part of the plaintiff's

17   case, each element must be supported in the same way as any other matter on which the plaintiff bears

18   the burden of proof.'").  If there is a factual challenge to standing whereby the moving party "'present[s]

19   affidavits or other evidence,'" "'the party opposing the motion must furnish affidavits or other evidence

20   necessary to satisfy its burden of establishing subject matter jurisdiction.'"  *Safe Air for Everyone v.

21   Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted).[2]  "No presumptive truthfulness

_____

[2] Plaintiffs cite *Safe Air for Everyone v. Meyer* for support that the jurisdictional and substantive issues

23   here are too "intertwined" to decide without "going to the merits" of the action.  *Id.* at 1039 n.3.  But the

24   decision is clear that "[t]he question of jurisdiction and the merits of an action are intertwined where 'a

25   statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's

26   substantive claim for relief.'"  *Id.* at 1039 (finding that, in case brought under the Resource Conservation

27   and Recovery Act, factual challenge to subject-matter jurisdiction was converted to motion for summary

28   judgment).  The statutes under which Plaintiffs bring claims do not confer jurisdiction; Plaintiffs assert

attaches to the plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating the merits of jurisdictional claims. . . . Once the defendant presents extrinsic evidence, the plaintiff, who bears the burden of proving jurisdiction exists, must establish jurisdiction with evidence from other sources." *Rabieh v. United States*, 2019 WL 5788673, at *3 (N.D. Cal. Nov. 6, 2019) (Davila, J.). "If the moving party converts the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction . . . the party asserting federal jurisdiction when it is challenged has the burden of establishing it." *Foster*, 2017 WL 264390, at *1 (internal quotation marks and citations omitted).

### 1. Plaintiffs Inaccurately Allege that the Length and Placement of the Backlight Cables Is "Substantially Similar" or "Nearly Identical" Across All 2016 and Later MacBook Pros

The foundation of the SAC is that Apple's implementation of a MacBook Pro Display Backlight Service Program ("**Service Program**") with respect to the 13-inch 2016 MacBook Pro establishes that all MacBook Pros models of any size, and from all years thereafter, are "defective." The SAC first attempts to establish that Apple's implementation of the Service Program is an admission that the 13-inch 2016 MacBook Pros are "defective." SAC ¶ 31. Plaintiffs then allege that the 15-inch 2016 MacBook Pros have the "same defect" and that all later MacBook Pro models are "substantially similar" to the 13-inch 2016 MacBook Pros. SAC ¶¶ 18, 19, 23, 31.

But Plaintiffs do not controvert Apple's evidence establishing that the backlight cables in the various MacBook Pros at issue are at least two millimeters longer than those in the 13-inch 2016 MacBook Pro and that the relative position of the backlight cables differ. LaBerge Decl. ¶ 4. ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

jurisdiction under the Class Action Fairness Act. SAC ¶ 1. Plaintiffs' reliance on *Safe Air for Everyone* is misplaced.

Plaintiffs do not satisfy their burden to "affirmatively produce" evidence contradicting this and establishing subject-matter jurisdiction. *See Foster*, 2017 WL 264390, at *4.

Plaintiffs also assert that the "root cause" of the Alleged Defect is a "short LED flex cable" in *all* MacBook Pros, not just the 13-inch 2016 model. *See* Opp. at 4.

All products have a non-zero failure rate. The low failure rates of the MacBook Pros at issue are insufficient to establish a defect as matter of law. *See, e.g.*, Mot. at 14–15; *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, at *7 (C.D. Cal. Mar. 31, 2014) (plaintiffs must at least show that the product "contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product."); *Roe v. Ford Motor Co.*, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019) (dismissing claim where "complaint gives little indication of the water pump's failure rate or how that rate compares to the failure rate of a part that the law would deem 'defective.'"); *Maloney v. Microsoft Corp.*, 2012 WL 715856, at *7 (D.N.J. Mar. 5, 2012) (1.3%

"is too small [] to afford an inference of a design defect").  Plaintiffs cite no law to the contrary.

