1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

8

MAHAN TALESHPOUR,

Plaintiff,

9

v.

10

APPLE INC.,

11

Defendant.

12

Case No.  5:20-cv-03122-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 33

13     Plaintiffs Mahan Taleshpour, Rory Fielding, Peter Odogwu, Wade Buscher, Gregory

14 Knutson, Darien Hayes, Liam Stewart, Nathan Combs, and Kendall Bardin's ("Plaintiffs")

15 brought this action against Defendant Apple Inc. ("Apple") on behalf of themselves and members

16 of a putative class, raising twenty claims related to an alleged product defect in certain MacBook

17 Pro laptops.  Before the Court is Apple's Motion to Dismiss the Second Amended Complaint

18 (Dkt. No. 30, ("SAC")).  Dkt. No. 33 ("Motion").  The Court took the Motion under submission

19 for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons below, the

20 Court GRANTS in part and DENIES in part the Motion.

21     **I.     Background[1]**

22     In 2016, Apple introduced its updated 13- and 15-inch MacBook Pro models.  To make

23 these MacBook Pros thinner and sleeker than their predecessors, Apple used thin, flexible

24 backlight ribbon cables to connect the lighting mechanism of the display screen to the display

25

26 [1] This background summarizes the facts as alleged by Plaintiffs in the SAC, which the Court

27 accepts as true for the purposes of the present Motion to Dismiss only.

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
1

United States District Court
Northern District of California

controller board.  *Id.* ¶ 17.  These backlight ribbon cables wrap around the display controller board at the hinge of the laptop and are secured by a pair of spring-loaded covers.  *Id.*

This configuration causes the backlight ribbon display cables rub against the control board when the laptop is opened and closed.  *Id.* ¶ 19.  Over time, the rubbing causes the cables to tear, which leads to various problems with the display screen.  *Id.*  For example, the tearing of the cable can cause a "stage lighting" effect, consisting of alternating patches of darkness along the bottom of the display.  *Id.* ¶ 20.  Further tearing can lead to more serious display issues, such as large blocks of color that obscure portions of the screen, and eventually, can cause the display to fail entirely.  *Id.* ¶¶ 21-22.  To varying degrees, these issues with the display screen all allegedly render the laptop unusable and unfit for its ordinary purpose.  *Id.*

Plaintiffs allege that the backlight cables tear because they are "too short and do not provide enough slack to withstand the repetitive opening and closing of the MacBook Pros" (the "Alleged Defect").  *Id.* ¶ 19.  Faced with complaints from numerous consumers about the stage lighting effect and the failure of the display, Apple attempted to remedy the Alleged Defect by making the backlight cables two millimeters longer in the 13- and 15- inch MacBook Pro models released in July 2018.  *Id.* ¶¶ 28-30.

In May 2019, Apple also introduced the "MacBook Pro Display Backlight Service Program," through which Apple agreed to replace the display on all 13-inch 2016 MacBook Pro models that exhibited the stage lighting effect or a total failure of the display backlight system.  *Id.* ¶ 31.  Under the service program, Apple will refund the owner of a 13-inch 2016 MacBook Pro who paid to have the display fixed.  *Id.*  The service program covers only the 13-inch 2016 MacBook Pro; it does not cover the 15-inch MacBook Pro, or any MacBook Pro model released after 2016.  *Id.*

Plaintiffs are all owners of 15-inch 2016 MacBook Pro or MacBook Pro models released after 2016 and allege that their laptops all suffered from the same backlight cable defect as the 13-inch version.  *Id.* ¶¶ 33, 39, 44, 49, 54, 59, 64, 69, 74.  Plaintiffs all experienced issues with their display screens, including the stage lighting effect or "vertical pink lines," which ultimately

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    rendered their laptops inoperable.  *Id.* ¶¶ 35, 37, 41, 46, 51, 52, 56, 57, 61, 62, 66, 71, 72, 76, 77.

2    In all cases, these issues manifested after the one-year warranty provided by Apple expired.  *Id.*

3    Plaintiffs bring claims for (i) violations of the California Unfair Competition Law, Cal.

4    Bus. & Prof. Code §§ 17200, et sec. ("UCL") (Count 1), the California Consumers Legal

5    Remedies Act, Cal. Civ. Code §§ 1761 and 1770 ("CLRA") (Count 2), and equivalent deceptive

6    trade practice laws in Alaska, Florida, Massachusetts, Michigan, Missouri, New Jersey, Texas, and

7    Washington (Counts 5, 7, 9, 11, 13, 15, 17, and 19) (collectively the "Deceptive Trade Practice

8    Claims"); (ii) fraudulent concealment (Count 3); (iii) violations of the Song-Berly Consumer

9    Warranty Act, Cal. Civ. Code §§ 1791-1794 (Count 4); and (iv) breach of the implied warranty of

10   merchantability under Alaska, Florida, Massachusetts, Michigan, Missouri, New Jersey, Texas,

11   and Washington law (Counts 6, 8, 10, 12, 14, 16, 18, and 20) (collectively, the "Implied Warranty

12   Claims").  Apple seeks to dismiss all of Plaintiffs claims pursuant to Federal Rules of Civil

13   Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to state a

14   claim upon which relief can be granted.

15       **II.    Legal Standard**

16           **A.  12(b)(1)**

17           "Federal courts are courts of limited jurisdiction; they are authorized only to exercise

18   jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder."

19   *Am. Fed'n of Tchrs. v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020); *see also Henderson ex*

20   *rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011)

21   ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of

22   their jurisdiction").  To establish Article III standing, a plaintiff must allege: (1) an injury in fact

23   that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly

24   traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative)

25   that injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Env't*

26   *Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000); *Lujan v.*

27   *Defs. of Wildlife*, 504 U.S. 555, 561–62, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    To show an injury in fact, a plaintiff must allege that he or she suffered "an invasion of a

2    legally protected interest" that is "concrete and particularized" and "actual or imminent, not

3    conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635

4    (2016), *as revised* (May 24, 2016) (quotation marks and citation omitted).  To establish a traceable

5    injury, there must be "a causal connection between the injury and the conduct complained of—the

6    injury has to be fairly traceable to the challenged action of the defendant, and not the result of the

7    independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (simplified).

8    Finally, it must be "likely" as opposed to merely "speculative" that the injury will be "redressed

9    by a favorable decision." *Am. Fed'n of Tchrs.*, 484 F. Supp. 3d at 741 (citing *Lujan*, 504 U.S. at

10   561).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the

11   existence of Article III standing and, at the pleading stage, "must clearly allege facts

12   demonstrating each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal quotations omitted); *see*

13   *also Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must

14   be clearly apparent on the face of the complaint.").

