1   DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
2   ANNE CAPPELLA (Bar No. 181402)
anne.cappella@weil.com
3   WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
4   Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
5   Facsimile: (650) 802-3100

6

7   Attorneys for Defendant APPLE INC.

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12   MAHAN TALESHPOUR, RORY FIELDING,
PETER ODOGWU, WADE BUSCHER,
13   GREGORY KNUTSON, DARIEN HAYES,
LIAM STEWART, NATHAN COMBS, and
14   KENDALL BARDIN on behalf of themselves
and all members of the putative class,

15

16         Plaintiffs,

v.

17

18   APPLE INC.,

19         Defendant.

Case No. 5:20-cv-03122-EJD

**DEFENDANT APPLE INC.'S NOTICE OF
MOTION AND MOTION TO DISMISS
THIRD AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Date:   July 22, 2021
Time:  9:00 a.m.
Dept.:  Courtroom 4 – 5th Floor
Judge:  Honorable Edward J. Davila

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 22, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila in Courtroom 4 – 5th Floor, located at the Robert F. Peckman Federal Building, 280 South First Street, Fourth Floor, San Jose, California, Defendant Apple Inc. ("**Apple**") will and hereby does move to dismiss Plaintiff Mahan Taleshpour, Rory Fielding, Peter Odogwu, Wade Buscher, Gregory Knutson, Darien Hayes, Liam Stewart, Nathan Combs, and Kendall Bardin's (collectively, "**Plaintiffs**") California Unfair Competition Law (Count 1), California Consumer Legal Remedies Act (Count 2), fraudulent concealment (Count 3), Washington Consumer Protection Act (Count 4), Florida Deceptive and Unfair Trade Practices Act (Count 5), New Jersey Consumer Fraud Act (Count 6), Michigan Consumer Protection Act (Count 7), Alaska Unfair Trade Practices and Consumer Protection Act (Count 8), Missouri Consumer Protection Act (Count 9), Massachusetts Unfair and Deceptive Trade Practices Act (Count 10), Texas Deceptive Trade Practices Act (Count 11) claims pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all other pleadings and papers on file herein, and such other argument and evidence as may be presented to the Court.

Dated: April 30, 2021                                      Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP


By:  _/s/ David R. Singh_
          DAVID R. SINGH

Attorney for Defendant APPLE INC.

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................2

III.   LEGAL STANDARD............................................................................................5

     A.    Rule 8(a)....................................................................................................5

     B.    Rule 9(b) ...................................................................................................6

IV.    PLAINTIFFS DO NOT ALLEGE ANY ACTIONABLE FRAUD BASED CLAIMS...6

     A.    Plaintiffs Do Not Allege Any Actionable Affirmative Misrepresentations.........6

     B.    Plaintiffs Do Not Allege Any Actionable Omissions .........................................12

V.     PLAINTIFFS DO NOT ALLEGE AN ACTIONABLE UCL CLAIM..........................17

     A.    Plaintiff Taleshpour's "Unfair" UCL Claim Is Not Sufficiently Plead ..............17

     B.    Plaintiff Taleshpour's "Unlawful" UCL Claim Is Not Sufficiently Plead .........18

VI.    PLAINTIFF LIAM STEWART DOES NOT ALLEGE AN ACTIONABLE NEW JERSEY CONSUMER FRAUD ACT CLAIM............................................................19

VII.   PLAINTIFFS' DEMANDS FOR EQUITABLE RELIEF SHOULD BE DISMISSED 20

VIII.  CONCLUSION.......................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ................................................................................................ 6

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................................................................... 8

*In re Apple Inc. Device Performance Litig.*,
    347 F.Supp.3d 434 (N.D. Cal. 2018) (Davila, J.) ................................................................ 16

*In re Apple Inc. Device Performance Litigation*,
    386 F.Supp.3d 1155 (N.D. Cal. 2019) (Davila, J.) ................................................ 11, 13, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 5

*Azadpour v. Sun Microsys., Inc.*,
    2007 WL 2141079 (N.D. Cal. July 23, 2017) ...................................................................... 11

*Bardin v. Daimlerchrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) ............................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 5

*Berenblat v. Apple, Inc.*,
    2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ....................................................................... 9

*Clemens v. DaimlerChrysler*,
    534 F.3d 1017 (9th Cir. 2008) .............................................................................................. 18

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) ............................................................................................... 14

*Cook, Perkins and Liehe, Inc. v. N. California Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) .................................................................................................. 7

*Cormier v. Carrier Corp.*,
    2018 WL 5304788 (C.D. Cal. Oct. 22, 2018) ...................................................................... 12

*Dakin v. BMW of North America, LLC*,
    2019 WL 5788324 (S.D. Cal. Nov. 6, 2019) ........................................................................ 18

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) .............................................................................................. 15

*Daugherty v. Am. Honda. Motor Co.*,
  144 Cal. App. 4th 824 (2006) ........................................................................... 13, 14, 18

*Davidson v. Apple Inc.*,
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ................................................................. 6

*Dawson v. General Motors LLC*,
  2019 WL 3283046 (D.N.J. July 22, 2019) ................................................................... 19

*Decker v. Hewlett Packard Co.*,
  2009 WL 10695728 (N.D. Cal. June 19, 2009) ........................................................... 15

*Donahue v. Apple Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................ 12

*Duffy v. Samsung Elecs. Am., Inc.*,
  2007 WL 703197 (D.N.J. Mar. 2, 2007) ........................................................... 13, 19, 20

*Elias v. Hewlett-Packard Co.*,
  903 F.Supp.2d 843 (N.D. Cal. 2012) .......................................................................... 15

*Elias v. Hewlett-Packard, Co.*,
  950 F.Supp.2d 1123 (N.D. Cal. 2013) ........................................................... 6, 8, 15, 19

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) (per curiam) .................................................................. 6

*In re Ford Motor Co.*,
  483 F.Supp.3d 838 (C.D. Cal. 2020) .......................................................................... 17

*Frenzel v. Aliphcom*,
  2015 WL 4110811 (N.D. Cal. July 7, 2015) .................................................................. 9

*Gaxiola v. City of Los Angeles*,
  2011 U.S. Dist. LEXIS 112958 (C.D. Cal. Aug. 30, 2011) ........................................... 11

*Hall v. SeaWorld Entm't Inc.*,
  2016 WL 4595948 (S.D. Cal. May 13, 2016) .............................................................. 12

*Hash v. Giacomazzi*,
  2021, U.S. Dist. LEXIS 56127 (N.D. Cal. Mar. 23, 2021) (Davila, J.) ............................. 12

*Herskowitz v. Apple Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) ...................................................................... 18

*Hodson v. Mars, Inc.*,
  891 F.3d (9th Cir. 2018) ............................................................................................ 15

*Hoey v. Sony Electronics Inc.*,
  515 F.Supp.2d 1099 (N.D. Cal. 2007) .................................................................. 12, 16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................................................ 6

*Kirsopp v. Yamaha Motor Co. Ltd.*,
    2015 WL 11197829 (C.D. Cal. Jan. 7, 2015) ...................................................................... 11

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................................ 3

*Long v. Hewlett-Packard Co.*,
    2007 WL 2994812 (N.D. Cal. July 27, 2007) ...................................................................... 16

*In re MacBook Keyboard Litig.*,
    2019 WL 1765817 (N.D. Cal. April 22, 2019) (Davila, J.) ................................................ 16

