1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MAHAN TALESHPOUR,

           Plaintiff,

    v.

APPLE INC.,

           Defendant.

Case No.   5:20-cv-03122-EJD

**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. No. 68

Plaintiffs Mahan Taleshpour, Rory Fielding, Peter Odogwu, Wade Buscher, Gregory Knutson, Darien Hayes, Liam Stewart, Nathan Combs, and Kendall Bardin bring this action against Defendant Apple Inc. ("Apple") on behalf of themselves and members of a putative class, asserting eleven claims related to an alleged product defect in certain MacBook Pro laptops. Before the Court is Apple's Motion to Dismiss the Third Amended Complaint ("TAC"). Mot. to Dismiss Third Am. Compl. ("Mot."), Dkt. No. 68. The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, the Court GRANTS the motion with limited leave to amend.

## I.   BACKGROUND

In 2016, Apple introduced its updated 13- and 15-inch MacBook Pro models. Third Am. Compl. ("TAC"), Dkt. No. 66 ¶ 17. To make these MacBook Pros thinner and sleeker than their predecessors, Apple used thin, flexible backlight ribbon cables to connect the lighting mechanism of the display screen to the display controller board. *Id.* ¶ 18. These backlight ribbon cables wrap around the display controller board at the hinge of the laptop and are secured by a pair of spring-

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

1

1     loaded covers.  *Id.*

2          This configuration causes the backlight ribbon display cables rub against the control board

3     when the laptop is opened and closed.  *Id.* ¶ 20.  Over time, the rubbing causes the cables to tear,

4     which leads to various problems with the display screen.  *Id.*  For example, the tearing of the cable

5     can cause a "stage lighting" effect, consisting of alternating patches of darkness along the bottom

6     of the display.  *Id.* ¶ 21.  Further tearing can lead to more serious display issues, such as large

7     blocks of color that obscure portions of the screen, and eventually, can cause the display to fail

8     entirely.  *Id.* ¶¶ 22-23.  To varying degrees, these issues with the display screen all allegedly

9     render the laptop unusable and unfit for its ordinary purpose.  *Id.*

10         Plaintiffs allege that the backlight cables tear because they are "too short and do not

11    provide enough slack to withstand the repetitive opening and closing of the MacBook Pros" (the

12    "Alleged Defect").  *Id.* ¶ 20.  Faced with complaints from numerous consumers about the stage

13    lighting effect and the failure of the display, Apple attempted to remedy the Alleged Defect by

14    making the backlight cables two millimeters longer in the 13- and 15-inch MacBook Pro models

15    released in July 2018.  *Id.* ¶¶ 30, 32.

16         In May 2019, Apple also introduced the "MacBook Pro Display Backlight Service

17    Program," through which Apple agreed to replace the display on all 13-inch 2016 MacBook Pro

18    models that exhibited the stage lighting effect or a total failure of the display backlight system.  *Id.*

19    ¶ 33.  Under the service program, Apple will refund the owner of a 13-inch 2016 MacBook Pro

20    who paid to have the display fixed.  *Id.*  The service program covers only the 13-inch 2016

21    MacBook Pro; it does not cover the 15-inch MacBook Pro, or any MacBook Pro model released

22    after 2016.  *Id.*

23         Plaintiffs are all owners of 15-inch 2016 MacBook Pro or MacBook Pro models released

24    after 2016 and allege that their laptops all suffered from the same backlight cable defect as the 13-

25    inch version.  *Id.* ¶¶ 35, 41, 46, 51, 56, 61, 66, 71, 76.  Plaintiffs all experienced issues with their

26    display screens, including the stage lighting effect or "vertical pink lines," which ultimately

27    rendered their laptops inoperable.  *Id.* ¶¶ 37, 43, 48, 53-54, 58-59, 63-64, 68, 73-74, 78-79.  In all

28    Case No.: 5:20-cv-03122-EJD
ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

*United States District Court*
*Northern District of California*

1   cases, these issues manifested after the one-year warranty Apple provided expired.  *Compare id.*

2   ¶¶ 35, 41, 46, 51, 56, 61, 66, 71, 76 *with id.* ¶¶ 37, 43, 48, 53-54, 58-59, 63-64, 68, 73-74, 78-79.