Accordingly, Plaintiffs' purported injuries are not traceable to any "wrongful conduct" by Apple as

required for Article III standing.  *See, e.g.*, *Lujan*, 504 U.S. at 560.

### 2. Plaintiffs Do Not Controvert Apple's Evidence that "Vertical Pink Lines," Screen "Flickering Violet," and Plaintiff Taleshpour's Display Issue Are Not Traceable to the Alleged Defect

Plaintiffs Fielding, Knutson, and Hayes do not allege that their MacBook Pros exhibited the

"stage lighting" effect but rather claim that their MacBook Pros exhibited "vertical pink lines."  SAC

¶¶ 41, 56, 61; Mot. at 9.  Apple put forth evidence that "vertical pink lines" are not traceable to the

Alleged Defect.  *Compare* SAC ¶ 21 *with* LaBerge Decl. ¶ 6 ("[S]uch vertical pink lines are not traceable

to the backlight issue that is the subject of the" Service Program).  ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████.

Similarly, while Plaintiff Buscher alleges that his MacBook Pro experienced the "stage lighting"

effect (SAC ¶ 51), Apple proffered evidence showing that Plaintiff Buscher actually complained of his

MacBook Pro screen "flickering violet," which is not traceable to the Alleged Defect.  *See* Foster Decl.

¶ 9; LaBerge Decl. ¶ 8.  Jurisdictional discovery further demonstrated that (i) Plaintiff Buscher did not

complain of stage lighting or the Alleged Defect when he called Apple about his MacBook Pro and ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

Plaintiff Taleshpour alleges that his MacBook Pro experienced the "stage lighting" effect, but

the photo of his display incorporated into the SAC establishes otherwise.  *Compare* SAC ¶ 35 *with* Figure

8.  Based on Figure 8, Apple determined that "Plaintiff Taleshpour's MacBook Pro does not have the

alleged stage lighting effect.  While it appears to potentially have some type of issue, it is not traceable

to the backlight issue" underlying the Service Program.  LaBerge Decl. ¶ 7.  ██████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████.

In short, Plaintiffs do not attempt to controvert any of the evidence proffered by Apple, and they instead opt to double down on their **allegations** that these named plaintiffs' injuries are traceable to the Alleged Defect. *See* Opp. at 7. This does not suffice. *See Foster*, 2017 WL 264390, at *4 (order by this Court dismissing case without leave to amend where plaintiffs did not "affirmatively produce counter-affidavits or other evidence controverting Essex's declarations disputing their standing allegations."). Thus, Plaintiffs Fielding, Knutson, Hayes, Buscher, and Taleshpour's claims should be dismissed because their purported injuries are not traceable to the Alleged Defect or Apple's alleged conduct.

Plaintiffs also suggest that Plaintiffs Fielding, Knutson, Hayes, Buscher, and Taleshpour's MacBook Pros may suffer from these other display issues **and** the stage lighting effect or backlight display failure. *See* Opp. at 7. This is baseless. At the outset, Plaintiffs Fielding, Knutson, and Hayes allege that their MacBook Pros exhibited **only** "vertical pink lines," not the "stage lighting" effect or total backlight failure. SAC ¶¶ 41, 56, 61. While Plaintiffs Buscher and Taleshpour allege that their MacBook Pros exhibited the "stage lighting" effect, SAC ¶¶ 35, 51, Apple proffered customer records showing that the only issue Plaintiff Buscher's complained about was his screen "flickering violet" and a declaration explaining that the issue Plaintiff Taleshpour experienced was not the stage lighting effect. *See* Singh Decl. Exs. B, C; LaBerge Decl. ¶ 7. Plaintiffs do not controvert this evidence. Thus, Plaintiffs' suggestion that certain of their MacBook Pros may suffer from multiple purported problems is neither pleaded nor supported with evidence, and must be disregarded.