15   To contest a plaintiff's showing of subject-matter jurisdiction, a defendant may file a Rule

16   12(b)(1) motion.  Fed. R. Civ. P. 12(b)(1).  A defendant may challenge jurisdiction "facially" by

17   arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic

18   evidence demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392

19   F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

20   2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are

21   insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the

22   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

23   jurisdiction." *Id.*

24   In resolving a factual attack on jurisdiction, the district court may review evidence beyond

25   the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*

26   (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039

27   n.2 (9th Cir. 2003)).  While a district court may consider evidence outside of the pleadings to

28   Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   resolve a "factual" Rule 12(b)(1) motion, "a [j]urisdictional finding of genuinely disputed facts is

2   inappropriate when the jurisdictional issue and substantive issues are so intertwined that the

3   question of jurisdiction is dependent on the resolution of factual issues going to the merits of an

4   action." *Safe Air for Everyone*, 373 F.3d at 1039 n.3 (citing *Sun Valley Gasoline, Inc. v. Ernst*

5   *Enterprises, Inc.*, 711 F.2d 138, 140 (9th Cir. 1983) (internal quotation marks omitted).

6       "In a class action, this standing inquiry focuses on the class representatives." *NEI*

7   *Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir.

8   2019). The named plaintiffs "must allege and show that they personally have been injured, not

9   that injury has been suffered by other, unidentified members of the class to which they belong and

10  which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d

11  343 (1975). Standing for the putative class "is satisfied if at least one named plaintiff meets the

12  requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). But if none

13  of the named plaintiffs purporting to represent a class can establish standing to sue, the class

14  action cannot proceed. *See NEI Contracting and Engineering, Inc.*, 926 F.3d at 532 (citing

15  *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)).

16                              **B.   12(b)(6)**

17      Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

18  specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

19  it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

20  (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may

21  therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P.

22  12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

23  cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

24  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant

25  a motion to dismiss, the court must accept as true all "well pleaded factual allegations" and

26  determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v.*

27  *Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The court must also construe

28

1    the alleged facts in the light most favorable to the plaintiff.  *Love v. United States*, 915 F.2d 1242,

2    1245 (9th Cir. 1989).  While a complaint need not contain detailed factual allegations, it "must

3    contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

4    face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 570).

5        **III.    Discussion**

6            **A.  Subject Matter Jurisdiction**

7        Apple argues that the Court should dismiss all of Plaintiffs' claims for lack of subject-

8    matter jurisdiction because each named Plaintiff lacks Article III standing for various reasons.

9    Mot. at 6.

10            **i.   Injury in Fact**

11        First, Apple argues that four named Plaintiffs lack standing because they did not suffer any

12    cognizable injury in fact.  Mot. at 8.  Apple asserts that "[c]ontrary to their allegations," Plaintiff

13    Odogwu and Plaintiff Stewart did not personally purchase their MacBook Pros.  *Id.* (citing Dkt.

14    No. 33-2, Declaration of Matthew Foster in Support of Apple's Motion to Dismiss Second

15    Amended Complaint ("Foster Decl.") ¶¶ 5-8).  Apple cites no authority suggesting that a person

16    must be the original purchaser of a product in order to have standing to bring claims related to that

17    product.  Indeed, "[t]here are innumerable ways in which economic injury from unfair competition

18    may be shown."  *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *13 (N.D. Cal.

19    July 28, 2017).  Plaintiffs Odogwu and Stewart both allege that they incurred concrete economic

20    injuries by paying to repair or replace their laptops after the screen became inoperable.  SAC ¶¶

21    46-47, 67.  The Court finds that these economic injuries establish an injury in fact sufficient to

22    confer standing.

23        Apple argues that Plaintiff Knutson lacks any injury in fact because, according to Apple, it

24    replaced Mr. Knutson's display free of charge.  Mot. at 8 (citing Foster Decl. Ex. A).  Mr. Foster

25    testifies that based on his review of Apple repair records, "[Mr.] Knutson's entire display

26    assembly (including the backlight cable) for his 15-inch, 2016 MacBook Pro was replaced free of

27    charge in June 2020 pursuant to an Apple Repair Extension Program that is different from, and not

28    Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

related to, the 13-inch MacBook Pro Display Backlight Service Program." Foster Decl. ¶ 4. The Exhibit to which Mr. Foster cites appears to be an internal Apple record identifying Mr. Knutson, the specifications of his device, the issue he reported to Apple, and a "Technician Note" stating the "REP Display coating needs replace display to resolve issue." *Id.* at Ex. A. Mr. Foster does not point to anything in this document that indicates that Mr. Knutson's display was actually replaced pursuant to the technician's diagnosis. Indeed, Mr. Knutson submitted a declaration stating unequivocally that "Apple did not replace [his] entire display assembly free of charge in June 2020 pursuant to an Apple Repair Extension Program." Dkt. No. 40-4, Declaration of Gregory Knutson In Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Second Amended Complaint ("Knutson Decl.") ¶ 8. Mr. Knutson further stated that he took his device to an Apple Authorized Service Provider, which diagnosed his screen failure and charged him $771.80 for the replacement of the display. Knutson Decl. ¶ 4. Mr. Knutson attached a bill from the service provider and his bank statement indicating that he paid that amount to the service provider. *See* Knutson Decl. Exs. A, B. Based on this evidence, the Court is satisfied that Mr. Knutson did, in fact, experience economic injury sufficient to establish standing.

Apple also argues that Plaintiff Combs lacks standing because he allegedly purchased a 15-inch 2018 MacBook Pro on July 20, 2018, even though in the original complaint Plaintiffs "admitted that Apple remedied the Alleged Defect in July 2018 by releasing new 13- and 15-inch MacBook Pros 'with backlight ribbon display cables two millimeters longer than in the earlier models.'" Mot. 8-9 (citing Dkt. No. 1, Complaint, ¶ 17). As an initial matter, "it is well-established that an amended pleading supersedes the original pleading and renders it of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading." *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014). ). However, [w]here allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may . . . strike the changed allegations as false and sham." *Harbridge v. Schwarzenegger*, No. CV 07-4486-GW SH, 2011 WL 6960830, at *8 (C.D. Cal. Aug. 31, 2011), *report and recommendation adopted sub nom. Harbridge v. Sumpter*, No. CV 07-

1    4486-GW SH, 2012 WL 33176 (C.D. Cal. Jan. 5, 2012).