*In re MacBook Keyboard Litig.*,
    2020 WL 604723 (N.D. Cal. Oct. 13, 2020) (Davila, J.)......................................... 2, 20, 21

*Marcus v. Apple Inc.*,
    2015 WL 151489 (N.D. Cal. Jan. 8, 2015) .......................................................................... 15

*Moore v. Apple Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) .............................................................................. 6, 19

*Nobile v. Ford Motor Co.*,
    2011 WL 900119 (D.N.J. Oct. 1, 2012) ............................................................................... 20

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ............ 15

*Priano-Keyser v. Apple, Inc.*,
    2019 WL 7288941 (D.N.J. Dec. 30, 2019) .......................................................................... 20

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................................................. 15

*Rudd v. Borders, Inc.*,
    2009 WL 4282013 (S.D. Cal. Nov. 25, 2009) ..................................................................... 19

*Satre v. Wells Fargo Bank, N.A.*,
    2014 WL 12921393 (N.D. Cal. Sept. 16, 2014) .................................................................. 11

*Sciacca v. Apple Inc.*,
    362 F.Supp.3d 787 (N.D. Cal. 2019) ..................................................................................... 9

*Sonner v. Premier Nutrition Corp.*
    971 F.3d 834 (9th Cir. 2020) ............................................................................................ 2, 20

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HD TV Television*
    *Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................................. 9, 17, 18

*Stansfield v. Starkey*,
    220 Cal. App. 3d 59 (1990) ........................................................................................ 9

*Tomasella v. Nestle USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) ...................................................................................... 13

*Vitt v. Apple Computer Inc.*,
    469 Fed. Appx. 605 (9th Cir. 2012) ........................................................................ 14

*Wash v. Major Motors Cars, Inc.*,
    2020 WL 5440555 (C.D. Cal. July 27, 2020) ........................................................ 18

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................................. 15

*Wilson v. Hewlett Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................. 6, 11, 14, 15

*Wilson v. Hewlett-Packard Co.*,
    2009 WL 3021240 (N.D. Cal. Sept. 17, 2009) ....................................................... 15

**Statutes**

AS § 45.50.545 ............................................................................................................ 7, 13

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 5

Fed. R. Civ. P. 9(b) ........................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 5, 11

Fed. R. Evid. 201 .............................................................................................................. 4

APPLE'S MOTION TO DISMISS THIRD AMENDED
COMPLAINT
    v
    CASE NO. 5:20-CV-03122-EJD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3     Plaintiffs have had *four* chances to state a claim, but have failed to do so.  Plaintiffs cannot avoid

4     the fact that (1) Apple provides a one-year limited warranty on the MacBook Pro and (2) Plaintiffs'

5     MacBook Pros performed without issue during and beyond this one-year limited warranty.  Plaintiffs'

6     claims are all thus an improper attempt to evade the durational limit in Apple's limited warranty and

7     they should be dismissed for multiple reasons.

8     First, Plaintiffs' omission claims, which are predicated on the allegation that manifestation of an

9     alleged defect in a backlight ribbon cable renders the MacBook Pro incapable of its intended use fails as

10    a matter of controlling Ninth Circuit law because, absent an unreasonable safety hazard, an alleged defect

11    manifesting after a product's limited warranty is not material (or limited warranties would be

12    meaningless).

13    Second, as the Court previously determined, all but a handful of purported affirmative

14    misrepresentations are insufficiently specific and measureable to be actionable, and the statements that

15    are specific and measureable are not false because Plaintiffs do not allege that the MacBook Pro display

16    was not as represented at the time of sale and they identify no representations by Apple about the

17    reliability of the MacBook Pro display or ribbon cable component.  Further, Plaintiffs' newly minted

18    allegation that Apple represents that the MacBook Pros will last a "minimum of four years" is based on

19    a brazen mischaracterization of Apple's response to an FAQ about its environmental initiatives.  Apple

20    stated only that it *modeled* the life of the MacBook Pros at four years for purposes of a specific

21    assessment calculating the carbon footprint of its products, not that it guarantees that MacBook Pros will

22    not require repair before four years.

23    Third, Plaintiff Taleshpour has not cured the deficiencies specific to his Unfair Competition Law

24    claims.  His claim under the "unfair" prong fails under either the tethering or balancing test.  Plaintiff

25    Taleshpour cannot state a claim under the tethering test because, while he attempts to tether his claim to

26    the public policy that a product should fulfill its ordinary purpose, the Court already rejected the

27    argument that his MacBook Pro, which he used for nearly three years, lacked even the most basic degree

28    of fitness for ordinary use.  Plaintiff Taleshpour cannot state a claim under the balancing test because,

under well settled California law, the failure of a product outside of its warranty period is not a "substantial injury."  Plaintiff Taleshpour's claim under the "unlawful" prong fails with his predicate Consumer Legal Remedies Act claim, as the Court previously found.

<u>Fourth</u>, Plaintiff Stewart has not stated an actionable New Jersey Consumer Fraud Act claim for the additional reasons that he has not plead facts establishing any unlawful conduct by Apple because he has not alleged facts showing that, when he bought his MacBook Pro in 2017, Apple knew with certainty that it would fail, and the alleged failure of a product after its warranty is not an ascertainable loss under the New Jersey Consumer Fraud Act.

<u>Finally</u>, pursuant to the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.* 971 F.3d 834 (9th Cir. 2020) and this Court's decision in *In re MacBook Keyboard Litig.*, 2020 WL 604723, *2–4 (N.D. Cal. Oct. 13, 2020) (Davila, J.), Plaintiffs may not seek equitable relief in federal court unless they do not have an adequate remedy at law.  Accordingly, Plaintiff Taleshpour may not assert a claim the Unfair Competition Law, for which only equitable relief is available; nor can Plaintiffs seek any other equitable relief, including injunctive relief.

The Court should grant Apple's motion and dismiss all of Plaintiffs' remaining claims with prejudice.

## II.    FACTUAL BACKGROUND[1]

In 2016, Apple introduced its updated 13- and 15-inch MacBook Pro models.  These models came with a standard limited warranty, which provides remedies for warranted defects within a one-year warranty period;[2] consumers may also elect to purchase an AppleCare service plan extending the

---

[1] This statement of facts is based on the factual allegations in Plaintiffs' TAC, which are assumed true (except where contradicted by information that is incorporated by reference into the TAC or which is judicially noticeable, such as the actual language of Apple's publicly available statements) solely for purposes of this motion to dismiss.

[2] The Court has already determined that Plaintiffs' claims rely upon the terms of the Limited Warranty and that it may consider its terms in ruling on a motion to dismiss.  Order Granting in Part and Denying in Part Motion to Dismiss Second Amended Complaint (Dkt. No. 55, the "**Order**") at 22 n.3 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  True and correct copies of the Limited Warranty

duration and scope of coverage.  The Limited Warranty warrants "against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) Year from the date of original retail purchase by the end-user purchaser ('Warranty Period')."  *See* Singh Decl. Ex. A (the "**Limited Warranty**").[3]  However, the Limited Warranty does not warrant against "defects caused by normal wear and tear or otherwise due to the normal aging of the Apple Product."  *Id.*  The Limited Warranty also states, in a section entitled "<u>WARRANTY LIMITATIONS SUBJECT TO CONSUMER LAW</u>" (capital letters and underlining in original):

> TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY AND THE REMEDIES SET FORTH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, REMEDIES AND CONDITIONS, WHETHER ORAL, WRITTEN, STATUTORY, EXPRESS OR IMPLIED. APPLE DISCLAIMS ALL STATUTORY AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY . . . AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS TO THE EXTENT PERMITTED BY LAW. IN SO FAR AS SUCH WARRANTIES CANNOT BE DISCLAIMED, APPLE LIMITS THE DURATION AND REMEDIES OF SUCH WARRANTIES TO THIS EXPRESS WARRANTY AND, AT APPLE'S REPLACEMENT SERVICES DESCRIBED BELOW.