3   **II.      LEGAL STANDARD**

4        **A.      Rule 12(b)(6)**

5        Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

6   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

7   it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

8   complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state

9   a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule

10  12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts

11  to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

12  1104 (9th Cir. 2008).  When deciding whether to grant a motion to dismiss, the Court must accept

13  as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give

14  rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court must also

15  construe the alleged facts in the light most favorable to the plaintiff.  *Love v. United States*, 915

16  F.2d 1242, 1245 (9th Cir. 1989).  While a complaint need not contain detailed factual allegations,

17  it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

18  plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

19       A court generally may not consider any material beyond the pleadings when ruling on a

20  Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated

21  as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, documents

22  appended to the complaint, incorporated by reference in the complaint, or which properly are the

23  subject of judicial notice may be considered along with the complaint when deciding a Rule

24  12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal*

25  *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

26  Likewise, a court may consider matters that are "capable of accurate and ready determination by

27  resort to sources whose accuracy cannot reasonably be questioned."  *Roca v. Wells Fargo Bank,*

28  Case No.: 5:20-cv-03122-EJD
    ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

United States District Court
Northern District of California

1    *N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at \*3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R.

2    Evid. 201(b)).

3    **B.      Rule 9(b)**

4    Consumer protection claims that sound in fraud are subject to the heightened pleading

5    requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317

6    F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal.

7    2018).   Rule 9(b) requires that "a party must state with particularity the circumstances constituting

8    fraud."  Fed. R. Civ. P. 9(b).  The circumstances constituting the fraud must be "specific enough to

9    give defendants notice of the particular misconduct which is alleged to constitute the fraud

10   charged so that they can defend against the charge and not just deny that they have done anything

11   wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Therefore, a party alleging

12   fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at

13   1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  "[I]n a case where fraud is

14   not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the

15   heightened pleading requirements of Rule 9(b)" while "[a]llegations of non-fraudulent conduct

16   need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1104–05.

17   With respect to Plaintiffs' omissions-based fraud claims, "the pleading standard is lowered

18   on account of the reduced ability in an omission suit 'to specify the time, place, and specific

19   content, relative to a claim involving affirmative misrepresentations.'" *Barrett v. Apple Inc.*, No.

20   5:20-CV04812-EJD, 2021 WL 827235, at \*7 (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT*

21   *& TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)); *see also Falk v. Gen. Motors*

22   *Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

23   **III.    DISCUSSION**

24   Plaintiffs bring claims for: (1) violation of the California Unfair Competition Law, Cal.

25   Bus. & Prof. Code §§ 17200, et seq. ("UCL") (Count 1), (2) violation of the California Consumers

26   Legal Remedies Act, Cal. Civ. Code §§ 1761 and 1770 ("CLRA") (Count 2), and (3) equivalent

27   deceptive trade practice laws in Alaska, Florida, Massachusetts, Michigan, Missouri, New Jersey,

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.
     4

United States District Court
Northern District of California

1    Texas, and Washington (Counts 4-11) (collectively, "the Deceptive Trade Practice Claims"); and

2    (4) fraudulent concealment (Count 3).  Apple seeks to dismiss all of Plaintiffs' claims pursuant to

3    Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

4    granted.  The Court addresses each claim in turn.

5          **A.     Fraud Claims**

6                **1.     Affirmative representations**

7          Plaintiffs allege with respect to each of their fraud claims that Apple committed fraud

8    through affirmative representations in its 2016 promotional campaign for MacBook Pros.  The

9    TAC includes the same allegations from the Second Amended Complaint ("SAC") concerning

10   Apple's description of the displays on the relevant MacBook Pro models as the "brightest and

11   most colorful Retina display yet," as well as an advertisement and an October 27, 2016 press

12   release stating that the new MacBook Pros had "the best Mac display ever."  *Compare* TAC ¶ 17

13   *with* Dkt. No. 30 ¶ 16.  The TAC also includes new allegations of affirmative representations,

14   specifically that: (1) Apple's promotional campaign stressed that the new display screens are the

15   best in the computer industry (TAC ¶ 17); (2) "the Retina display on the new MacBook Pro at 500

16   nits of brightness is an amazing 67 percent brighter than the previous generation, features 67

17   percent more contrast and is the first Mac notebook display to support wider color gamut" (*id.* ¶

18   24); and (3) Apple products will last for a minimum of four years (*id.* ¶ 16).

19         With respect to the allegations repeated from the SAC, the Court already determined those

20   representations to be nonactionable puffery.  Dkt. No. 55 at 14–17 (citing *Ahern v. Apple Inc.*, 411

21   F. Supp. 3d 541 (N.D. Cal. 2019)).  With their current amendments, Plaintiffs seek to cure the

22   deficiencies the Court previously identified by distinguishing *Ahern*.  Plaintiffs contend that,

23   unlike the *Ahern* plaintiffs, they have pled "a product design defect central to the function and

24   operation of their laptops," not merely a defect affecting "the quality of the user experience."  Pls.'