### 3. Plaintiff Knutson's Purported Injury Is Not Traceable to Any Alleged Wrongful Conduct by Apple

Plaintiff Knutson claims that he "was charged approximately $770" by an unspecified third-party service provider to repair his MacBook Pro display. SAC ¶ 57. ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████ If Plaintiff Knutson was charged by the third-party service provider, that injury is not traceable to any wrongful conduct (by Apple) alleged in the SAC and Plaintiff Knutson did not suffer

1   the same purported injury as the putative class.  *See Heaphy v. State Farm Mut. Auto. Ins. Co.*, 2006 WL

2   8455994, at *2 (W.D. Wash. Feb. 8, 2006) (citing *Pence v. Andrus*, 586 F.2d 733, 736 (9th Cir. 1978)

3   and Fed. R. Civ. P. 23(a)).  For these reasons as well, Plaintiff Knutson lacks Article III standing.

4   **4.      Plaintiffs Odogwu and Stewart Lack Standing to Bring Their Claims, Including Because They Did Not Purchase Their Devices**

5

6   Plaintiffs Odogwu and Stewart purport to bring claims on behalf of devices that they did not

7   purchase.  Mot. at 8; Foster Decl. ¶¶ 5–8; *cf.* SAC ¶¶ 44, 64.  In their Opposition, Plaintiffs Odogwu and

8   Stewart do not contest that they did not purchase the devices but claim that they have standing because

9   they "were owners and users of their MacBook Pros who suffered actual financial injuries resulting from

10  [Alleged] Defect."  Opp. at 8.  Even assuming that this is true, it does not save Plaintiffs Odogwu and

11  Stewart from their own allegations.  Plaintiffs purport to represent "[a]ll persons . . . who ***purchased***"

12  certain MacBook Pros, SAC ¶¶ 84–85, not all persons who owned and used certain MacBook Pros.  A

13  class representative must be "a member of the class he purports to represent[.]"  *De Los Santos v. Panda*

14  *Exp. Inc.*, 2010 WL 4971761, at *6 (N.D. Cal. Dec. 3, 2010); *Heaphy*, 2006 WL 8455994, at *2 (same).

15  Plaintiffs Odogwu and Stewart are not members of the putative class and thus lack standing.

16  Further, Plaintiffs Odogwu and Stewart's Deceptive Trade Act claims (Counts 9 and 18) are

17  premised on the theory that they paid a price premium as a result of Apple's allegedly deceptive

18  representations.  SAC ¶¶ 188 ("Plaintiff Stewart and the New Jersey Subclass members overpaid for

19  their MacBook, and their MacBook suffered a diminution in value."), 258 (same as to Plaintiff Odogwu

20  and the putative Massachusetts subclass).  As discussed *supra*, Plaintiffs Odogwu and Stewart admit that

21  they did not purchase their MacBook Pros.  They thus lack standing.  *See Heaphy*, 2006 WL 8455994,

22  at *2.  For this reason as well, Plaintiffs Odogwu and Stewart lack standing to assert their claims.

23  **B.      Plaintiffs Do Not, and Cannot, Save Their Fraud-Based Claims from Dismissal**

24  **1.      Plaintiffs' Fraudulent Concealment, Song-Beverly Act, and Deceptive Trade Act Claims (Counts 1–5, 7, 9, 11, 13, 15, 17, and 19) Do Not Meet Rule 9(b)**

25

26  Plaintiffs effectively concede that Rule 9(b) applies to their fraudulent concealment, Song-

27  Beverly Act, and Deceptive Trade Act claims.  In its Motion, Apple pinpoints the SAC paragraph

28  numbers and cites cases demonstrating that these claims are grounded in fraud.  *See* Mot. at 11–12 (citing

1  *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Kearns v. Ford Motor Co.*,

2  567 F.3d 1120, 1125 (9th Cir. 2009); and *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *7 (N.D.

3  Cal. Sept. 2, 2014)).  Plaintiffs neither explain how their fraudulent concealment, Song-Beverly Act, or

4  Deceptive Trade Act claims are not grounded in fraud, nor distinguish Apple's cases or cited contrary

5  authority.[3]  *See* Opp. at 9–10.  "Failure to oppose constitutes a waiver or abandonment of the issue."

6  *Heraldez v. Bayview Loan Servicing, LLC*, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 16, 2016).