2         Plaintiffs argue that through further investigation after the original complaint was filed,

3    they discovered that the 2018 models were exhibiting the same display issues as prior models

4    despite the longer backlight cable Apple had incorporated. *See*, *e.g.*, SAC ¶ 71-71 (alleging that

5    Mr. Combs began experiencing display problems in March 2020, approximately two months

6    before the original complaint was filed, and that his device became inoperable in June 2020, after

7    the complaint was filed). The Court finds it plausible that Plaintiffs originally believed the issue

8    to have been remedied by the longer backlight cable, and only realized that the issue had not been

9    resolved when the 2018 displays began failing. Thus, the Court finds no contradiction in

10   Plaintiffs' original allegations and the allegations in the SAC, nor does the Court find any reason

11   to conclude that these allegations are "false or sham." *See PAE Gov't Servs., Inc. v. MPRI, Inc.*,

12   514 F.3d 856, 858 (9th Cir. 2007) (explaining that "the fact that an amended complaint or answer

13   contains an allegation that is apparently contrary to an earlier iteration of the same pleading" does

14   not necessarily "render the later pleading a sham" in part because "[a]t the time a complaint is

15   filed, the parties are often uncertain about the facts and the law").

16                        **ii.  Traceability**

17        Apple next argues that Plaintiffs' purported injuries are not fairly traceable to Apple's

18   alleged conduct because, according to Apple, seven of the named Plaintiffs' devices "do not even

19   contain the alleged design defect." Mot. at 1. Specifically, Apple argues that Plaintiffs' claims are

20   based on the factual misconception that the backlight cables in their laptops were substantially

21   similar to those in the 13-inch 2016 MacBook Pro device that is eligible for Apple's service

22   program. Apple argues that Plaintiffs "concede that the relevant aspect of design is the length of

23   the backlight cables, *i.e.*, they are allegedly two millimeters too short." *Id.* at 6. Apple then

24   asserts that because "the backlight cables in seven of nine of the named [P]laintiffs' MacBook Pro

25   devices are at least two millimeters longer than the backlight cables in the 13-inch MacBook Pro

26   introduced in 2016 and eligible for the service program," there is no causal nexus between these

27   seven Plaintiffs' purported injuries and Plaintiffs' theory of liability. *Id.* at 7.

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        This argument fundamentally mischaracterizes Plaintiffs' theory of liability.  Plaintiffs
allege that the backlight cables in their devices are "too short," not that they are two millimeters
too short.  SAC ¶ 19.  Plaintiffs allege that the "placement and configuration" of the backlight
cables in the 15-inch MacBook Pro is "substantially similar, if not nearly identical" to the
placement and configuration of the cables in the 13-inch MacBook Pro, but nowhere do Plaintiffs
allege that the cables used in each model are the same length or that all the defective cables are
precisely two millimeters too short.  Plaintiffs allege that Apple "attempt[ed] to remedy" the
defect in the July 2018 models of the 13- and 15-inch MacBook Pro by using a cable that was two
millimeters longer than in the previous models.  *Id.* ¶ 30.[2]  According to Plaintiffs, these 2018
models suffer from the same Alleged Defect as earlier models.  *Id.* ¶¶ 69-73.  Thus, Plaintiffs
theory is not that the cables in their devices are two millimeters too short, rather, they specifically
allege that the two-millimeter increase in 2018 failed to cure the Alleged Defect.

        Next, Apple argues that five of the named Plaintiffs' alleged injuries are not traceable to
the Defect because the types of display issues that they experienced are not "symptom[s] that [are]
the subject of the Apple 13-inch MacBook Pro Display Backlight Service Program."  Mot. at 9;
(citing Dkt. No. 33-1, Supplemental Declaration of Jeffrey LaBerge In Support of Apple's Motion
to Dismiss Second Amended Complaint ("LaBerge Decl."), ¶ 6.  Specifically, Apple argues that
the "vertical pink lines" that Plaintiffs Fielding, Knutson, and Hayes experienced are not
attributable to the Alleged Defect.  S*ee* SAC ¶¶ 41, 56, 61.  It argues that the image of Plaintiff
Taleshpour's display in the SAC similarly illustrates an issue unrelated to the Alleged Defect.  S*ee
id.* ¶¶ 20-22.  Finally, Apple argues that according to its internal records, Plaintiff Buscher
experienced "flickering violet light," not the stage lighting effect as he alleged in the SAC.

        This argument fails for several reasons.  First, the LaBerge Declaration on which Apple

---

[2] Apple argues that this allegation should be disregarded because it is contrary to Plaintiffs'
allegations in the original complaint, but for the reasons stated above, the Court does not find this
argument compelling.

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    relies does not reference or attach any evidence to support Mr. LaBerge's conclusions about what

2    symptoms the Alleged Defect does or does not cause.  Mr. LaBerge declares that the symptoms

3    certain Plaintiffs experienced are "not traceable to the backlight issue that is the subject of the 13-

4    inch MacBook Pro Display Backlight Service Program," without offering any reason, evidence, or

5    explanation for that legal conclusion.  LaBerge Decl. ¶ 7.  Without more, the Court is not

6    persuaded that Plaintiffs injury is not traceable to Apple's alleged conduct.

7         Second, Mr. LaBerge draws the conclusion that Plaintiffs Taleshpour and Buscher did not

8    experience the relevant symptom (the stage lighting effect) based on the fact that each Plaintiff *did*

9    experience other symptoms, which Mr. LaBerge concludes are unrelated to the defect.  Plaintiffs

10   specifically allege that both Mr. Taleshpour and Mr. Buscher experienced the stage lighting effect.

11   SAC ¶¶ 35, 51.  The fact that Plaintiffs may have experienced "more severe display backlighting

12   system failures," as illustrated by the photographs in the SAC, does not mean that those Plaintiffs

13   did not also experience the stage lighting effect as they alleged.  Plaintiffs need not have included

14   in the SAC photographic evidence of every display issue they faced, nor do the photographs that

15   are included limit the allegations Plaintiffs may raise about other symptoms.  Similarly, the fact

16   that Mr. Buscher did not report experiencing the stage lighting symptom to Apple does not justify

17   Mr. LaBerge's conclusion that Mr. Buscher simply did not experience the stage lighting symptom.

18   Plaintiffs need not have reported every issue they faced to Apple, and therefore, Apple's internal

19   records do not provide a complete or accurate history of each Plaintiff's experience.