*Id.* (capital letters in original).

Plaintiffs allege that they are purchasers of 13 and 15-inch 2016 MacBook Pro models released in and after 2016.  TAC ¶¶ 35, 41, 46, 51, 56, 61, 66, 71, 76.  As in their prior complaints, Plaintiffs allege that Apple made various representations about the MacBook Pro in an October 2016 press release. TAC ¶ 17.[4]  They allege that Apple described the 13- and 15-inch 2016 model MacBook Pro devices as

---

in effect when Plaintiffs allegedly purchased their devices are attached to the Declaration of David R. Singh filed in connection with Apple's Motion to Dismiss Second Amended Complaint (Dkt. No. 33-4, the "**Singh Decl.**").

[3] This language, and all language quoted from the Limited Warranty, appears in all versions of the Limited Warranty applicable when Plaintiffs allegedly purchased MacBook Pros.  *See* Singh Decl. ¶¶ 4, 5.

[4] Apple's press release is available online at <u>https://www.apple.com/newsroom/2016/10/apple-unveils-groundbreaking-new-macbook-pro/</u> (last visited on April 30, 2021).  Plaintiffs' claims depend on the content of Apple's press release.  It is also publicly available and verifiable.  The Court may thus properly consider its full contents in ruling on Apple's motion.  *See Knievel v. ESPN*, 393 F.3d at 1076 (on a

1    "revolutionary" and "groundbreaking" with "breakthrough performance" and indicated that they feature

2    the brightest and most colorful Retina display yet" and the "best Mac display ever." *Id.* They further

3    allege that Apple stated the MacBook Pro display operates at "500 nits of brightness," "is an amazing

4    67 percent brighter than the previous generation, features 67 percent more contrast and is the first Mac

5    notebook display to support wider color gamut." TAC ¶¶ 24. Each named Plaintiff alleges that they

6    saw "representations" and "advertisements and marketing materials" where Apple "represented the

7    MacBook had the best display to date" prior to purchasing their MacBook Pros. *Id.* ¶¶ 36, 42, 47, 52,

8    57, 62, 67, 72, 77.

9        Although Plaintiffs' three prior complaints did not mention it at all, the TAC for the first time

10   points to a statement by Apple in a set of FAQs on the environmental section of its website about its

11   environmental initiatives.[5] In a portion of a multi-paragraph response to the question: "How does Apple

12   conduct its Product Greenhouse Gas Life Cycle Assessment?"[6] Apple stated "***For the purposes of our***

13   ***assessment***, years of use, which are based on first owners, are ***modeled*** to be four years for macOS . . .

14   devices . . . . Most Apple products last longer and are often passed along, resold, or returned to Apple

15   by the first owner for others to use." *Id.* (emphasis added). Although unsupported by the actual language

16   of Apple's statement, Plaintiffs claim that this is a representation by Apple that its products will last for

17   a "minimum of four (4) years." TAC ¶ 16.

18       Plaintiffs argue that the statements by Apple set forth above are false and/or that Apple owed a

19   duty to disclose because the MacBook Pro devices suffer from a backlight cable defect (the "**Alleged**

20   **Defect**") that will eventually manifest in display issues, such as: (1) a "stage lighting' effect," whereby

21

22   motion to dismiss, a court may properly consider documents "whose contents are alleged in a complaint"

     or upon "which [a] plaintiff's claim depends"); Fed. R. Evid. 201.

23
     [5] Apple's environmental FAQs are available online at <u>https://www.apple.com/environment/answers/</u>
24   (last visited on April 26, 2021). Because Plaintiffs' claims depend on Apple's statement in these FAQs,

25   the Court may again properly consider in the actual language of the statement in ruling on Apple's motion

26   under both the incorporation by reference doctrine and because the statement is publicly available and

27   verifiable and subject to judicial notice. *See supra* note 4.

28   [6] The Product Greenhouse Gas Life Cycle Assessment estimates Apple's carbon footprint.

1   "alternating patches of light and darkness [appear] on the bottom of the display"; (2) "chunks of color

2   that obscures other text and images"; and/or (3) a complete failure of the backlighting system" when

3   opened beyond a certain angle. *Id.* ¶¶ 21–23. Plaintiffs acknowledge that they did not experience the

4   Alleged Defect during the Warranty Period, TAC ¶¶ 35, 37, 41, 43, 46, 48, 51, 53, 56, 58, 61, 63, 66,

5   68, 71, 73, 76, 78, and they concede that the Alleged Defect "typically" manifests outside of the Warranty

6   Period. TAC ¶ 27. Plaintiffs do not allege that the Alleged Defect poses an unreasonable safety hazard.

7   *See generally* TAC.

8        Plaintiffs assert violations of the Unfair Competition Law (Count 1); the Consumer Legal

9   Remedies Act (Count 2) the Washington Consumer Protection Act (Count 4); the Florida Deceptive and

10  Unfair Trade Practices Act; (Count 5); the New Jersey Consumer Fraud Act (Count 6); the Michigan

11  Consumer Protection Act (Count 7); the Alaska Unfair Trade Practice and Consumer Protection Act

12  (Count 8); the Missouri Consumer Protection Act (Count 9); the Massachusetts Unfair and Deceptive

13  Trade Practice Act (Count 10); the Texas Deceptive Trade Practice Act (Count 11) (Counts 1–2 and 4–

14  11, collectively, the "**Deceptive Trade Act**" claims); and a claim for fraudulent concealment (Count 3).

15  TAC ¶¶ 91–213.

16  **III.   LEGAL STANDARD**

17      **A.   Rule 8(a)**

18      Rule 8(a)(2) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible

19  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must be dismissed for

20  failure to state a claim under Rule 12(b)(6) if the plaintiff either fails to state a cognizable legal theory

21  or has not alleged sufficient facts to support a cognizable legal theory. *See id.* at 562–63. "A pleading

22  that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

23  not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must

24  allege facts that, if taken as true, raise more than a speculative right to relief. *See Bell Atl. Corp.*, 550

25  U.S. at 555. The Court need not "assume the truth of legal conclusions merely because they are cast in

26  the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).

27  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

28  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Wilson v. Hewlett-Packard*

1   *Co.*, 668 F.3d 1136, 1144 n. 4 (9th Cir. 2012) ("[T]he court [is not] required to accept as true allegations

2   that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").  Moreover,

3   "a court need not accept as true allegations contradicted by judicially noticeable facts."  *See*, *e.g.*, *Elias*

4   *v. Hewlett-Packard, Co.*, 950 F.Supp.2d 1123, 1126 (N.D. Cal. 2013) (citation omitted).

5   **B.      Rule 9(b)**

6   Where a plaintiff alleges "a unified course of fraudulent conduct" and "rel[ies] entirely on that

7   course of conduct as the basis of that claim," the claim is grounded in fraud and Rule 9(b) applies.

8   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Moore v. Apple Inc.*, 73 F.