25   Opp'n to Mot. to Dismiss Third Am. Compl. ("Opp'n"), Dkt. No. 71, at 8 (citing *Ahern*, 411 F.

26   Supp. 3d at 568); *but see* Opp'n at 9 ("Plaintiffs here plead Apple's misrepresentations about

27   MacBook Pro monitor *quality*.") (emphasis original).  Plaintiffs appear to confuse *Ahern*'s ruling

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

United States District Court
Northern District of California

on affirmative misrepresentations with its ruling on fraudulent concealment theories.  *See Ahern*, 411 F. Supp. 3d at 568 (discussing pure omission allegations).

Instead, Plaintiffs contend that "[w]hen a plaintiff alleges such product ineffectiveness or failure, representations about that product's superior quality are provably false and thus not mere 'puffery.'"  Opp'n at 9.  Plaintiffs cite *Vigil v. Gen. Nutrition Corp.*, No. 15-CV-00079-JM-DBHx, 2015 WL 2338982 (S.D. Cal. May 13, 2015) and *In re Bang Energy Drink Mktg. Litig.*, No. 18-cv-05758-JST, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) in support of this proposition.  In *Vigil*, the district court found the defendant's statement that its male supplement "[f]ormulated with premium ingredients to provide maximum potency" was not nonactionable puffery because the statement at issue arguably promised customers that the supplement was capable of having some kind of effect on male potency when viewed in context with other statements on the product label.  2015 WL 2338982, at *8–9 ("If Plaintiff can prove that Staminol is totally incapable of doing so, this statement is provably false to the extent that it makes that representation, or at least contributes to the likelihood that the packaging is deceptive as a whole.").  In *Bang Energy*, the court found that the defendant's use of the term "Super Creatine" was an actionable misrepresentation because the defendant used it to qualify an ingredient about which it made specific claims and was therefore capable of being proven true or false.  2020 WL 4458916, at *8–9.  Neither of these cases support Plaintiffs' contention because they concerned statements that were capable of being proven true or false.  The Court finds no reason to alter its earlier finding that the statements that the laptops are "revolutionary," "groundbreaking," offer "breakthrough performance," and contain "the best Mac display ever" are subjective and immeasurable assertions and thus constitute nonactionable puffery.  Dkt. No. 55 at 17.

Turning to the new allegations in the TAC, the Court first addresses the allegation that "APPLE's promotional campaign for the MacBook Pros stressed that the new display screens are the best in the computer industry."  TAC ¶ 17.  The Court perceives this allegation as an attempt to plead an actionable statement akin to those in *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966 (N.D. Cal. 2018).  The Court previously rejected Plaintiffs' comparison to *Beyer*, finding that "the

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.
6

United States District Court
Northern District of California

United States District Court
Northern District of California

1    statement that the MacBook Pro display is 'the best Mac display ever' does not imply Apple's

2    adherence to industry best practices," as it only compares the display to other Macs. Dkt. No. 55

3    at 16–17. This additional allegation does not support Plaintiffs' case, however, as the TAC does

4    not contain any actual examples of or quotations from Apple making such a representation. The

5    only example of Apple's promotional campaign that Plaintiffs provide is the October 2016 press

6    release[1], which says nothing about the new MacBook Pro display being the best in the computer

7    industry. Plaintiffs do not address this inconsistency in their opposition brief. *See* Opp'n. The

8    Court thus finds no factual basis for such an allegation.

9        With respect to the statement about the Retina display, the Court previously held that this

10   statement was the only actionable statement from the 2016 MacBook Pro advertisement cited in

11   the SAC, because it consisted of more specific statements about the objective characteristics of the

12   MacBook Pro display capable of being proven false. Dkt. No. 55 at 17. However, the Court noted

13   that Plaintiffs had not alleged that those statements were false:

> Nothing about this Alleged Defect relates to the thickness,
> brightness, or color gamut of the MacBook display touted in the
> quoted advertisement. Because Plaintiffs do not allege that the
> statements in the advertisements are false or that they would lead a
> reasonable consumer to draw inaccurate conclusions about the
> reliability of useful life of the display, the court dins that these
> statements are not affirmative misrepresentations sufficient to
> support Plaintiffs' fraud claims.

*Id.* The TAC asserts that the advertisement's "representations about the purportedly exceptional

brightness and quality of the MacBook Pro displays, however, are ultimately false," and that the

Alleged Defect is "the complete opposite of the bright, clear, sharp display APPLE represents it to

be." TAC ¶ 24. But those allegations still say nothing about the thickness, brightness, or color

gamut of the MacBook display. Moreover, Apple argues, Plaintiffs have not alleged any facts

suggesting that these statements were false at the time they were made or at the time of sale. Mot.

at 8–9 (citing *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HD TV Television*

---

[1] Judicial notice of the October 2016 press release is proper, as the release is incorporated in the complaint. TAC ¶ 17 n.2; *Khoja*, 899 F.3d at 998.