7  And Plaintiffs fail to plead any affirmative misrepresentation or omission with the particularity

8  required by Rule 9(b).  With respect to affirmative misrepresentation, while they purport to identify

9  certain statements by Apple in paragraph 16 of the SAC, Plaintiffs allege only that they relied on

10  statements "such as these" and not these very statements.  Moreover, Plaintiffs do not state why the

11  identified representations were false, and how, if at all, they relied upon them.  Similarly, Plaintiffs'

12  repeated boilerplate assertions that each named plaintiff reviewed "display representations" and

13  "advertising and marketing materials" where Apple represented that "the MacBook had the best display

14  to date" (SAC ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75) do not satisfy Rule 9(b).  Plaintiffs fail to allege what

15  display representations each named plaintiff reviewed, what was false in the display representation

16  and/or other advertisements and marketing material, why such representations were false, and how, if at

17  all, each named plaintiff relied on the alleged statement(s).  With respect to their omission claims,

18  Plaintiffs argue that they are not required to provide representative samples to the Court or state

19  specifically "where the omitted information should or could have been revealed" because they do not

20  premise their omission claims on any particular advertisement.  *See* Opp. at 14.  That is not true.

21  Plaintiffs premise their fraudulent concealment and Deceptive Trade Act claims on allegations that

22  Apple should have qualified partial representations in (unspecified) advertisements.  *See, e.g.*, SAC

23  ¶¶ 94, 98, 109, 111, 123, 148, 167, 187, 204, 219, 238, 255–56, 272–73.  Plaintiffs' omission claims

24  should thus be dismissed for failure to satisfy the requirements of Rule 9(b).

25  ### 2.    Plaintiffs Do Not Allege Any Actionable Misrepresentation

26  ---
[3] Plaintiffs also do not rebut their failure plead Apple's supposed deletion of complaints from its website

27  with the requisite particularity, and their Opposition does not attempt to resuscitate this allegation or

28  distinguish the case law that Apple cites.  *Compare* Mot. at 18–19 *with* Opp. at 12.

Nor do Plaintiffs meaningfully rebut Apple's argument that they have not alleged any actionable misrepresentations.  *See* Mot. at 13–14.  While Plaintiffs allege a smattering of alleged statements by Apple, the only statement that any named plaintiff allegedly reviewed is that the MacBook has "the best" display to date.[4]   In highly analogous cases, courts have found that subjective and immeasurable statements like this are not actionable as a matter of law.  *See, e.g.*, Mot. at 13;[5] *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (statements that a laptop delivers "ultra-reliable performance," "full power and performance," "versatile, reliable systems," and were "packed with power" and "delivers the power you need" were not actionable); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (statements that line of laptops has the "latest technology" and "outstanding quality, reliability, and performance" were not actionable).  Furthermore, Plaintiffs do not and cannot respond to Apple's argument that the statement that the MacBook has "the best" display is not false because it "does not address the useful life of the backlight cables or displays."  Mot. at 13.

Moreover, Plaintiffs improperly introduce a new (and demonstrably false) allegation in their Opposition that "Apple tells consumers that its laptop computers last for 'four years.'"  Opp. at 16.  "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Spindler v. City of Los Angeles*, 2018 WL 6164793, at *8 (C.D. Cal. Apr. 17, 2018) (internal citation omitted).  Further, even if Plaintiffs' new allegation were properly introduced, it is not relevant, as the "four years" selectively quoted by Plaintiffs refers to power consumed by all macOS products for purposes of conducting a product's Greenhouse Gas Life Cycle Assessment.  *See* Opp. at 16 n.1 (citing

---

[4] Plaintiffs complain that "Apple's consumers can expect their expensive MacBook Pros to last much longer than the mere one year Apple argues in its opposition."  Opp. at 16.  This unfounded assertion disregards Apple's corresponding authority, *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) and *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd*, 316 Fed. App'x 585 (9th Cir. 2009), also involving expensive products:  high-definition televisions and laptop computers.  Mot. at 14.