20        Even assuming that Mr. LaBerge's conclusions about Plaintiffs' issues are true, those

21   conclusions are not dispositive of Plaintiffs' standing.  Relying on Mr. Laberge, Apple asserts only

22   that the symptoms Plaintiffs experienced are not symptoms that were associated with the

23   recognized defect in the 13-inch 2016 MacBook Pros.  But, as Apple itself points out, none of the

24   Plaintiffs own a 13-inch 2016 MacBook Pro.  Nor do their allegations that the Alleged Defect in

25   their devices is "substantially similar" to that model suggest that their claims should be limited to

26   the defect that Apple has recognized in that model or the symptoms that Apple has identified as

27   caused by that defect.  Plaintiffs allege that the display cables in their devices are too short, which

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
10

*United States District Court*
*Northern District of California*

1    caused any number of display issues.  Whether Plaintiffs, with the benefit of discovery, will

2    ultimately be able to prove that the Alleged Defect caused the problems they experienced is a

3    purely merits-based question.  The Court declines to decide the merits of Plaintiffs' claims within

4    the context of a standing inquiry.  *See Safe Air for Everyone*, 373 F.3d at 1040 (holding that "[t]he

5    district court erred in characterizing its dismissal of Safe Air's complaint under Rule 12(b)(1)

6    because the jurisdictional issue and substantive issues in this case are so intertwined that the

7    question of jurisdiction is dependent on the resolution of factual issues going to the merits.").

8         Finally, every one of the Plaintiffs alleged that their display backlighting system eventually

9    failed completely or otherwise became "inoperable."  *See, e.g.*, SAC ¶¶ 37, 41, 46, 52, 57, 62, 66,

10   72, 77.  As Mr. LaBerge acknowledged, the 13-inch MacBook Pro Display Backlight Service

11   Program covered 13-inch 2016 models that experienced "stage lighting effect *or a total failure of*

12   *the display*."  LaBerge Decl. ¶ 3 (emphasis added).  Thus, even if the symptoms covered by the

13   13-inch MacBook Pro Display Backlight Service Program were relevant evidence of causation in

14   this case, Plaintiffs all experienced at least one symptom—failure of the display—that is covered

15   by the service program.

16        The Court finds that Plaintiffs' alleged injuries are fairly traceable to Apple's alleged

17   conduct in this case.

18                              **iii.   Redressability**

19        Apple does not challenge this element of standing.  Plaintiffs allege various economic

20   injuries, including that they overpaid for their devices and that they incurred costs to repair or

21   replace their devices.  The Court finds that these alleged injuries, which are purely economic in

22   nature, are capable of being redressed by a favorable judicial decision in this case.  Thus, Plaintiffs

23   have established standing to bring their claims.

24                              **B.   Fraud-based Claims**

25                              **i.   Rule 9(b)**

26        Consumer-protection claims that sound in fraud are subject to the heightened pleading

27   requirements of Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018).  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  "[I]n a case where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)" while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1104–05.

Apple argues that Plaintiffs' claims for fraudulent concealment, violation of the Song-Beverly Act, and various state deceptive trade act claims, including the UCL and CLRA, are all grounded in fraud.  Plaintiffs do not raise any arguments to the contrary but maintain that the omission-based fraud claims are held to a lesser standard and that generally, Rule 9(b) does not apply to allegations of knowledge and intent.  Opp. at 10, 12.  The Court agrees that the heightened pleading standard under Rule 9(b) applies to Plaintiffs' claims.  The Court also finds that with respect to Plaintiffs' omissions-based fraud claims, "the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a claim involving affirmative misrepresentations.'" *Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2021 WL 827235, at *7 (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)).

### ii.  Allegations of Defect

As an initial matter, Apple argues that Plaintiffs generally failed to allege that their display issues are the result of a defect at all.  Mot. at 14.  Apple relies on *Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558249 (C.D. Cal. Mar. 31, 2014) for the proposition

1    that to plausibly allege a defect, Plaintiffs must allege facts establishing a "substantial certainty"

2    that the MacBook Pros will fail during their useful life due to the Alleged Defect.  *Sims*, 2014 WL

3    12558249, at \*7.  In *Sims* the court considered the plaintiffs' implied warranty of merchantability

4    claim arising out of allegations that the plaintiffs had purchased Kia vehicles with defective gas

5    tanks that caused "at least one accident."  *Id.*  The court explained that a "breach of the implied

6    warranty of merchantability means the product [does] not possess even the most basic degree of

7    fitness for ordinary use." *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 7 Cal.

8    Rptr. 3d 546, 549 (2003)).  The court found that the plaintiffs in *Sims* had failed to adequately

9    allege breach of the implied warranty of merchantability because they did not allege that their gas

10   tanks had exploded or were substantially certain to explode in the future.

11       *Sims* involved an implied warranty claim and the Court is not convinced that the same

12   reasoning should apply to a deceptive trade practice or fraudulent concealment claim, neither of

13   which require proof that a product is unfit for ordinary use.  Because the plaintiff alleging breach

14   of implied warranty of merchantability must prove that their item is unfit for its normal use, that

15   plaintiff must show that either the defect has already manifested or is substantially certain to

16   manifest.  A plaintiff alleging fraudulent trade practices, however, may be injured by an inherent

17   defect at the point of purchase, regardless of when or whether that defect manifests.  *See, e.g.*,

18   *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019) ("Plaintiff's theory is that the

19   defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when and if

20   the defect manifested.").  Thus, it would be inconsistent with established precedent to require a

21   fraudulent trade practices plaintiff to plead that an undisclosed defect is substantially certain to

22   manifest.

23       Moreover, unlike in *Sims*, Plaintiffs in this case all allege that the Alleged Defect did, in

24   fact, manifest in their laptops by causing various display problems.  *See Sloan v. Gen. Motors

25   LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at \*29 (N.D. Cal. Apr. 23, 2020) (finding no

26   need for plaintiffs to prove that a defect was 'substantially certain' to occur, where the plaintiffs

27   experienced the defect); *Victorino v. FCA US LLC*, 326 F.R.D. 282, 291 (S.D. Cal. 2018) (proof

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    "that the product contains an inherent defect which is substantially certain to result in

2    malfunction," is only required "[i]f there is no current malfunction"), *appeal withdrawn*, No. 18-

3    80076, 2019 WL 7187392 (9th Cir. Nov. 21, 2019).  Thus, the Court finds that Plaintiffs have

4    adequately alleged that a defect exists.