9   Supp. 3d 1191, 1198 (N.D. Cal. 2014).  A claim grounded in fraud must "state with particularity the

10  circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this heightened standard, "claims

11  sounding in fraud must allege 'an account of the time, place, and specific content of the false

12  representations as well as the identities of the parties to the misrepresentations.'"  *Davidson v. Apple*

13  *Inc.*, 2017 WL 976048, at *4 (N.D. Cal. Mar. 14, 2017) (citation omitted).  When asserting a fraud-based

14  claim, the plaintiff must also set forth "what is false or misleading about a statement, and why it is false."

15  *Id.* (citation omitted); *see also Kearns*, 567 F.3d at 1124 ("A party alleging fraud must 'set forth more

16  than the neutral facts necessary to identify the transaction.'").  The Court previously found that Rule 9(b)

17  applies to Plaintiffs' Deceptive Trade Act and fraudulent concealment claims.  Order at 11–12.

18  **IV.     PLAINTIFFS DO NOT ALLEGE ANY ACTIONABLE FRAUD BASED CLAIMS[7]**

19  **A.      Plaintiffs Do Not Allege Any Actionable Affirmative Misrepresentations**

20  The Court rightly dismissed Plaintiffs' affirmative misrepresentation claims under the Deceptive

21  Trade Acts in the SAC and the additional allegations in the TAC failed to cure these fatal deficiencies.

22  _____

    [7] Apple understands that this Court is not inclined to decide the standing arguments Apple asserted in its

23  prior motion to dismiss at the pleading stage.  *See* Order at 11, 26.  Accordingly, Apple does not assert

24  those standing arguments in this motion.  However, Article III standing is a requirement throughout a

25  case and Apple reserves the right to raise its standing arguments later on a more developed evidentiary

26  record.  For example, if inspection of Plaintiffs' MacBook Pros confirms that they have not experienced

27  any display issues traceable to the allegedly defective backlight ribbon cable, their claims should be

28  dismissed.

The Court dismissed Plaintiffs' affirmative misrepresentation claims because "generalized, vague, and unspecified assertions" are not actionable under the Deceptive Trade Acts;[8] Apple's statements that the MacBook Pros are "revolutionary," "groundbreaking," offer "breakthrough performance," and contain "the best Mac display ever" are subjective, immeasurable assertions constituting non-actionable puffery because they say nothing about the specific characteristics or components of the computer; and the statements by Apple about the thickness, brightness, and color gamut of the MacBook Pros that are sufficiently specific and measurable to be theoretically actionable are not false because "[n]othing about th[e] Alleged Defect relates to the thickness, brightness, or color gamut of the MacBook display touted in the quoted advertisement.").  Order at 15–17.

Plaintiffs attempt to cure these fatal deficiencies with additional allegations that:  (1) "APPLE's promotional campaign for the MacBook Pros stressed that the new display screens are the best in the computer industry" and that Plaintiffs "believed" that Apple would adhere to industry best practices (TAC ¶ 17); (2) Apple's representations about the brightness of the MacBook Pro displays are "ultimately false" because a "display screen that exhibits stage lighting, chunks of color that obscures other text and images, and that eventually goes dark is the complete opposite of the bright, clear, sharp display APPLE represents" (TAC ¶ 24); and (3) APPLE represents to its consumers that its products will last for a minimum of four (4) years, and that "[m]ost [of its] products last longer [than four years] . . . ."  TAC ¶ 16.  These allegations are insufficient and only highlight that Plaintiffs cannot state an affirmative misrepresentation claim.

Plaintiffs' allegation that Apple stressed that the MacBook Pro display screens are the best in the

---

[8] Order at 15–16 (citing cases for each of the Deceptive Trade Acts at issue, except Alaska).  While Alaska courts have not decided whether puffery is inactionable under the Alaska Unfair Trade Practices Act, they give weight to interpretations of Section 5(a) of the Federal Trade Commission Act.  AS § 45.50.545.  Puffery is a well-recognized defense in the Federal Trade Commission context.  *Cook, Perkins and Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("In the FTC context, we have recognized puffery in advertising to be 'claims [which] are either vague or highly subjective.' . . . 'Advertising which merely states in general terms that one product is superior is not actionable.'").

computer industry misstates the actual representations by Apple and, even accepting Plaintiffs'
mischaracterization of Apple's representations, fails as a matter of law.  As an initial matter, because
Apple's alleged representations are incorporated by reference into the TAC and are publicly available
and verifiable and thus judicially noticeable, the Court may consider their actual language rather than
Plaintiffs' characterization.[9]  As even a cursory review of Apple's October 2016 press release shows,
Apple did not represent that the MacBook Pro displays are the best in the computer industry or mention
any industry best practices, much less any industry best practices relevant to Plaintiffs' theory.  Indeed,
the Court already considered Apple's statement in the October 2016 press release set forth in paragraph
17 of the TAC and found "that the MacBook Pro display is 'the best Mac display ever' does not imply
Apple's adherence to industry best practices, and in fact, only compares the display to other Macs, not
to the industry at large."  Order at 17.  Yet, the TAC doubles down on the very same press release and
does not identify any new representations Apple about the MacBook Pro display.  There is no reason for
the Court to deviate from its well-reasoned prior finding about Apple's statement.  Furthermore, even if
Apple's statement could be construed as representing that the MacBook Pro displays are the best in the
computer industry, which it cannot, such a "generalized, vague, and unspecified assertion" would be
textbook puffery.  *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 575–76 (N.D. Cal. 2019).

Plaintiffs' allegation that Apple's representations that the MacBook Pro display operates at "500
nits of brightness," "is an amazing 67 percent brighter than the previous generation, features 67 percent
more contrast and is the first Mac notebook display to support wider color gamut" are "ultimately false"
because a display screen that eventually fails "is the complete opposite of the bright, clear, sharp display
APPLE represents" fares no better.  Plaintiffs fail to meet their pleading burden of alleging any facts
establishing that their MacBook Pros did not conform to Apple's representations at the time of sale (*i.e.*,
they do not allege any facts establishing that the MacBook Pros did not operate at 500 nits of brightness
or that it was not 67% brighter and did not have 67% more contrast than the prior generation of Mac).
This is fatal to their affirmative misrepresentation claims.  *See  In re Sony Grand Wega KDF-E A10/A20
Series Rear Projection HD TV Television Litig.*, 758 F. Supp. 2d 1077, 1090 (S.D. Cal. 2010) (emphasis
added) (dismissing with prejudice UCL, FAL, CLRA and numerous other claims because "Plaintiffs

---

[9] *See supra* note 4; *Elias*, 950 F.Supp.2d at 1126.

1  fail[ed] to provide anything more than conclusory allegations to show that any of Sony's alleged

2  representations were false or misleading *at the time they were made*."); *Stansfield v. Starkey*, 220 Cal.

3  App. 3d 59, 74–75 (1990) (emphasis in original) (sustaining demurrer because plaintiff did "not clearly

4  allege[] that each representation was false *when made*").