Case No.: 5:20-cv-03122-EJD
ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.
7

United States District Court
Northern District of California

1   *Litig.*, 758 F. Supp. 2d 1077, 1090 (S.D. Cal. 2010)).  Plaintiffs do not directly address this issue

2   in their opposition brief and do not point to any facts suggesting otherwise.  Opp'n at 9.

3            Last, with respect to the new allegation that Apple represents its products as lasting for a

4   minimum of four years, the Court finds that the TAC's allegations mischaracterize Apple's

5   statement.  The webpage cited as the source of the statement is entitled, "Additional Questions:

6   More answers to your questions about Apple and the environment," and it appears in the

7   "Environment" section of Apple's website.[2]  Apple Inc., *Environment – Answers – Apple*,

8   Apple.com, https://www.apple.com/environment/answers/ (last visited July 17, 2021).  The

9   relevant portion of the webpage reads:

10                      2. How does Apple conduct its Product Greenhouse Gas Life Cycle
                       Assessment?
11
                       Apple uses five steps when conducting a product life cycle
12                     assessment (LCA):

13                     . . .

14                          2. To model customer use, we measure the power consumed by a
                           product while it is running in a simulated scenario.  Daily usage
15                         patterns are specific to each product and are a mixture of actual
                           and modeled customer use data.  For the purposes of our
16                         assessment, years of use, which are based on first owners, are
                           modeled to be four years for macOS and tvOS devices and three
17                         years for iOS, iPadOS and watchOS devices.  Most Apple
                           products last longer and are often passed along, resold, or
18                         returned to Apple by the first owner for others to use.  More
                           information on our product energy use is provided in our
19                         Product Environmental Reports.

20   *Id.*  A review of this webpage reveals that the purported four-year lifespan representation concerns

21   modeling assumptions Apple made for the purposes of engaging in an environmental assessment

22   of greenhouse gas emissions resulting from Apple products.  *Id.*  Using a particular model for

23   environmental assessment purposes is not equivalent to guaranteeing a product lifespan of four

24   years without repair.  It is simply not plausible that a consumer considering whether to purchase a

25

26   _____

27   [2] Judicial notice of the webpage is proper, as the statement appearing on the page is incorporated
    in the complaint.  TAC ¶ 16; *Khoja*, 899 F.3d at 998.

28   Case No.: 5:20-cv-03122-EJD
    ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

8

1    MacBook Pro would seek technical information about the laptop's specifications from the portion

2    of Apple's website addressing frequently asked questions about its environmental practices.

3    Moreover, the Court cannot reasonably infer that Plaintiffs actually viewed the environmental

4    questions webpage and relied on it.  The TAC alleges that each plaintiff "saw advertisements and

5    marketing materials on APPLE's website in which APPLE represented the MacBook had the best

6    display to date."  TAC ¶¶ 36, 42, 47, 52, 57, 62, 67, 72, 77.  The environmental questions webpage

7    cannot be fairly described as an advertisement or marketing material, and it says nothing at all

8    about the MacBook in particular, much less that it had "the best display to date."

9            Accordingly, the Court finds that Plaintiffs have not stated any fraud claims based on

10   affirmative misrepresentations.

11                            **2.        Fraud by omission**

12           Plaintiffs' fraudulent concealment and various Deceptive Trade Practice Claims all stem

13   from the contention that Apple failed to disclose the Alleged Defect in the MacBook Pros.  "To

14   state a claim for fraudulent omission, the omission must be contrary to a representation actually

15   made by the defendant, or an omission of a fact the defendant was obliged to disclose." *In re*

16   *Apple Inc. Device Performance Litig. (In re Apple II)*, 386 F. Supp. 3d 1155, 1175 (N.D. Cal.

17   2019) (internal citation omitted) (emphasis added).  "When a defect does not relate to an

18   unreasonable safety hazard, a defendant has a duty to disclose when (1) the omission is material;

19   (2) the defect is central to the product's function; and (3) at least one of the following four factors

20   is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material

21   facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material

22   fact from the plaintiff; or the defendant makes partial representations that are misleading because

23   some other material fact has not been disclosed." *Id.* at 1176.