[5] Plaintiffs' reliance on *Beyer v. Symantec* is misguided, as Plaintiffs do not allege that Apple claimed that MacBook Pro displays were "industry leading," the specific language analyzed in the decision.  333 F. Supp. 3d 966, 978 (N.D. Cal. 2018).

https://www.apple.com/environment/answers/).   Finally, Plaintiffs point to Mr. LaBerge's personal, subjective opinion regarding the durability of Apple notebooks generally (*i.e.*, not a specific model) and attempt to pass it off as an affirmative representation by Apple to Plaintiffs.  *See* Opp. at 16.  But Mr. LaBerge's private, personal opinion does not constitute an affirmative misrepresentation, particularly as none of the Plaintiffs could have relied on a personal opinion offered during an individual's deposition that was taken after the filing of the SAC.  Plaintiffs' affirmative misrepresentation claims fail.

### 3.   Plaintiffs' Omission-Based Claims Still Fail (Counts 1–3, 5, 7, 9, 11, 13, 15, 17, and 19)

#### a)   Plaintiffs Concede that They Do Not Plausibly Allege a Defect

Plaintiffs do not respond to Apple's argument that they fail to plausibly allege a defect.  Mot. at 14–15.  They do not dispute that they must plead facts establishing a "substantial certainty" that the MacBook Pros will fail during their useful life.  However, they do not allege such facts—and they lack any good-faith basis to cure this flaw through amendment because, as explained above, ███████ ████████████████████████.  *See supra* Section II.A.1.  Nor do Plaintiffs distinguish the cases Apple cites for the proposition that, where a manufacturer makes no representations regarding the useful life of a product, consumers can only expect them to function properly for the length of the express warranty.  *See, e.g.*, *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd*, 316 Fed. App'x 585 (9th Cir. 2009) ("HP is not alleged to have made any representation as to the life of [its devices].  As such, a consumer's only reasonable expectation was that the [devices] would function properly for the duration of HP's limited one-year warranty.  HP fulfilled this expectation.").

#### b)   Plaintiffs Fail to Demonstrate Apple's Knowledge of the Alleged Defect When They Purchased Their MacBook Pros

There are no allegations in the SAC establishing that Apple had knowledge of the Alleged Defect when Plaintiffs purchased their MacBook Pros, and nothing in the Opposition establishes otherwise.  Plaintiffs do not contest that the anonymized Internet posts included in the SAC *all* post-date Plaintiffs' MacBook Pro purchases.  Mot. at 16.  Instead, they stress that thousands of consumers signed a Change.org petition.  *See* Opp. at 2, 13; SAC ¶ 80 n.4.  But this petition was also started *after* Plaintiffs purchased their MacBook Pros, and Plaintiffs do not allege when it included the devices at issue in this

1  case, rather than the 13-inch 2016 MacBook Pro eligible for Apple's Service Program.   Moreover,

2  Plaintiffs cannot have it both ways.   If the petition establishes Apple's knowledge of the Alleged

3  Defect—it does not—then Apple did not have exclusive knowledge.   Plaintiffs also fail to distinguish

4  Apple's authority holding that conclusory allegations that pre-release testing should have alerted a

5  manufacturer to an alleged defect do not suffice to establish a defendant's knowledge.   *See, e.g.*, *Burdt*

6  *v. Whirlpool Corp.*, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) ("Plaintiff must allege more than

7  an undetailed assertion that the testing must have revealed the alleged defect.").

8          **c)**        **Plaintiffs Fail to Allege Facts Establishing that Apple Owed a Duty to Disclose**

9

10         Plaintiffs' attempt to establish that Apple owed a duty to disclose still fails as a matter of law.

11  Plaintiffs note that, "[w]hen a defect does not relate to an unreasonable safety hazard, a defendant has a

12  duty to disclose when (1) the omission is material; (2) the defect is central to the product's function; and

13  (3) at least one of the following four factors is met:   the defendant is the plaintiff's fiduciary; the

14  defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff;

15  the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial

16  representations that are misleading because some other material fact has not been disclosed." *In re Apple*

17  *Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019) (Davila, J.).   But they

18  ignore the holding in the very case by this Court that they cite:   "California law is clear that its consumer

19  fraud statutes cannot be used to extend a product's warrant[y]." *Id.* at 1178–89 (dismissing consumer

20  fraud claims alleging failure to disclose a defect manifesting outside of Apple's Limited Warranty for

21  failure to satisfy materiality).   Based on Plaintiffs' own authority, they cannot establish even the

22  threshold materiality requirement.[6]

23  ---

[6] Plaintiffs also have not alleged facts establishing any of the four factors.   They do not and cannot allege

24  a fiduciary relationship with Apple.   They cannot allege Apple's exclusive knowledge of the Alleged

25  Defect because they cannot show that Apple knew with a "substantial certainty" that the devices at issue

26  would fail during their useful life.   *See supra* at II.B.3(a).   Plaintiffs' only allegation of concealment—

27  that Apple deleted complaints on support pages—is grounded in fraud, but does not satisfy Rule 9(b).