### iii.  Affirmative Misrepresentation

6    Plaintiffs allege with respect to each of their fraud claims that Apple committed fraud by

7    making affirmative misrepresentations about the MacBook Pro display.  Apple argues that, to the

8    extent Plaintiffs' fraud claims are based on allegations of Apple's affirmative misrepresentations,

9    Plaintiffs failed to plead those alleged misrepresentations with sufficient particularity under Rule

10   9(b).  Plaintiffs allege that before purchasing their devices, each of them "saw advertisements and

11   marketing materials on [Apple's] website in which [Apple] represented the MacBook had the best

12   display to date."  SAC ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75.   Plaintiffs also allege that Apple

13   described the displays on the relevant MacBook Pro models as the "brightest and most colorful

14   Retina display yet," and Plaintiffs refer to an October 27, 2016 press release in which Apple's

15   senior vice president of world marketing stated that the new MacBook Pros had "the best Mac

16   display ever."  Plaintiff additionally include an example of advertisement for the MacBook Pro

17   display, which likewise refers to the display as the "best Mac display ever," among other things.

18   *Id.* ¶ 16.

19   Apple argues that these allegations "omit virtually all of the detail needed to satisfy Rule

20   9(b)."  Mot. at 12.  The Court disagrees.  The Court finds that Plaintiffs adequately allege the

21   "who" (Apple), the "when" (before Plaintiffs purchased their devices), and the "where" (Apple's

22   website) of the affirmative misrepresentations they allegedly relied on.  Plaintiffs adequately

23   allege that "what" they saw were Apple's "advertisements and marketing materials," and give

24   particular examples of such materials, including the October 2016 press release and an image of

25   Apple's online advertisement related to the display.  *See* SAC ¶ 16, Figure 1.  Together, these

26   allegations are sufficient to give Apple notice of the particular misrepresentations which are

27   alleged to constitute the fraud charged so that they can defend against the charge.  *See United*

United States District Court
Northern District of California

1    *States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).

2          Apple next argues that these alleged affirmative misrepresentations are not actionable

3    because they constitute puffery.  Mot. at 13.  "A challenged claim is non-actionable 'puffery' if it

4    is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not

5    rely."  *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 554–55 (N.D. Cal. 2019) (citing *Rasmussen v.

6    Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014)).  An actionable statement must make a

7    "specific and measurable claim, capable of being proved false or of being reasonably interpreted

8    as a statement of objective fact."  *Id.* (quotation omitted).  Whether a statement is puffery is a

9    question of law that can be properly decided on a motion to dismiss.  *Ahern*, 411 F. Supp 3d at 555

10   (citing *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242 (9th Cir.

11   1990)).

12         The UCL, CLRA, Washington Consumer Protection Act, Florida Deceptive and Unfair

13   Trade Practices Act, New Jersey Consumer Fraud Act, Michigan Consumer Protection Act,

14   Missouri Consumer Protection Act, Massachusetts Unfair and Deceptive Trade Practices Act, and

15   Texas Deceptive Trade Practices Act all recognize that puffery is non-actionable.  *See Baughn v.

16   Honda Motor Co.*, 107 Wash. 2d 127, 727 P.2d 655 (1986) (holding that the television

17   commercials at issue were merely "loose general praise of goods," also known as "sales talk or

18   puffing," and that the misrepresentation claim based upon such advertisements was properly

19   dismissed); *Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1334 (M.D.

20   Fla. 2010) ("industry leading" is classic, non-actionable puffery); *Tatum v. Chrysler Grp. LLC.*,

21   No. 10-CV-4269 DMC JAD, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (Defendant's

22   advertisements, which touted their vehicle as safe, durable, and reliable, "amounted to nothing

23   more than non-actionable hyperbole or puffery"); *Ram Int'l Inc. v. ADT Sec. Servs., Inc.*, 2011 WL

24   5244936, at *8 (E.D. Mich. Nov. 3, 2011) ("a claim for fraud cannot be based on puffery or the

25   expression of an opinion or salesmen's talk in promoting a product or sale"), *aff'd*, 555 F. App'x

26   493 (6th Cir. 2014); *Budach v. NIBCO, Inc.*, No. 2:14-CV-04324, 2015 WL 3853298, at *7 (W.D.

27   Mo. June 22, 2015) (defendant's advertisements that promoted product as "superior quality" and

28

United States District Court
Northern District of California

1    "highest quality" were "subjective advertising slogans constituting non-actionable puffery)"; *Isaac*

2    *v. Ashley Furniture Indus., Inc.*, No. CV 17-11827-RGS, 2017 WL 4684027, at *2 (D. Mass. Oct.

3    18, 2017) (dismissing claim under Massachusetts law because defendant's advertising of leather

4    blended product as "durable" was non-actionable puffery); *Deburro v. Apple, Inc.*, No. A-13-CA-

5    784-SS, 2013 WL 5917665, at *5 (W.D. Tex. Oct. 31, 2013) (finding defendant's statements that

6    product was "state of the art" and "breakthrough" to be insufficient under Texas Deceptive Trade

7    Practices Act because they constituted "mere puffery, incapable of being labeled true of false" ).

8         In *Ahern*, the court considered Apple's statements about its "clear and remarkably vivid"

9    computer screens, which were of the "highest quality" and were "the most advanced, most brilliant

10   desktop display[s]" ever.  *Ahern*, 411 F. Supp. 3d at 555.  The Court found that these statements

11   constituted non-actionable puffery because they did not "say anything about specific chracteristics

12   or components" of the product.  *Id.* (citing *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854

13   (N.D. Cal. 2012) (statements that a laptop delivers "ultra-reliable performance," "full power and

14   performance," "versatile, reliable systems," and were "packed with power" and "delivers the

15   power you need" were not actionable)); *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d

16   1133, 1139 (C.D. Cal. 2005) (statements that line of laptops has the "latest technology" and

17   "outstanding quality, reliability, and performance" were not actionable).  The court went on to find

18   that statements that the screens were the "most advanced" and of the "highest quality" were

19   "boasts, all-but-meaningless superlatives."  *Ahern*, 411 F. Supp. 3d at 556; (quoting *Consumer*

20   *Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361, 8 Cal. Rptr. 3d 22 (2003))).

21        Plaintiffs do not distinguish *Ahern* but argue that Apple's statements in this case are not

22   mere puffery "when viewed in the context of Apple's promotional campaign for the MacBook

23   Pros, which stressed that the new display screens are the best in the computer industry."  Opp. at

24   15.  Plaintiffs cite to *Beyer v. Symantec Corporation*, in which the court found Symantec's

25   statement that its software was "industry leading" to be actionable.  *Beyer v. Symantec Corp.*, 333

26   F. Supp. 3d 966, 977 (N.D. Cal. 2018).  The court in that case explained that "'industry-leading'

27   could lead a reasonable consumer to believe that Symantec software would adhere to industry best

28

United States District Court
Northern District of California

1

practices," especially where the alleged defect violated Symantec's express cybersecurity best-

2

practice guidelines.  Unlike in *Beyer*, the statement in this case that the MacBook Pro display is

3

"the best Mac display ever" does not imply Apple's adherence to industry best practices, and in

4

fact, only compares the display to other Macs, not to the industry at large.