5          Indeed, emphasizing the public policy implications of adopting a contrary rule, judges in the

6  Northern District have held that statements about a product's functionality (such as the MacBook Pro

7  brightness levels)—as opposed to statements regarding a product's reliability—do not become

8  actionable on an affirmative misrepresentation theory if a product ultimately fails. *See, e.g.*, *Berenblat*

9  *v. Apple, Inc.*, 2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009) (dismissing CLRA claims based on

10  laptop's allegedly defective memory slot where "[t]he complaint does not allege that [defendant] made

11  any specific representation with respect to the durability of the memory slot;" noting that "[s]imilar

12  claims under the CLRA have been rejected because *otherwise [a] statement describing any feature*

13  *would be actionable when either the feature—or product as a whole—eventually failed*") (emphasis

14  added); *Frenzel v. Aliphcom*, 2015 WL 4110811, *12 (N.D. Cal. July 7, 2015) (collecting cases); *Sciacca*

15  *v. Apple Inc.*, 362 F.Supp.3d 787, 798 (N.D. Cal. 2019) (rejecting the argument that Apple's

16  representations about, among other things, the brightness of the Apple Watch display, were rendered

17  false because an alleged defect may ultimately cause the watch display to detach, crack, or shatter).

18  Plaintiffs do not identify any statements regarding the reliability of the MacBook Pro display or the

19  allegedly defective ribbon cable component. *See Berenblat*, 2009 WL 2591366 at *6; *see also* Order at

20  17 (emphasizing that Plaintiffs do not allege how Apple's statements would lead a reasonable consumer

21  to draw inaccurate conclusions about the reliability or useful life of the display).

22          Plaintiffs' new allegation that Apple "represents to its consumers that its products will last for a

23  minimum of four (4) years" and that "[m]ost [of its] products last longer [than four years]" also fails for

24  multiple reasons:

25          First, Apple did not represent that the MacBook Pros will last a "minimum of four years," as

26  Plaintiffs claim in an attempt to manufacture a misrepresentation where none exists.  Apple stated only

27  that, "for the purposes of our [Product Greenhouse Gas Life Cycle Assessment] years of use . . . are

28  *modeled* to be four years for macOS devices" and Plaintiffs identify nothing about this statement that is

1   even arguably false.  Plaintiffs identify no facts establishing that, for purposes of this assessment, Apple

2   did not model years of use to be four years.  Similarly, although Plaintiffs have taken discovery regarding

3   the failure rate of the MacBook Pro, they do not allege that most MacBook Pros do not last longer than

4   four years.

5           Second, a reasonable consumer could not construe the statement that, for the purposes of a

6   Product Greenhouse Gas Life Cycle Assessment, Apple *modeled* years of use at four years *for purposes*

7   *of a specific environmental assessment* to be a guarantee that MacBook Pros never need repair before

8   four years, which would be in plain disregard of the terms of the one-year Limited Warranty Apple

9   actually provided with the MacBook Pros.  Indeed, the Limited Warranty does not guarantee that

10  MacBook Pros will be defect-free, but rather specifies that Apple will repair or replace any covered

11  defects in materials or workmanship during the Warranty Period.  In fact, implicit in the concept of the

12  one-year Limited Warranty is the possibility that a MacBook Pro may need repair within even one-year

13  of purchase.

14          Third, while the TAC alleges that "*Plaintiffs* and other APPLE consumers buy APPLE computer

15  products because of the company's representations about the over four (4)-year expected lifespan of the

16  MacBook Pros as well as APPLE's representations specific to the characteristics of the laptops'

17  exceptional display quality," *see*, *e.g.*, TAC ¶ 23 (emphasis added), Plaintiffs tellingly stop short of

18  alleging in the paragraphs specifically setting forth what each individual named Plaintiff relied upon in

19  purchasing their MacBook Pros that any of the named Plaintiffs relied upon Apple's statement about its

20  Product Greenhouse Gas Life Cycle Assessment.  *See* TAC ¶¶ 36, 42, 47, 52, 57, 62, 67, 72, 77 (alleging

21  for each named Plaintiff that "Before purchasing the laptop, Plaintiff saw advertisements and marketing

22  materials on APPLE's website in which APPLE represented the MacBook had the best display to date").

23  Plaintiffs also previously admitted that two of the named Plaintiffs, Liam Stewart and Peter Odogwu,

24  did not even purchase their MacBook Pros, but rather became owners of their devices after they were

25  purchased.[10]  The Court should not draw infer that each individual named Plaintiff reviewed and relied

26  _____

27  [10] *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss Second Amended Complaint (Dkt. No.
    40) at 8; *Gaxiola v. City of Los Angeles*, 2011 U.S. Dist. LEXIS 112958, at *55 (C.D. Cal. Aug. 30,

28  2011) (dismissing claims based on judicial admission made in plaintiff's brief opposing motion to

upon the FAQs in purchasing their MacBook Pros when Plaintiffs deliberately stopped short of making that allegation and have conceded facts establishing that the allegation is false as to at least some Plaintiffs.  *Kirsopp v. Yamaha Motor Co. Ltd., 2015 WL 11197829*, *8 (C.D. Cal. Jan. 7, 2015) (purported affirmative misrepresentation claims failed to satisfy both Rule 8 and Rule 9(b) where "[a]t best, the [First Amended Class Action Complaint] invites the reader to *infer* [Plaintiffs] viewed these webpages, but this is insufficient to state a claim"); *Wilson*, 668 F.3d 1136, 1144 n. 4 (in ruling on a Rule 12(b)(6) motion, a court need not accept as true any "unreasonable inferences" or "unwarranted deductions of fact").

Fourth, if the Court is inclined to construe the TAC as alleging that each of the named Plaintiffs relied upon Apple's statement about its Product Greenhouse Gas Life Cycle Assessment—which, for the reasons set forth above, would be an implausible interpretation—it should give the allegation no weight because it is contradicted by Plaintiffs' prior pleadings (which identified the statements that Plaintiffs allegedly read and relied upon in purchasing their MacBook Pros).[11]  The statements by Apple that each of the named Plaintiffs reviewed and relied upon in purchasing their MacBook Pros, if any, is historical and should not evolve based on any ongoing investigation by Plaintiffs or their counsel in this case (or as needed to avoid dismissal).  In three prior complaints, Plaintiffs identified the statements by Apple that they allegedly reviewed and relied upon in purchasing their MacBook Pros, and not only did none of the nine named Plaintiffs allege that they reviewed or relied upon Apple's statement about its

---

dismiss).

[11] *See, e.g., Satre v. Wells Fargo Bank, N.A.*, 2014 WL 12921393, at *10 (N.D. Cal. Sept. 16, 2014) ("Plaintiffs cannot plead inconsistent facts in their amendment of the complaint to avoid the Court's adverse ruling."); *Azadpour v. Sun Microsys., Inc.,* 2007 WL 2141079, *2 n.2 (N.D. Cal. July 23, 2017) (holding that if a plaintiff offers two contradictory pleadings without a credible explanation, "a district court need not accept the new alleged facts as true, and may, in fact , strike the changed allegations."); *see also In re Apple Inc. Device Performance Litigation*, 386 F.Supp.3d 1155, 1180 (N.D. Cal. 2019) (Davila, J.) (denying leave to amend to assert a theory that would be inconsistent with the detailed allegations in two prior complaints because Plaintiffs would be "held to the concessions in their current pleadings").

1   Product Greenhouse Gas Life Cycle Assessment, but they did not even mention this statement anywhere

2   in their pleadings.  *See*, *e.g.*, SAC ¶¶ 34, 40, 45, 50, 55, 60, 65, 70, 75, and *generally*.  Plaintiffs offer no

3   explanation as to why, if the named Plaintiffs reviewed and relied upon Apple's Product Greenhouse

4   Gas Life Cycle Assessment in purchasing their MacBook Pros, they did not even mention the statement

5   in their prior three complaints or previously claim to have relied upon it.  And it is implausible that each

6   of the named Plaintiffs suddenly recalled their reliance on the statement (which does not even appear in

7   promotional materials for the MacBook Pro, but rather on a subpage of Apple's website about Apple's

8   environmental initiatives).