24           Apple now contends that no duty to disclose exists where the defect arises only after

25   expiration of the warranty period, and that such an omission is not material (and thus not

26   actionable) as a matter of law except when the defect poses a safety hazard.  Mot. at 12–17.  The

27   Court's previous ruling did not address this warranty argument, which Apple made only obliquely

28   Case No.: 5:20-cv-03122-EJD
ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.
9

United States District Court
Northern District of California

1     with respect to the fraud by omission claims.[3]  *See* Dkt. No. 33 at 14–19.

2              As the Ninth Circuit and other courts in this District have acknowledged, "[t]he state of the

3     law on the duty to disclose under California law is in some disarray."  *In re Apple Inc. Device*

4     *Performance Litig. (In re Apple I)*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2018).  In 2012, the Ninth

5     Circuit concluded based on California state law that in the absence of affirmative

6     misrepresentations, a plaintiff must "allege that the design defect caused an unreasonable safety

7     hazard."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (citing *Daugherty*

8     *v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)); *see also Williams v. Yamaha Motor Co.*,

9     851 F.3d 1015, 1026 (9th Cir. 2017) (citing *Wilson* as "holding that where a defendant has not

10    made an affirmative misrepresentation, a plaintiff must allege the existence of an unreasonable

11    safety hazard").  However, in 2015, the California Court of Appeal appeared to suggest that a

12    plaintiff pursuing a fraudulent omission claim need not always plead an unreasonable safety

13    hazard.  *See Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015) (allowing

14    consumer-protection claims to proceed even without "defects related to safety concerns").  More

15    recently, in 2018, the Ninth Circuit recognized this tension in the cases but declined to decide

16    whether the safety-hazard requirement applies in all circumstances.  *See Hodsdon v. Mars*, 891

17    F.3d 857, 861–62 (9th Cir. 2018) ("While the recent California cases do cast doubt on whether

18    *Wilson*'s safety-hazard requirement applies in all circumstances, we have no occasion in this case

19    to consider whether the later state-court cases have effectively overruled *Wilson*.").

20             However, the Ninth Circuit does not appear to have directly addressed the question of

21    whether a duty to disclose exists when the alleged defect arises only after a limited warranty

22    period expires.  The last direct word from the Ninth Circuit on the subject appears in *Wilson*,

23

24    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[3] Apple moved for leave to file a motion for reconsideration of the Court's prior order granting in
25    part and denying in part Apple's motion to dismiss the SAC, arguing that the Court committed
      manifest error by not considering the warranty argument in analyzing Plaintiffs' fraudulent
26    omission claims.  Dkt. No. 59.  In view of the operative TAC and the fact that the Court is now
      considering what would presumably be Apple's same arguments on the issue, the motion for leave
27    to file a motion for reconsideration is DENIED as moot.

28    Case No.: 5:20-cv-03122-EJD
      ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.
      10

United States District Court
Northern District of California

1   which states that "California federal courts have generally interpreted *Daugherty* as holding that

2   '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an

3   affirmative misrepresentation or a safety issue.'"  668 F.3d at 1141 (quoting *Oestreicher v.*

4   *Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)).  Plaintiffs contend that *Rutledge* and

5   *Hodsdon* have rejected *Wilson*'s strict "safety hazard" pleading requirement altogether in omission

6   cases, and that the expiration of a limited warranty period is otherwise irrelevant.  Opp'n at 2–6.

7           The Court disagrees with Plaintiffs' reading of *Rutledge* and *Hodsdon*.  In *Rutledge*, the

8   California Court of Appeals stated:

> HP argues Degenshein and class members similar to him do not
> have a claim for fraudulent concealment under the UCL, because
> they received notebooks with inverters that functioned for the
> duration of the one-year warranty, and were not damaged by HP's
> alleged failure to disclose the fact of the faulty inverter.  However, a
> claim for fraudulent business practices reflects the UCL's focus on
> the defendant's conduct, rather than the plaintiff's damages, in
> service of the statute's larger purpose of protecting the general
> public against unscrupulous business practices.  The question under
> the UCL is related to HP's conduct in failing to disclose the faulty
> inverter, not on whether the notebook's computer functioned for
> one-year.  HP's argument that the expiration of the warranty period
> precludes a claim for fraudulent concealment under the UCL is
> incorrect.

17  238 Cal. App. 4th at 1175.  As Apple correctly observes, the individual *Rutledge* plaintiff

18  mentioned above experienced the defect prior to the warranty expiration, and the plaintiff who

19  only experienced the defect after the warranty period expired adequately alleged reliance on an

20  affirmative representation.  *Id.* at 1171, 1176 ("Degenshein experienced problems with his display

21  screen blacking out shortly before the expiration of his one-year warranty . . . .").  *Rutledge* does

22  not appear to stand for the proposition that the expiration of the warranty period is irrelevant to a

23  materiality analysis.  Indeed, the Ninth Circuit expressly acknowledged that one possible reading

24  of *Rutledge* is that "there is a duty to disclose defects that go to the central function of the product

25  *and which arise during the warranty period*."  *Hodsdon*, 891 F. Supp. 3d at 863 (emphasis added).