28  Mot. at 18–19.   And Plaintiffs' allegations of partial representations that are misleading fail because they

**C.    Plaintiffs Do Not, and Cannot, Save Their Implied Warranty Claims from Dismissal**

**1.    Apple's Disclaimer of the Implied Warranty of Merchantability Is Valid and Enforceable**

The Limited Warranty effectively disclaimed the implied warranty of merchantability.  Mot. at 19.  Plaintiffs respond that Apple's disclaimer is not sufficiently conspicuous to justify dismissal of these claims.  *See* Opp. at 20–21.  They are wrong.  Courts in this District have repeatedly considered and rejected the very arguments that Plaintiffs assert, enforcing Apple's Limited Warranty and dismissing implied warranty claims based on its disclaimer.  *See, e.g.*, *Davidson v. Apple Inc.*, 2017 WL 976048, at *14–15 (N.D. Cal. Mar. 14, 2017) (also rejecting argument that Limited Warranty is not sufficiently conspicuous because it is received by consumers post-sale); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 818–19 (N.D. Cal. 2014) (Davila, J.); *Berenblat v. Apple Inc.*, 2010 WL 1460297, at *3–4 (N.D. Cal. Apr. 9, 2010).  As such, Plaintiffs' Implied Warranty claims should be dismissed.

**2.    Plaintiffs Concede Apple's Alternative Argument Limiting the Duration of the Implied Warranty of Merchantability**

Further, even if Apple did not effectively disclaim the implied warranty of merchantability— which it did—Plaintiffs do not respond to Apple's alternative argument that it effectively limited the duration of any implied warranty not disclaimed to one year.  Mot. at 19–20.  This too is fatal to Plaintiffs' Implied Warranty claims because Plaintiffs do not allege that they experienced, and that Apple refused to remedy, any display issues within the one-year Limited Warranty period.  *See* SAC.

**D.    Plaintiff Taleshpour's Song-Beverly Claim Remains Defective**

**1.    Plaintiff Taleshpour Pleads No Predicate Breach of Warranty**

As discussed *supra* Section II.A.1, Plaintiffs do not establish an underlying breach of the implied warranty of merchantability, a prerequisite to stating a claim for the Song-Beverly Act.  *See* Mot. at 21 (citing *Baltazar v. Apple Inc.*, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011)).  While a plaintiff need not raise a breach of the implied warranty of merchantability under the Song-Beverly Act due to a latent defect during the warranty period, to establish a breach, the product must not be merchantable at the time

did not identify the misleading advertisements that Plaintiffs relied upon, as required to comply with Rule 9(b).  *See supra* Section II.B.1.

1    of purchase.  As one of Plaintiffs' own case citations explains, this requires proof that the product
2    "contains an inherent defect which is substantially certain to result in malfunction during the useful life
3    of the product." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2016) (internal quotation
4    marks and citation omitted).  Plaintiffs have not, and cannot, plead facts establishing that, at the time of
5    sale, Plaintiff Taleshpour's MacBook Pro was "substantially certain" to fail during its useful life.
6    Furthermore, any suggestion that Plaintiff Taleshpour's MacBook Pro was not merchantable is precluded
7    by his actual experience.  Specifically, he admits that he used his MacBook Pro for nearly three years,
8    including two whole months after it supposedly began exhibiting the "stage lighting" effect.  *See* Mot.
9    at 22.  For this reason as well, Plaintiff Taleshpour's Song-Beverly Act claim should be dismissed.