5

Thus, the Court finds Apple's statements that the laptops are "revolutionary,"

6

"groundbreaking," offer "breakthrough performance," and contain "the best Mac display ever" to

7

be subjective, immeasurable assertions constituting non-actionable puffery because they say

8

nothing about the specific characteristics or components of the computer.  *See Sims*, 2014 WL

9

12558249, at *6 ("While 'misdescriptions of specific or absolute characteristics of a product are

10

actionable,' '[a]dvertising which merely states in general terms that one product is superior is not

11

actionable.'") (quoting *Cook, Perkiss and Liehe, Inc.*, 911 F.2d at 246);

United States District Court
Northern District of California

12

The only actionable statements Plaintiffs allege are from the 2016 MacBook Pro

13

advertisement cited in the SAC, which states that the display is 0.88 millimeters thick, operates at

14

"500 nits of brightness," "is an amazing 67 percent brighter than the previous generation, features

15

67 percent more contrast and is the first Mac notebook display to support wider color gamut."

16

SAC ¶ 16, fig. 1.  These more specific statements about the objective characteristics of the devices

17

are actionable because they are capable of being proven false.  While these statements may be

18

actionable in theory, Plaintiffs do not allege that they are false.  Plaintiffs' theory is that the

19

backlight cables connecting the lighting mechanism and the display screen are too short, which

20

causes them to tear prematurely, which in turn causes display problems and failure.  Nothing about

21

this Alleged Defect relates to the thickness, brightness, or color gamut of the MacBook display

22

touted in the quoted advertisement.  Because Plaintiffs do not allege that the statements in the

23

advertisements are false or that they would lead a reasonable consumer to draw inaccurate

24

conclusions about the reliability or useful life of the display, the Court finds that these statements

25

are not affirmative misrepresentations sufficient to support Plaintiffs' fraud claims.

26

The Court GRANTS without prejudice Apple's Motion to Dismiss Plaintiffs' fraud claims

27

to the extent they are based on affirmative misrepresentations.

28

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

#### iv.   Fraud By Omission

Plaintiffs' fraudulent concealment, Song-Beverly Act, and various Deceptive Trade Practice Claims all stem from the contention that Apple failed to disclose the Alleged Defect in the MacBook Pros.  "To state a claim for fraudulent omission, the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1175 (N.D. Cal. 2019) (internal citation omitted) (emphasis added).  "When a defect does not relate to an unreasonable safety hazard, a defendant has a duty to disclose when (1) the omission is material; (2) the defect is central to the product's function; and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial representations that are misleading because some other material fact has not been disclosed."  *Id.* at 1176.

Plaintiffs argue that Apple's failure to disclose the Alleged Defect was material because a reasonable consumer would have found information about the Alleged Defect important when choosing to purchase a laptop.  "A non-disclosed fact is material if the omitted information would cause a reasonable consumer to behave differently if he or she was aware of it."  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1114 (N.D. Cal. 2015) (internal quotation and citation omitted); *see also Beyer*, 333 F. Supp. 3d at 978 ("Materiality usually is a question of fact that should be left to the jury unless the statement at issue is obviously unimportant") (simplified).  Accepting as true that the Alleged Defect will eventually cause all class members' laptop displays to fail (SAC ¶ 136), as the Court must at the pleadings stage, the Court finds that the omitted information about the Alleged Defect would certainly be important to a reasonable consumer and is, therefore, material.

Plaintiffs next argue that the Alleged Defect is central to the laptops' functioning.  A defect is central to a product's function when it "renders those products incapable of use by any consumer."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018).  Plaintiffs all assert that the

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Alleged Defect caused display issues that impaired their use of the laptop and eventually rendered their laptops inoperable.  SAC ¶¶ 37, 41, 46, 52, 57, 62, 66, 72, 77.  Plaintiffs allege the defect significantly impairs the screen's quality and functionality because a "display screen with stage lighting, chunks of color that obscures other text and images, and that eventually goes dark . . . render[s] laptops unusable and unfit for the ordinary purposes for which a laptop computer is used."  *Id.* at ¶ 22.  The Court agrees.  In *Hodsdon*, the court recognized that "[a] computer chip that corrupts the hard drive, or a laptop screen that goes dark, renders those products incapable of use by any consumer."  *Hodsdon*, 891 F.3d at 864.  The same is true in this case—the display is indisputably central to the functionality of a laptop, and a defect that obscures all of party the display renders the laptop unusable.  *See In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2019 WL 1765817, at *6 (N.D. Cal. Apr. 22, 2019) (finding that an alleged keyboard defect affecting some but not all keys was central to the laptop's function because of the importance of the keyboard to the normal purpose of a laptop).

Plaintiffs argue that Apple had a duty to disclose because it had exclusive knowledge of the Alleged Defect.  Plaintiffs point to their allegations that Apple "is aware, and has been aware, of the defect in its backlight ribbon display cables" because it "received complaints from numerous consumers about the display lighting effect and the failure of the display" and because "intensive pre-release testing would have alerted [Apple] to the tearing and ultimate failure of the backlight ribbon cables."  SAC ¶¶ 28-29; *see also id.* ¶ 111 (Apple "was under a duty to disclose that the MacBook Pros were defective because it knew of the defect—through research, consumer complaints, and pre-release testing").  Apple argues that these allegations are insufficient to show that Apple knew of the defect at the time of Plaintiffs' purchases, let alone that it had exclusive knowledge.  Mot. at 18.  Apple points out that each of the consumer complaints excerpted in the SAC were posted after all of the named Plaintiffs purchased their laptops.  *Id.* at 16.  But Plaintiffs allege that the comments excerpted in the SAC are a "small sampling" of the tens of thousands of comments and reports related to the stage lighting effect or display failure in the relevant MacBook Pros.  SAC ¶ 81.