9           For all of these reasons, despite being granted leave to amend, Plaintiffs have failed to cure the

10  deficiencies in their affirmative misrepresentation claims under the Deceptive Trade Acts.  The Court

11  should thus dismiss these claims with prejudice.  *Hash v. Giacomazzi*, 2021, U.S. Dist. LEXIS 56127,

12  at *6 (N.D. Cal. Mar. 23, 2021) (Davila, J.) (denying leave to amend where plaintiff was previously

13  granted to leave to amend on the same issue).

14          **B.        Plaintiffs Do Not Allege Any Actionable Omissions**

15          Plaintiffs' omission-based claims under the Deceptive Trade Acts and common law fraudulent

16  concealment also fail as a matter of law.  A duty to disclose is a prerequisite to an omission claim under

17  the Deceptive Trade Acts and a common law claim for fraudulent concealment.[12]  "[W]hen a defect does

---

18  [12] *See*, *e.g.*, *Cormier v. Carrier Corp.*, 2018 WL 5304788, at *6–7 (C.D. Cal. Oct. 22, 2018) (no omission

19  claim under Michigan Consumer Protection Act absent duty to disclose); *Hall v. SeaWorld Entm't Inc.*,

20  2016 WL 4595948, at *2, *6 (S.D. Cal. May 13, 2016) (dismissing Florida Deceptive and Unfair Trade

21  Practices Act and Texas Deceptive Trade Practices Consumer Protection Act claims for failure to allege

22  facts sufficient to trigger duty to disclose); *Donahue v. Apple Inc.*, 871 F. Supp. 2d 913, 925–26 (N.D.

23  Cal. 2012) (dismissing Washington Consumer Protection Act claim for failure to allege circumstances

24  triggering duty to disclose); *Hoey v. Sony Electronics Inc.*, 515 F.Supp.2d 1099, 1104–05 (N.D. Cal.

25  2007) (dismissing omission claims under the Consumer Legal Remedies Act and a claim for common

26  law fraudulent concealment because a manufacturer owed no duty to disclose a defect manifesting after

27  the warranty on a notebook computer expired); *Duffy v. Samsung Elecs. Am., Inc.*, 2007 WL 703197, at

28  *8 (D.N.J. Mar. 2, 2007) (dismissing a New Jersey Consumer Fraud Act claim because a manufacturer

---

not relate to an unreasonable safety hazard, a defendant has a duty to disclose only when (1) the omission is material; (2) the defect is central to the product's function; and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019) (Davila, J.).

Plaintiffs cannot satisfy the first requirement of this test; *i.e.*, that the omission is material. The California Court of Appeals, the Ninth Circuit, other judges within the Northern District, and this Court have all recognized that, absent an unreasonable safety hazard, the possibility that a product may fail after a product's warranty period is not material as a matter of law. Plaintiffs do not and cannot allege that the Alleged Defect poses any unreasonable safety hazard, admit that they did not experience the Alleged Defect during Apple's one-year Limited Warranty, and further concede that the Alleged Defect "typically" does not manifest during the warranty period. TAC ¶¶ 27, 35, 37, 41, 43, 46, 48, 51, 53, 56, 58, 61, 63, 66, 68, 71, 73, 76, 78.

In *Daugherty v. Am. Honda. Motor Co.*, 144 Cal. App. 4th 824 (2006), the California Court of Appeals upheld the dismissal of omission claims alleging the failure to disclose an engine defect that could cause an oil leak malfunction after the warranty expired. *Id.* at 830. The engines at issue were warranted for three years or 36,000 miles, whichever came first, and the defect, which was latent and not related to safety, did not manifest itself, if at all, until after these warranty limits. *Id.* at 827–32. The court emphasized the public policy implications of allowing omission claims in these circumstances: "[f]ailure of a product to last forever would become a 'defect' and a manufacturer would no longer be

owes no duty to disclose after the warranty period on a product expired); *see also* AS § 45.50.545 (interpretation of Section 2(a) of the FTC Act should be given weight in construing the Alaska Unfair Trade Practices Act); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 72 (1st Cir. 2020) (citing FTC Act interpretations, holding that there was no duty to disclose on packaging that chocolate products likely contained cocoa beans farmed by child and slave labor and, therefore, no violation of Mass. Gen. Laws 93A).

able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." *Id.* at 829.

In *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255 (2006), the California Court of Appeals again upheld a demurrer dismissal of an omission claim alleging the failure to disclose a car defect that manifested itself after the car's warranty expired. *Id.* at 1262–63. The court noted the California Supreme Court's general policy "that a consumer can be 'fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.'" *Id.* at 1270 (quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 18 (1965)).

The California Court of Appeals later reaffirmed *Daugherty* and *Bardin* in *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 257 (2011). In that case, the court reversed the dismissal of an omission claim because, unlike in *Daugherty and Bardin*, the alleged defect manifested before the product's warranty expired and the omission-claim was not an attempted end-around the limited warranty. *Id.* at 256–58.

Following *Daugherty*, *Bardin*, and *Collins*, the Ninth Circuit has repeatedly recognized that, absent an unreasonable safety hazard, requiring a manufacturer to disclose a defect that manifests after a product's warranty period would preclude the use of limited warranties and turn manufacturers into insurers perpetually. For example, in *Wilson v. Hewlett Packard Co.*, the Ninth Circuit affirmed the dismissal of omission claims based on the failure to disclose alleged latent defects in notebook computers that posed no safety issue and manifested after the product's limited warranty. 668 F.3d at 1141–43. The Ninth Circuit explained that "to broaden the duty to disclose beyond safety concerns would eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product." *Id.* at 1141–42 (internal citations omitted); s*ee also Vitt v. Apple Computer Inc.*, 469 Fed. Appx. 605, 607–09 (9th Cir. 2012) (upholding the district court's dismissal of omission claims based on Apple's alleged failure to disclose that the solder joints on the logic board of a laptop degrades slightly each time the computer is turned on and off, eventually causing the joint to break and the computer to stop working shortly after Apple's one year limited warranty expires).

The Ninth Circuit has reaffirmed *Wilson* multiple times. *See*, *e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017) (citing *Wilson* and affirming the dismissal of omission-based

claims because "[t]he fact that the alleged defect concerns premature, but usually post-warranty onset of a natural condition raises concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period"); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225–26 (9th Cir. 2015) (citing, *inter alia*, *Wilson*, 668 F.3d at 1141–43) ("Alleged defects that create 'unreasonable safety risks' are considered to be material.").

The Ninth Circuit also expressly declined to overrule *Wilson* in *Hodson v. Mars, Inc.*, 891 F.3d, 861–62 (9th Cir. 2018). In that case, the Ninth Circuit considered whether a food manufacturer owed a duty to disclose the use of child or slave labor in its supply chain, and expressed doubt that *Wilson's* safety-hazard requirement applies in all circumstances. *Id.* But the Ninth Circuit did not specify the circumstances that the safety-hazard requirement may not apply and the issue of whether, absent an unreasonable safety hazard, a defect manifesting after a product's warranty period is material was not even before the Court. *Id.* Unless or until the Ninth Circuit overrules *Wilson*, it remains controlling law in this district.