26  Plaintiffs' proposed application of *Rutledge* would run afoul of longstanding public policy against

27  disregarding a warranty's limits.  *See, e.g.*, *Williams*, 851 F.3d at 1029 ("[T]he fact that the alleged

28  Case No.: 5:20-cv-03122-EJD
ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

United States District Court
Northern District of California

1    defect concerns premature, but usually post-warranty, onset of a natural condition raises concerns

2    about the use of consumer fraud statutes to impermissibly extend a product's warranty period.");

3    *In re Apple II*, 386 F. Supp. 3d at 1178 ("California law is clear that its consumer fraud statutes

4    cannot be used to extend a product's warrant[y]."); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th

5    249, 257 (2011) ("To allow a CLRA claim in these circumstances would be to supplant warranty

6    law; failure of a product to last forever would become a defect and a manufacturer would no

7    longer be able to issue limited warranties.")  (internal quotation and citation omitted).

8         District courts within the Ninth Circuit—including the Northern District of California—

9    discussing the issue post-*Rutledge* and -*Hodsdon* have repeatedly held that "a manufacturer has a

10   duty to disclose any defects that fall within the warranty period, whether relating to safety or to

11   costly repairs, that would have caused the consumer to not purchase the [product] if they had been

12   disclosed."  *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 960 (N.D. Cal. 2018) (quoting

13   *Apodaca v. Whirlpool Corp.*, No. 13-00725 JVS (ANx), 2013 WL 6477821, at *7 (C.D. Cal. Nov.

14   8, 2013)) (internal quotation marks omitted); *see also Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d

15   840 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal.

16   Mar. 5, 2018), *and on reconsideration*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020) (same); *In re Apple*

17   *II*, 386 F. Supp. 3d at 1178–79 (alleged defect was not material where plaintiffs did not allege that

18   it occurred on devices still under warranty); *Zuehlsdorf v. FCA US LLC*, No.

19   EDCV181877JGBKKX, 2019 WL 2098352, at *9 (C.D. Cal. Apr. 30, 2019) (noting that

20   "different rules [apply] to claims based on defects that manifest during the warranty period versus

21   after the warranty period"); *Loo v. Toyota Motor Sales, USA, Inc.*, No. 819CV00750VAPADSX,

22   2019 WL 7753448, at *10 (C.D. Cal. Dec. 20, 2019) (acknowledging different materiality

23   standard based on warranty status).  But if the defect arises outside of the warranty period,

24   however, then the manufacturer only has a duty to disclose "safety issues."  *Baranco*, 294 F. Supp.

25   3d at 960; *Sloan*, 287 F. Supp. 3d at 869 ("With respect to defects that manifested only after the

26   warranty period, Plaintiffs must allege that the defect poses an unreasonable safety hazard.").

27   "The purpose of this limitation in the post-warranty context is to ensure that durational limits on

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

United States District Court
Northern District of California

1    express warranties are not rendered meaningless." *Baranco*, 294 F. Supp. 3d at 960; *Sloan*, 287 F.

2    Supp. 3d at 869.

3          Here, Plaintiffs do not allege that the defect arose before the expiration of the warranty

4    period.  *See* TAC ¶¶ 37, 43, 48, 53-54, 58-59, 63-64, 68, 73-74, 78-79.  Consequently, Apple only

5    had a duty to disclose safety issues.  *Baranco*, 294 F. Supp. 3d at 960; *Sloan*, 287 F. Supp. 3d at

6    869; *see also Hodsdon*, 891 F. Supp. 3d at 863.  Plaintiffs have not alleged that the Alleged Defect

7    presented any particular safety hazard.  Accordingly, the Court finds that Plaintiffs have not

8    adequately stated a claim as to the omission-based Deceptive Trade Practice Claims and

9    fraudulent concealment claim.

10        **B.**    **UCL Claim**

11           **1.**    **"Unfair" prong**

12        "Under the unfairness prong of the UCL, a practice may be deemed unfair even if not

13   specifically proscribed by some other law." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115

14   (N.D. Cal. 2015) (internal citation omitted).  California courts have developed at least two tests for

15   "unfairness" within the meaning of the UCL: "(1) the tethering test, which requires that the public

16   policy which is a predicate to a consumer unfair competition action under the unfair prong of the

17   UCL must be tethered to specific constitutional, statutory, or regulatory provisions" and "(2) the

18   balancing test, which examines whether the challenged business practice is immoral, unethical,

19   oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh

20   the utility of the defendant's conduct against the gravity of the harm to the alleged victim*."*

21   *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013).