10   **2.    Plaintiffs' CLRA, Song-Beverly Act, Michigan Consumer Protection Act,**
11   **and Missouri Merchandising Practices Act Claims Are Facially Overbroad**

12   Apple challenged Plaintiffs' CLRA, Song-Beverly Act, Michigan Consumer Protection Act, and
13   Missouri Merchandising Practices Act claims as overbroad insofar as they purport to assert claims with
14   respect to commercial use.  *See* Mot. at 25.  Plaintiffs neither acknowledge nor respond to this argument,
15   thereby conceding it.  *See Heraldez*, 2016 WL 10834101, at *2.  These four claims should thus be
16   dismissed to the extent that they apply to MacBook Pros not purchased for "personal, family, or
17   household purposes[.]"  *See, e.g.*, Cal. Civ. Code § 1791(a).

18   **E.    Plaintiff Taleshpour's UCL Claim Remains Defective**

19   **1.    Plaintiffs' "Unfair" UCL Claim Must Be Dismissed**

20   California courts apply either the "tethering test" or "balancing test" to assess claims brought
21   under the UCL's "unfair" prong.  Apple argues that Plaintiff Taleshpour cannot satisfy the "tethering
22   test" because he used his MacBook Pro for nearly three years without issue.  *See* Mot. at 23.  Plaintiffs
23   answer that "the MacBook Pro contains a latent defect that renders it unfit for its ordinary purpose."
24   Opp. at 18.  However, this argument ignores Apple's cited authority, holding that failure to disclose a
25   supposed defect does not constitute a substantial injury under the UCL's "unfair" prong where the
26   product functions as warranted throughout the term of the express warranty.  *See* Mot. at 24.

27   In response to Apple's argument that Plaintiff Taleshpour does not and cannot allege a substantial
28   injury (Mot. at 23–24), Plaintiffs argue that Plaintiff Taleshpour satisfied the balancing test since they

1    claim that Apple breached the implied warranty of merchantability.  *See* Opp. at 18.  For the reasons

2    discussed *supra* Section II.A.1, Plaintiffs do not state any actionable implied warranty of merchantability

3    claim.  Therefore, Plaintiffs, including Plaintiff Taleshpour, have satisfied neither the "tethering test"

4    nor the "balancing test."

5         Apple also argues that Plaintiffs' "unfair" UCL claim is grounded in fraud because it is based on

6    Apple allegedly "conceal[ing] a latent defect to the detriment of the public."  Mot. at 24.  Plaintiffs do

7    not dispute the applicability of Rule 9(b) and, as set forth *supra*, do not satisfy its requirements.

8    **2.    Plaintiffs' "Unlawful" UCL Claim Must Be Dismissed**

9         Plaintiff Taleshpour bases his claim under the UCL's "unlawful" prong on alleged violations of

10   the Song-Beverly Act and CLRA.  But Plaintiffs' Song-Beverly Act and CLRA claims fail as a matter

11   of law.  *See supra* Section II.A.1; *infra* Section II.F.  Accordingly, Plaintiff Taleshpour's "unlawful"

12   UCL claim also fails.  *See Rudd v. Borders, Inc.*, 2009 WL 4282013, at *2 (S.D. Cal. Nov. 25, 2009).

13   **F.    Plaintiff Taleshpour Abandons His CLRA Claim**

14        Finally, Plaintiffs fail to meaningfully respond to Apple's argument that CLRA (and UCL)

15   claims should be dismissed where purported defects manifest outside of the warranty period.  *See* Mot.

16   at 24.  For this additional reason, Plaintiffs' CLRA (and UCL) claim should be dismissed.  *See Heraldez*,

17   2016 WL 10834101, at *2.

18   **III.    CONCLUSION**

19        For the foregoing reasons, Apple respectfully requests that the Court dismiss Plaintiffs' SAC in

20   its entirety pursuant to Rules 12(b)(1) and 12(b)(6).

21   Dated: October 9, 2020                        Respectfully submitted,

22                                                 WEIL, GOTSHAL & MANGES LLP

23

24                                                 By:  */s/ David R. Singh*
                                                        DAVID R. SINGH

25                                                 Attorney for Defendant Apple Inc.

26

27

28