United States District Court
Northern District of California

1       Plaintiffs further allege that Apple deleted similar customer complaints from discussion

2  forums on the Apple website.  *Id.* ¶ 82.  Apple argues this allegation is insufficient to show active

3  concealment, but this argument misses the point.  If Apple deleted comments on its website from

4  consumers complaining about display issues attributable to the Alleged Defect, that suggests that

5  Apple had knowledge of the Alleged Defect, superior to that of Plaintiffs or potential class

6  members.  *See In re MacBook Keyboard Litigation*, 2019 WL 1765817, at *7 ("exclusivity is

7  analyzed in part by examining whether the defendant had 'superior' knowledge of the

8  defect.") (quoting *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D.

9  Cal. 2012)).

10      Apple also argues that pre-release testing alone is not enough to establish knowledge of a

11  defect.  Mot. at 17.  Apple relies in part on *Burdt v. Whirlpool Corp.*, No. C 15-01563 JSW, 2015

12  WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015).  In *Burdt,* the Court concluded that "Plaintiff must

13  allege more than an undetailed assertion that the testing must have revealed the alleged defect" in

14  order to establish exclusive knowledge.  *Id.* at *4.  In this case, Plaintiffs allege several additional

15  details about the pre-release testing that the plaintiffs in *Burdt* lacked.  For example, Plaintiffs

16  allege that the pre-release testing was done by a team of "Reliability Engineers" who specifically

17  executed "reliability tests on [Apple] technologies such as stress tests," and developed "new test

18  procedures to quantify the reliability of a design, and failure analysis resulting from these tests."

19  SAC ¶ 29.  These allegations about who conducted the tests, what type of tests were done, and

20  what type of results analysis was performed support Plaintiffs conclusion that "this intensive pre-

21  release testing would have alerted APPLE to the tearing and ultimate failure of the backlight

22  ribbon cables."  *Id.*  The Court finds that the allegations of pre-release testing in combination with

23  the allegations of substantial customer complaints are sufficient to show that Apple had exclusive

24  knowledge of the Alleged Defect.

25      Finally, to sufficiently plead reliance on a fraudulent omission, a plaintiff must show that

26  "had the omitted information been disclosed, one would have been aware of it and behaved

27  differently."  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation

28  Case No.: 5:20-cv-03122-EJD

marks and citation omitted).  Additionally, "[i]f an omission is material, the fact that one would have behaved differently can be presumed, or at least inferred." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017), *aff'd,* 731 F. App'x 719 (9th Cir. 2018) (internal quotation marks and citation omitted).  Plaintiffs in this case allege that they visited the Apple website prior to purchasing or becoming owners of their laptops.  SAC at ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75; *see Beyer*, 333 F. Supp. 3d at 981 (holding plaintiff's allegation that he "reviewed the product page" was sufficient to show reliance under Rule 9(b)).  Plaintiffs further allege that had they known about the Alleged Defect, they would not have purchased their laptops or would not have paid the price they paid.  *Id.* at ¶ 102.  The Court finds these allegations sufficient to demonstrate reliance.  *In re MacBook Keyboard Litigation*, 2019 WL 1765817, at *7 (finding reliance where plaintiffs alleged that they "visited a specific Apple website prior to purchasing their laptop," "were unaware of the alleged defect at the time of purchase," and "would not have purchased the laptops, or would not have paid the price that they did, had they known that the keyboards did not have an allegedly material defect.").

Because Plaintiffs have adequately alleged that Apple omitted material information that it was under a duty to disclose and on which Plaintiffs would have relied, the Court finds that Plaintiffs have sufficiently alleged their omission-based fraud claims.  The Court DENIES Apple's Motion as to the omission-based Deceptive Trade Practice Claims and fraudulent concealment claim.

### C.  Implied Warranty Claims

Plaintiffs allege that Apple breached the implied warranty of merchantability under Alaska, Florida, Massachusetts, Michigan, Missouri, New Jersey, Texas, and Washington law (Counts 6, 8, 10, 12, 14, 16, 18, and 20) (collectively, the "Implied Warranty" claims).  Apple argues that these claims fail because Apple effectively disclaimed all implied warranties, or alternatively, limited their duration to one year.

Sellers in each of the relevant states in this case may modify or exclude the implied warranty of merchantability with a conspicuous disclaimer.  *See, e.g.*, *Priano-Keyser v. Apple,*

United States District Court
Northern District of California

*Inc.*, No. CV1909162KMMAH, 2019 WL 7288941, at *9 (D.N.J. Dec. 30, 2019) (finding Apple's disclaimer of implied warranties sufficiently conspicuous where it was "printed in capital letters near the beginning of the Limited Warranty"); *Deburro*, 2013 WL 5917665, at *6 (finding the Limited Warranty at issue in present case to be conspicuous and dismissing plaintiffs' breach of implied warranty claims).

Apple's Limited Warranty states in clear language that Apple disclaims all implied warranties, including "WARRANTIES OF MERCHANTABILITY" (capital letters in original).[3] *See* Dkt. No. 33-5, Declaration of David. R. Singh ("Singh Decl."), Exs. A, B ("Limited Warranty"). The section heading, "WARRANTY LIMITATIONS SUBJECT TO CONSUMER LAW," is in all capital letters and underlined, and the disclaimer language appears near the top of the warranty. *Id.* Despite the formatting and prominent placement, Plaintiffs argue that the disclaimer is not conspicuous because it is surrounded by text that is also in all-capital letters. The Court disagrees. The fact that the Limited Warranty highlights multiple (but not all) provisions using as all-capital letters and underlining does not detract from the attention-grabbing effect of those techniques. The Court finds these characteristics make the disclaimer conspicuous, such that Apple effectively disclaimed or limited all implied warranties.

Because the Plaintiffs do not dispute the accuracy of the Limited Warranty and because the Limited Warranty effectively prevents Plaintiffs from bringing implied warranty claims, the Court GRANTS the Motion in relevant part and dismisses the Implied Warranty Claims with prejudice.

### D. Song-Beverly Act Claim

The Song–Beverly Act provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty

---

[3] Plaintiffs did not attach any version of the Limited Warranty to the SAC, however, their claims rely on the terms of the Limited Warranty. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); Fed. R. Evid. 201. Plaintiffs have also not objected to consideration of the Limited Warranty. The Court therefore finds that the Limited Warrant is properly considered in ruling on this Motion.

United States District Court
Northern District of California

1     that the goods are merchantable."  Cal. Civ. Code § 1792.  "To state a viable claim under

2     California's Song-Beverly Consumer Warranty Act, a plaintiff must plead sufficiently a breach of

3     warranty under California law."  *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209,

4     at *3 (N.D. Cal. Feb. 10, 2011); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009).