Northern District cases have also recognized that the public policy rationale for not allowing omission claims after a product's warranty period has expired "applies with even greater force to the component parts of laptop computers where consumer expectations are even more subjective and likely unreliable, and where usage will vary greatly from consumer to consumer." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009). Courts in the Northern District have thus routinely dismissed omission claims alleging the failure to disclose latent defects in computers that do not pose an unreasonable safety issue and manifest after a product's warranty period. *See, e.g.*, *id.*; *Marcus v. Apple Inc.*, 2015 WL 151489, *6 (N.D. Cal. Jan. 8, 2015); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014); *Elias*, 950 F. Supp. 2d at 1135-37; *Elias v. Hewlett-Packard Co.*, 903 F.Supp.2d 843, 856-57 (N.D. Cal. 2012); *Wilson v. Hewlett-Packard Co.*, 2009 WL 3021240, *1 (N.D. Cal. Sept. 17, 2009); *Decker v. Hewlett Packard Co.*, 2009 WL 10695728, *5 (N.D. Cal. June 19, 2009); *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd*, 316 App'x 585 (9th Cir. 2009); *Hoey*, 515 F.Supp.2d at 1105.[13]

_____

[13] This Court's decision on Apple's Motion to Dismiss Plaintiffs' Second Amended Complaint that the allegation that the alleged defect will "eventually" result in failure of each class member's display screen

1      Indeed, this Court recently held in a post-*Hodson* decision that each of the parties has cited with

2   approval in prior briefing that, absent an unreasonable safety hazard, the possibility that an alleged defect

3   will manifest outside of Apple's limited warranty is not material as a matter of law.  *See In re Apple Inc.*

4   *Device Performance Litig.*, 386 F.Supp.3d at 1178–79 (emphasis added) (citing *Collins* and *Yamaha* and

5   stating as one of two separate bases for dismissal:  "[s]etting aside the failure of the SAC to plead

6   anything more than the usual battery aging process, the Court finds that the defect is not material for

7   another reason, ***California law is clear*** that its consumer fraud statutes cannot be used to extend a

8   product's warrant[y].") (emphasis added); *In re Apple Inc. Device Performance Litig.*, 347 F.Supp.3d

9   434 (N.D. Cal. 2018) (Davila, J.) (citations omitted) (stating that courts have been careful to "cabin[ ]

10  the scope of the duty to disclose to avoid the unsavory result that manufacturers are on the hook for every

11  product defect that occurs at any time, regardless of any time limits contained in their warranties.").[14]

12      The court's holdings in these cases correctly applied, in this Court's own words, "clear"

13  California law.  *See In re Apple Inc. Device Performance Litig.*, 386 F.Supp.3d at 1178–79.  Concluding

14  that an alleged defect relating to the central function of a product is always material would conflate the

15  first and second elements of the duty to disclose test, rendering the materiality requirement superfluous.

16  Furthermore, consumer electronics have a limited life and a duty to disclose test that considered only

17  whether a product's central function was compromised, without regard to when the product failed

18  relative to the product's warranty period, would make manufacturers insurers of products indefinitely,

---

20  satisfied the materiality element failed to address the issue of whether an alleged defect manifesting after

21  a product's warranty is material as a matter of law.  *See* Motion for Leave for Reconsideration, Dkt. No.

22  59, was manifest error because the Court failed to consider its own prior ruling *in In re Apple Inc. Device*

23  *Performance Litig.*, 386 F.Supp.3d at 1178–79.

24  [14] In support of their materiality argument, Plaintiffs in the related *Ocampo* case also cite *In re MacBook*

25  *Keyboard Litig.*, 2019 WL 1765817, at *6 (N.D. Cal. April 22, 2019) (Davila, J.).   But, in that case, the

26  Court did not address whether a defect that manifests after the product's limited warranty is material,

27  presumably because, unlike the Plaintiffs here, "Plaintiffs allege[d] that . . . their keyboards failed within

28  a year."  *Id.* at *2.

1   in contravention of the strong public policy embodied in the California, Ninth Circuit, and Northern

2   District cases discussed above.

3   　　　In sum, because Plaintiffs concede that they did not experience the Alleged Defect during

4   Apple's Limited Warranty and that the Alleged Defect "typically" manifests after the Limited Warranty,

5   the alleged omission is not material as a matter of law, and Plaintiffs cannot establish that Apple owed a

6   duty to disclose as required for their fraudulent concealment and Deceptive Trade Act claims.  *See*, *e.g.*,

7   *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp.

8   2d 1077, 1089 (S.D. Cal. 2010) (dismissing omission claims under the deceptive trade acts of forty states

9   because "[w]here a manufacturer has expressly warranted a product, consumers can only expect that

10  product to function properly for the length of the manufacturer's express warranty").  Plaintiffs have

11  long been on notice of Apple's argument as to the deficiencies in their omission claims, including based

12  on Apple's prior motion to dismiss briefing and Apple's Motion for Leave to File Reconsideration, but

13  Plaintiffs have still not and are unable to cure their deficiencies.  As such, the Court should dismiss

14  Plaintiffs' omission claims with prejudice.  *In re Ford Motor Co.*, 483 F.Supp.3d 838, 847 (C.D. Cal.

15  2020).

16  **V.      PLAINTIFFS DO NOT ALLEGE AN ACTIONABLE UCL CLAIM**

17  　　　Plaintiffs' UCL claims, including under the "fraudulent" prong, are predicated on, and fail with,

18  their deficient affirmative misrepresentations and omissions claims discussed in Section IV.A–B

19  above.[15]  As set forth below, Plaintiffs' UCL claims also fail for all of the additional reasons identified

20  by the Court in the Order.

21  　　　**A.      Plaintiff Taleshpour's "Unfair" UCL Claim Is Not Sufficiently Plead**

22  　　　California courts have developed at least two tests for "unfairness" within the meaning of the

23  UCL:  "(1) the tethering test, which requires that the public policy which is a predicate to a consumer

24  unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional,

25  statutory, or regulatory provisions" and "(2) the balancing test, which examines whether the challenged

26  business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers

27  and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to

28
---
[15] *See*, *e.g.*, TAC ¶¶ 97, 99(a)–(c), 101, 103–06.

1  the alleged victim[.]"  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013)

2  (internal citations omitted).  Plaintiff Taleshpour does not state a claim under either test.

3          Under the first test, Plaintiff Taleshpour must allege that Apple's purported conduct violated a

4  public policy that is "tethered" to specific constitutional, regulatory, or statutory provisions.  *Id.*  In the

5  TAC, Plaintiff Taleshpour simply reiterates his prior allegation that Apple violated California public

6  policy "legislatively declared" in the CLRA because the MacBook Pros are not "fit for their ordinary

7  and intended purposes."  TAC ¶ 96.  The Court already rejected this very argument.  *See* Order at 25

8  (rejecting this argument because "the Court finds that Plaintiff has not stated a claim under either law

9  and therefore has not alleged any violation of public policy.").

10          Under the second test, an act or practice is "unfair" if "the consumer injury is substantial, is not

11  outweighed by any countervailing benefits to consumers or to competition, and is not an injury the

12  consumers themselves could have reasonably avoided."  *Daugherty*, 144 Cal. App. 4th at 839.  Plaintiffs

13  must allege facts supporting all three elements.  *Id.* (noting that the court need not analyze all three

14  factors because plaintiff could not allege the substantial injury factor).