22        With respect to the tethering test, Plaintiff Taleshpour alleges that Apple's conduct is

23   unfair because it violates California public policy of "requiring a manufacturer to ensure that

24   goods it places on the market are fit for their ordinary and intended purposes."  TAC ¶ 96.  In

25   other words, he pleads that Apple's conduct violated the public policy legislatively declared in the

26   CLRA.  For the reasons described above, however, the Court finds that Taleshpour has not stated a

27   claim under the CLRA and therefore has not alleged any violation of public policy.  *See supra*

28   Case No.: 5:20-cv-03122-EJD

ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

United States District Court
Northern District of California

1    Section III.A.

2          With respect to the balancing test, Taleshpour argues that he pleads facts sufficient to state

3    a claim based on Apple's purported representation that MacBook Pro laptops have a minimum

4    lifespan of four years.  Opp'n at 10–11 (citing TAC ¶¶ 97, 100).  Under the balancing test, an act

5    or practice is "unfair" if "the consumer injury is substantial, is not outweighed by any

6    countervailing benefits to consumers or to competition, and is not an injury the consumers

7    themselves could have reasonably avoided." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137

8    (N.D. Cal. 2010) (quoting *Daugherty*, 144 Cal. App. 4th at 839) (internal quotation marks

9    omitted).  This test typically requires a fact intensive inquiry, not conducive to resolution at the

10   motion to dismiss phase.  *See In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2019 WL

11   1765817, at *9 (N.D. Cal. Apr. 22, 2019).  As discussed above, the Court finds the allegations

12   concerning the alleged four-year lifespan are not plausible.  *See supra* Section III.A.1.

13         Moreover, a "[f]ailure to disclose a defect that might shorten the effective life span of a

14   component part to a consumer product does not constitute a 'substantial injury' under the unfair

15   practices prong of the UCL where the product functions as warranted throughout the term of its

16   express warranty."  *In re Sony Grand Wega*, 758 F. Supp. 2d at 1091; *see also Clemens v.*

17   *DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008); *Daugherty*, 144 Cal. App. 4th at

18   838–39.  Taleshpour did not experience the Alleged Defect until well after the one-year limited

19   warranty expired.  TAC ¶¶ 35, 37.

20         Accordingly, the Court finds that Taleshpour has not adequately pled a substantial injury

21   and thus does not state a claim under the unfair prong of the UCL.

22                    **2.      "Unlawful" prong**

23         Plaintiffs' claim under the unlawful prong of the UCL is based on their CLRA claim.  TAC

24   ¶ 94.  Because Plaintiffs failed to state a viable claim under the CLRA, they have also "failed to

25   state a claim under the 'unlawful' prong of the UCL."  *In re MacBook Keyboard Litig.*, 2019 WL

26   1765817, at *8–9 (citing *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120,

27   at *7 (N.D. Cal. Aug. 30, 2011)).  Accordingly, the Court dismisses Plaintiffs' UCL claim brought

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

United States District Court
Northern District of California

1    under the unlawful prong.

2            **C.      New Jersey Consumer Fraud Act Claim**

3            Apple provides additional argument as to why Plaintiff Stewart fails to state a claim under

4    the New Jersey Consumer Fraud Act ("NJCFA").  Mot. at 19–20.  To state an actionable NJCFA

5    claim, a plaintiff must allege facts establishing three elements: (1) unlawful conduct by the

6    defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship

7    between the defendant's unlawful conduct and the plaintiff's ascertainable loss.  *Duffy v. Samsung*

8    *Elecs. Am., Inc.*, No. CIV. 06–5259 (DRD), 2007 WL 703197, at *6 (D.N.J. Mar. 2, 2007); *see*

9    *also Int'l Union of Operating Eng. Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d

10   1076, 1086 (N.J. 2007).

11           Apple first contends that Plaintiffs have not alleged unlawful conduct.  Plaintiffs disagree,

12   relying in part on their allegations regarding Apple's representation of a four-year lifespan.  Opp'n

13   at 12–13.  For the reasons described above, those allegations are not plausible.  *See supra* Section

14   III.A.1.  Moreover, "unless a defendant manufacturer knows with certainty that a product will fail,

15   it does not violate the NJCFA by failing to inform its consumers of the possibility of failure."