5          Generally, the warranty of merchantability ensures that goods are fit "for the ordinary

6     purpose for which such goods are used."  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303,

7     95 Cal. Rptr. 3d 285 (2009) (internal quotations omitted).  The "mere manifestation of a defect by

8     itself does not constitute a breach [of] the implied warranty of merchantability."  *Stearns v. Select*

9     *Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009); *see*

10    *also Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1295, 44 Cal. Rptr. 2d 526

11    (1995), *as modified on denial of reh'g* (Sept. 21, 1995).  "A plaintiff who claims a breach of the

12    implied warranty of merchantability must show that the product 'did not possess even the most

13    basic degree of fitness for ordinary use.'"  *Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-

14    CV-04402-WHO, 2014 WL 3934000, at *1 (N.D. Cal. Aug. 11, 2014).

15         Plaintiff Taleshpour alleges that he has sufficiently stated a Song-Beverly claim because he

16    alleges that his MacBook contains a defect that renders the laptop unfit for ordinary purposes.

17    Specifically, he alleges that "the display backlighting system stops working entirely which

18    prevents the MacBook Pro from being used for its core function, as a display screen with defects

19    that severely affects its users' ability to clearly view text and images on the monitors, and that

20    eventually goes dark, rendering the laptop incapable of use by any consumer."  SAC at ¶ 136.

21    Apple argues that Mr. Taleshpour admits that he used his MacBook for nearly three years,

22    including for two months after the defect first manifested. *Id.* ¶¶ 33-36.  Thus, Apple argues that

23    the Alleged Defect did not render the laptop unfit for "even the most basic degree" of ordinary

24    use. *Swearingen*, 2014 WL 3934000, at *1.  The Court agrees.  While the display issues Mr.

25    Taleshpour faced were certainly disruptive to his use, the fact that he continued to use his device

26    for some time after the symptoms began indicates that the device was still fit for basic use.

27         Moreover, as discussed in part III(b)(ii) above, a plaintiff alleging breach of an implied

28    Case No.: 5:20-cv-03122-EJD
      ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
                                        23

United States District Court
Northern District of California

warranty on the basis that a latent defect exists must show that the defect is "substantially certain to result in malfunction during the useful life of the product." *Daniel*, 806 F.3d at 1223 (quoting *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 107 Cal. Rptr. 2d 761, 768 (2001), *as modified on denial of reh'g* (July 3, 2001)); *see also Sims*, 2014 WL 12558249, at *7 (same). Plaintiffs in this case alleged that the Alleged Defect did, in fact, manifest in their laptops; however, they failed to include any allegations indicating that at the time of sale, the Alleged Defect was substantially certain to manifest.  In other words, Plaintiffs have not alleged that to the extent the Alleged Defect is latent in the relevant MacBook Pros, it is substantially certain to manifest such that the laptop is rendered unmerchantable.

The Court, therefore, GRANTS the Motion as to Plaintiffs' Song-Berverly Act claim with prejudice.

### E.  Other UCL Claims

#### i.  The "Unfair" UCL Claim

"Under the unfairness prong of the UCL, a practice may be deemed unfair even if not specifically proscribed by some other law."  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1115 (internal citation omitted).  California courts have developed at least two tests for "unfairness" within the meaning of the UCL: "(1) the tethering test, which requires that the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions" and "(2) the balancing test, which examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013).

Plaintiff Taleshpour argues that he states a claim under the tethering test because he alleges that Apple violated a California public policy of "requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes."  Opp. at 17; SAC ¶ 93.  In other words, he argues that Apple's conduct violated the public policy legislatively declared in the

United States District Court
Northern District of California

1    CLRA and Song-Beverly Act.  For the reasons state above, however, the Court finds that Plaintiff

2    has not stated a claim under either law and therefore has not alleged any violation of public policy.

3           Under the balancing test, an act or practice is "unfair" if "'the consumer injury is

4    substantial, is not outweighed by any countervailing benefits to consumers or to competition, and

5    is not an injury the consumers themselves could have reasonably avoided.'"  *Tietsworth v. Sears*,

6    720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010).  This test typically requires a fact intensive inquiry,

7    not conducive to resolution at the motion to dismiss phase.  *See In re MacBook Keyboard*

8    *Litigation*, 2019 WL 1765817, at *9.  Apple argues, however, that Plaintiffs fail to allege a

9    substantial injury because "[f]ailure to disclose a defect that might shorten the effective life span

10   of component part to a consumer product does not constitute a 'substantial injury' under the unfair

11   practices prong of the UCL where the product functions as warranted throughout the term of its

12   Express Warranty."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*

13   *Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010); *see Clemens v. DaimlerChrysler*

14   *Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008).  Plaintiffs do not directly address this authority,

15   but rather, argue that Mr. Taleshpour experienced a substantial injury because Apple breached the

16   implied warranty of merchantability.  As discussed above, the Court finds that Plaintiffs failed to

17   adequately allege an implied warranty of merchantability claim.  Therefore, the Court finds that

18   Plaintiff Taleshpour failed to allege "unfairness" under either the tethering test or the balancing

19   test.

20          The Motion is GRANTED without prejudice as to Plaintiff Taleshpour's claim under the

21   unfair prong of the UCL.

22                          **ii.   The "Unlawful" UCL Claim**

23          Plaintiffs' claims under the unlawful prong of the UCL are based on their claims under the

24   CLRA and the Song-Beverly Consumer Warranty Act.  SAC ¶ 92.  Because Plaintiffs failed to

25   state viable claims under those laws, they have also "failed to state a claim under the 'unlawful'

26   prong of the UCL."  *In re MacBook Keyboard Litigation*, 2019 WL 1765817, at *8–9 (citing

27   *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *7 (N.D. Cal. Aug. 30,

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

2011).

The Motion is GRANTED without prejudice as to Plaintiff Taleshpour's claim under the unlawful prong of the UCL.

### IV.    Conclusion

For the reasons stated above, Apple's Motion is GRANTED in part and DENIED in part. The Court finds that Plaintiffs have standing and have adequately stated their Deceptive Trade Practice Claims (Counts 5, 7, 9, 11, 13, 15, 17, and 19) and fraudulent concealment claim (Count 3) to the extent those claims are based on alleged omissions.  The Court finds that Plaintiffs failed to adequately allege their Deceptive Trade Practice Claims and fraudulent concealment claim to the extent those claims are based on affirmative misrepresentations and **DISMISSES** those claims with leave to amend.  The Court otherwise **GRANTS** the Motion and **DISMISSES** Plaintiffs' remaining claims with prejudice.

Plaintiffs shall file an amended complaint, if any, by no later than April 16, 2021.

**IT IS SO ORDERED.**

Dated: March 30, 2021

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California