15          "Failure to disclose a defect that might shorten the effective life span of component part to a

16  consumer product does not constitute a 'substantial injury' under the unfair practices prong of the UCL

17  where the product functions as warranted throughout the term of its Express Warranty."  *In re Sony*, 758

18  F. Supp. 2d at 1091; *see also Clemens v. DaimlerChrysler*, 534 F.3d 1017, 1026–27 (9th Cir. 2008);

19  *Wash v. Major Motors Cars, Inc.*, 2020 WL 5440555, *5 (C.D. Cal. July 27, 2020); *Dakin v. BMW of

20  North America, LLC*, 2019 WL 5788324, *6 (S.D. Cal. Nov. 6, 2019).  Plaintiff Taleshpour has not

21  alleged that his MacBook Pro failed to function as warranted throughout the Warranty Period.  As the

22  Court previously concluded, Plaintiffs' claim under the UCL's unfair prong is thus deficient because he

23  alleges no substantial injury.  Order at 25.  Nothing in the TAC warrants a different outcome.

24      **B.    Plaintiff Taleshpour's "Unlawful" UCL Claim Is Not Sufficiently Plead**

25          "[T]he UCL 'borrows violations of other laws and treats them as unlawful practices'" that are

26  "independently actionable" under the statute.  *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal.

27  2014) (internal citation omitted).  However, courts in the Ninth Circuit regularly dismiss "unlawful"

28

1  UCL claims where the plaintiff has not established a predicate violation of underlying law.  *See*, *e.g.*, *id.*

2  at 1202.

3        As in the SAC, Plaintiff Taleshpour alleges that Apple's conduct violates the CLRA.  For the

4  reasons set forth in Section IV.A–B, Plaintiff Taleshpour's predicate CLRA claim is fatally deficient.

5  Indeed, courts within the Ninth Circuit routinely dismiss CLRA claims alleging failure to disclose a

6  purported defect where, as here, it allegedly manifests after the applicable warranty period.  *Elias*, 950

7  F. Supp. 2d at 1137 (dismissing with prejudice UCL, FAL, CLRA and fraudulent concealment claims

8  predicated on the failure to disclose an alleged defect in computers that manifested post-warranty).

9  Because Plaintiff Taleshpour does not, and cannot, state claims under the laws that are a predicate for

10  his "unlawful" UCL claim, this claim fails.  *Rudd v. Borders, Inc.*, 2009 WL 4282013, at *2 (S.D. Cal.

11  Nov. 25, 2009).

12  **VI.**    **PLAINTIFF LIAM STEWART DOES NOT ALLEGE AN ACTIONABLE NEW JERSEY**

13            **CONSUMER FRAUD ACT CLAIM**

14        Plaintiff Stewart has not stated an actionable claim under the New Jersey Consumer Fraud Act

15  ("**NJCFA**") for yet additional reasons.  To state an actionable NJCFA claim, a plaintiff must allege facts

16  establishing three elements:  (1) unlawful conduct by the defendant; (2) an ascertainable loss on the part

17  of the plaintiff; and (3) a causal relationship between defendants' unlawful conduct and the plaintiff's

18  ascertainable loss.  *Duffy v. Samsung Elecs. Am., Inc.*, 2007 WL 703197, at *6 (D.N.J. Mar. 2, 2007).

19        Plaintiff Stewart has not plead the first element—unlawful conduct by Apple—because the TAC

20  does not allege facts establishing that, at the time he purchased his device, Apple knew with certainty

21  that the Alleged Defect would manifest, as required to state a claim under the NJCFA.  "It is not sufficient

22  to allege that the defendant manufacturer knew that a part *might* fail . . . .  [U]nless a defendant

23  manufacturer knows with certainty that a product *will* fail, it does not violate the NJCFA by failing to

24  inform its consumers of the possibility of failure."  *Dawson v. General Motors LLC*, 2019 WL 3283046,

25  *5–6 (D.N.J. July 22, 2019) (emphasis in original) (internal citations omitted); *see also Priano-Keyser*

26  *v. Apple, Inc.*, 2019 WL 7288941, at *8 (D.N.J. Dec. 30, 2019) (alteration in original) (emphasis added)

27  (granting Apple's motion to dismiss a NJCFA claim because "[t]o support a [NJ]CFA cause of action

28  for fraud in the context of a warranted defect, a plaintiff must show that the manufacturer was not in

1   good faith insuring against a risk, but that it actually *knew with certainty* that the product at issue or one

2   of its components was going to fail.").

3          Here, the TAC alleges no facts establishing that, at the time Plaintiff Stewart purchased his

4   MacBook Pro in 2017, TAC ¶ 67, Apple knew that his MacBook Pro was certain to fail.

5          Plaintiff Stewart also failed to plead the second element—an ascertainable loss—because the

6   TAC admits that his MacBook Pro performed beyond the Limited Warranty (TAC ¶¶ 67, 69), and the

7   failure of a product after its warranty is not an ascertainable loss under the NJCFA.  *Duffy*, 2007 WL

8   703197, *8 (plaintiff failed to allege ascertainable loss because "Plaintiff's microwave continued to

9   perform beyond the period in which Samsung was contractually bound to repair or replace any defective

10  part" and stating that "[t]o recognize Plaintiff's claim would essentially extend the warranty period

11  beyond that to which the parties agreed."); *Nobile v. Ford Motor Co.*, 2011 WL 900119, *5–6 (D.N.J.

12  Oct. 1, 2012) ("Court's in New Jersey have held that where a vehicle component has outperformed the

13  warranty period, the plaintiff cannot meet the pleading requirements for an 'ascertainable loss'").

14         For these reasons as well, Plaintiff's NJCFA claim should be dismissed.

15  **VII.   PLAINTIFFS' DEMANDS FOR EQUITABLE RELIEF SHOULD BE DISMISSED**

16         The Ninth Circuit held in *Sonner v. Premier Nutrition Corp.* that a plaintiff may not seek

17  equitable relief in federal court unless they do not have an adequate remedy at law.  971 F.3d 834, 844

18  (9th Cir. 2020) ("[T]he traditional principles governing equitable remedies in federal courts, including

19  the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and

20  CLRA in a diversity action.").  In turn, this Court held in *In re MacBook Keyboard Litig.* that *Sonner*

21  precludes not only demands for restitution but also any and all other equitable remedies, including

22  injunctive relief.  2020 WL 604723, at *4.  Because equitable relief is the exclusive relief under the UCL,

23  the Court dismissed plaintiffs' UCL claim in its entirety with prejudice, and it dismissed plaintiffs'

24  remaining claims (including claims under other states' deceptive trade acts) with prejudice to the extent

25  that they sought any injunctive, restitution, or other equitable relief.  *Id.* at *9–14.  Here, Plaintiffs do

26  not allege that they lack an adequate remedy at law.  Accordingly, as in *In re MacBook Keyboard Litig.*,

27  the Court should dismiss Plaintiffs' UCL claim with prejudice and all other claims with prejudice to the

28  extent that they seek any injunctive, restitution or other equitable relief.

## VIII.   CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court dismiss the TAC and each claim therein with prejudice.

Dated: April 30, 2021                                       Respectfully submitted,

                                                            WEIL, GOTSHAL & MANGES LLP


                                                            By:  /s/ David R. Singh
                                                                      DAVID R. SINGH

                                                            Attorney for Defendant Apple Inc.