16   *Dawson v. General Motors LLC*, 2019 WL 3283046, at *5–6 (D.N.J. July 22, 2019); *see also*

17   *Priano-Keyser v. Apple Inc.*, No. 19-09162 (KM)(MAH), 2019 WL 7288941, at *8 (D.N.J. Dec.

18   30, 2019) (noting that "[t]o support a [NJ]CFA cause of action for fraud in the context of a

19   warranted defect, a plaintiff must show that the manufacturer was not in good faith insuring

20   against a risk, but that it actually knew with certainty that the product at issue or one of its

21   components was going to fail") (internal quotation marks omitted); *Mickens v. Ford Motor Co.*,

22   900 F. Supp. 2d 427, 442 (D.N.J. 2012) ("In cases . . . where an allegedly defective product was

23   covered by a warranty, [a] claim that a defect may, but has not, manifested itself until after the

24   expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA.  Rather, a

25   plaintiff must sufficiently allege that the defendant manufacturer *knew with certainty* that the

26   product at issue or one of its components was going to fail.") (emphasis original; internal

27   quotation marks omitted).  Here, the TAC does not contain any allegations that Apple knew with

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.
     15

United States District Court
Northern District of California

1    certainty that the Alleged Defect would manifest.

2          Apple also argues that Plaintiffs are unable to allege ascertainable loss, because "failure of

3    a product after its warranty is not an ascertainable loss under the NJCFA."  Mot. at 20 (citing

4    *Duffy*, 2007 WL 703197, at \*8; *Nobile v. Ford Motor Co.*, No. 10–1890 (PGS), 2011 WL 900119,

5    at \*5–6 (D.N.J. Oct. 1, 2012)).   "[A] plaintiff cannot demonstrate 'ascertainable loss' under the

6    NJCFA where the allegedly defective [ ] component outperforms its warranty period."  *Davidson*

7    *v. Apple, Inc.*, No. 16-cv-4942-LHK, 2017 WL 3149305, at \*16 (N.D. Cal. Jul 25, 2017) (quoting

8    *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 857 (S.D. Ohio 2012)) (internal quotation

9    marks omitted); *see also Mickens*, 900 F. Supp. 2d at 442 ("[W]here an allegedly defective

10   product was covered by a warranty, [a] claim that a defect may, but has not, manifested itself until

11   after the expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA.").

12   Here, Plaintiff Stewart did not experience the Alleged Defect until well after the warranty period

13   ended and therefore cannot plead an ascertainable loss.  TAC ¶¶ 66, 68; *Davidson*, 2017 WL

14   3149305, at \*16 ("Plaintiffs cannot state a claim under the NJCFA because the only New Jersey

15   Plaintiff experienced the touchscreen defect after the expiration of the 1-year Limited Warranty

16   period.").

17         Accordingly, the Court dismisses the NJCFA claim.

18         **D.      Leave to Amend**

19         While leave to amend generally is granted liberally, the Court has discretion to dismiss a

20   claim without leave to amend if amendment would be futile.  *Manzarek v. St. Paul Fire & Marine*

21   *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051

22   (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could

23   not be saved by amendment.").

24         With respect to the fraud claims based on affirmative representations, the Court finds that

25   leave to amend would be futile and prejudicial to Apple, given that Plaintiffs have amended their

26   complaint three times already.  *Leadsinger, Inc. v. BMF Music Publ'g*, 512 F.3d 522, 532 (9th Cir.

27   2008) ("The decision of whether to grant leave to amend nevertheless remains within the

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

*United States District Court*
*Northern District of California*

1   discretion of the district court, which may deny leave to amend due to 'undue delay, bad faith or

2   dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

3   previously allowed, undue prejudice to the opposing party by virtue of allowance of the

4   amendment, [and] futility of amendment.'") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

5   With respect to the fraud claims based on fraud by omission, the Court grants Plaintiffs leave to

6   amend to plead a safety hazard arising out of the Alleged Defect.  The Court further grants

7   Plaintiffs leave to amend the NJCFA claim to plead facts suggesting that Apple knew with

8   certainty that the Alleged Defect would occur.

9   **IV.     CONCLUSION**

10          For the foregoing reasons, the Court GRANTS Apple's motion to dismiss with limited

11   leave to amend.  Plaintiffs shall file an amended complaint by **August 2, 2021**.

12          **IT IS SO ORDERED.**

13   Dated: July 19, 2021

14

15   _____

16   EDWARD J. DAVILA
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:20-cv-03122-EJD
     ORDER GRANTING MOT. TO DISMISS 3D AM. COMPL.

17

United States District Court
Northern District of California